IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLAUD R. KOERBER,<br><br>Defendant. | **ORDER and**<br>**MEMORANDUM DECISION**<br><br>Case No. 2:09-cr-302 CW |

Now before the court are objections by both parties to Findings of Fact and Conclusions of Law issued by Magistrate Judge Samuel Alba on September 15, 2010 regarding certain evidentiary issues (the "Findings and Conclusions"). For the reasons set forth below, the government's objections are OVERRULED, while Defendant Claud R. Koerber's objections are SUSTAINED. The motion is therefore GRANTED, with the specific relief granted set forth below.

**BACKGROUND**

The underlying dispute before the court is whether certain of Mr. Koerber's documents in the government's possession are entitled to attorney-client privilege, and if they are, whether Mr. Koerber waived the privilege. Mr. Koerber raised the privilege issue in the form of a motion for a protective order. In that motion, he requested that the government be compelled to return the documents over which he asserted privilege.[1]

---

[1] Mr. Koerber also made two additional requests. First, Mr. Koerber requested that the government be ordered not to intentionally try to interfere with his privilege in its interactions with his attorneys and related persons. Mr. Koerber, however, has not presented any evidence that the government was purposely trying to take such actions. Second, Mr. Koerber requested

Mr. Koerber produced most of the documents for which he now claims privilege to the IRS in response to a subpoena. Among the documents that Mr. Koerber provided to the IRS is one version of a draft letter with the heading "To Our Lenders" dated July 20, 2005 (the "July 20 draft letter"). In sum, this document is a draft of a proposed letter to investors of a company controlled by Mr. Koerber. In the draft letter, Mr. Koerber described a potential transaction involving another company controlled by him. The government also obtained another version of the July 20 draft letter from Rachelle Taylor, a former employee of Mr. Koerber who served as Mr. Koerber's personal assistant during the relevant time period. Specifically, Ms. Taylor provided the government with an electronic version of an email she had received from Mr. Koerber to which Mr. Koerber attached a version of the draft letter. That email and its attachments were among the documents on a CD that Ms. Taylor burned from her computer at Mr. Koerber's office. Ms. Taylor produced this CD to the government in response to a subpoena issued to her in this case.

Judge Alba received voluminous briefing on Mr. Koerber's motion, and held various hearings, including two evidentiary hearings. At the first hearing on May 3, 2010, several witnesses testified, including Mr. Koerber, several attorneys with whom he worked, and the FBI agent on this case. Mr. Koerber and his attorneys testified on topics including the efforts they made to respond to the IRS subpoena and the steps they took to prevent inadvertent disclosure of attorney-client privileged documents in that production. These efforts included retaining lawyers

---

discovery into how the government obtained the documents for which he claims privilege. This part of the motion has been mooted by the evidentiary hearings on the motion, during which Mr. Koerber had an adequate opportunity to ask government witnesses about the sources of the documents.

to assist with identifying and setting aside privileged documents among the documents to be produced in response to the subpoena. Mr. Koerber and the attorneys also gave undisputed testimony that the documents at issue here were inadvertently turned over to the IRS.

Mr. Koerber also testified at the May 3, 2010 hearing that the July 20 draft letter was not intended to immediately go to investors, or to necessarily to go to investors at all. He testified that to his knowledge the draft letter did not in fact go to investors. Mr. Koerber stated that he prepared the draft letter at the advice of his counsel, Ross Moore. Mr. Koerber and Mr. Moore both testified that the purpose for Mr. Koerber preparing the draft letter was for Mr. Moore to review it and identify specialized counsel to assist with further review. Mr. Moore also testified that he did not recall any version of the July 20 draft letter being sent to investors at any time prior to Mr. Moore's departure from Mr. Koerber's company at the end of September 2005.

At the second hearing before Judge Alba on August 18, 2010, Ms. Taylor testified as a witness for the government. Ms. Taylor stated that she remembered printing and sending the July 20 draft letter on or close to July 20, 2005 to about ten investors. While Ms. Taylor acknowledged before Judge Alba that some changes may have been made to the draft letter before it was sent, she gave the strong impression that she had sent out a letter substantially similar or identical to the July 20 draft letter. Ms. Taylor conceded that she understood that Mr. Koerber only wanted her to proof read the draft letter when he first sent it to her. She further stated that she would not have sent it outside the office without specific instructions to do so by Mr. Koerber.

During cross examination at the August 18, 210 hearing, Judge Alba precluded Mr. Koerber from questioning Ms. Taylor about of whether certain metadata on the CD she provided

3

to the government would tend to disprove her claim that she had mailed the July 20 draft letter. After this process, Judge Alba issued the Findings and Conclusions.

With respect to all of the documents Mr. Koerber produced in response to the IRS subpoena, including the version of the July 20 draft letter Mr. Koerber inadvertently produced, Judge Alba ruled that the attorney client privilege applies. Judge Alba further concluded that Mr. Koerber had done nothing to waive the privilege on any of the documents produced by Mr. Koerber to the IRS. Judge Alba ordered the to government return hard copies of those documents to Mr. Koerber and delete any electronic copies. The government objects to this portion of the Findings and Conclusions.

On the other hand, Judge Alba ruled that the version of the July 20 draft letter Ms. Taylor provided to the government is not privileged. He reasoned that Mr. Koerber had waived privilege for that version of the letter in one of two ways. First, he concluded that Mr. Koerber had waived privilege by providing it to Ms. Taylor. In the alternative, he concluded that Ms. Taylor had credibly testified that she mailed the draft letter to third party recipients outside of Mr. Koerber's office. Judge Alba ordered that the government could keep and use the version of the July 20 draft letter provided by Ms. Taylor. Mr. Koerber objects to the conclusion that he waived the privilege over that version of the July 20 draft letter.

After the parties entered their objections, Mr. Koerber moved for a further evidentiary hearing in this court. The requested focus of the hearing was the question of whether Mr. Koerber had waived the privilege over the July 20 draft letter provided to the government by Ms. Taylor. In support, Mr. Koerber argued that Judge Alba had erred by precluding him from asking Ms. Taylor about the metadata pertaining to the draft letter on the CD Ms. Taylor had provided.

4

Mr. Koerber further argued that he should be allowed to introduce expert opinion on the question of whether certain metadata on the CD would tend to disprove Ms. Taylor's testimony.

The court concluded that Judge Alba had erred in excluding the testimony. Accordingly, the court granted Mr. Koerber's motion for further hearing and reopened the record for evidence both from experts and from fact witnesses, including Ms. Taylor. In doing so, the court ruled that because Mr. Koerber had made an issue of metadata, he would also be required to provide the government with his electronic files containing any version of the July 20, 2005 draft letter, including metadata for the limited purpose of addressing the attorney client issues and without waiving the privilege for any other purpose. Mr. Koerber complied with this order, and the court finds that by doing so, he did not waive his claims of privilege over those documents. The court further granted the government leave to introduce its own expert opinions about all relevant metadata.

Subsequently, the court held two evidentiary hearings. At the first hearing on February 2, 2011, the court heard from both of the experts on computers. Ultimately, there was no substantial disagreement between the experts about what the metadata would show about the saving and printing of documents. The experts agreed that if a document is printed and then saved and closed, then the metadata reflects the time and date on which it was printed before it was saved. If a document is printed and then closed, but not saved, the metadata for the document does not reflect the time or date for that printing. It is not disputed that the metadata for the version of the July 20 draft letter on the CD provided to the government by Ms. Taylor

shows that the last time the document was printed and then saved was on July 20, 2005.[2]

The court also heard additional testimony from Ms. Taylor at the February 2, 2011 evidentiary hearing. Ms. Taylor testified that she never printed the version of the draft letter that she burned onto the CD, but that she did save it. She also testified that she printed and saved all of the personalized versions of the draft letter that she recalls were eventually sent to investors. The government did not produce letters to investors, however, that are substantially identical to the draft letter on the CD Ms. Taylor provided to the government. Ms. Taylor testified that she would have saved all important documents to that CD.

At the February 2, 2011 hearing, Ms. Taylor's testimony was of a significantly different character than her testimony before Judge Alba on August 18, 2010. As mentioned above, before Judge Alba, Ms. Taylor stated in nearly unequivocal terms that she remembers sending about ten people a document almost identical to the July 20 draft letter on or close to July 20, 2005. In the hearing before this court, Ms. Taylor was quite reluctant to reaffirm any of those specifics. For example, Ms. Taylor acknowledged that she may have sent the letter several months after July 20, 2005, perhaps in September. She also acknowledged that there could have been many changes made to the letter before she sent it.[3]

---

[2] The government questions the reliability of the relevant metadata regarding times and dates, pointing out that time and date stamps may be altered by users. The government, however, did not provide any evidence that shows or raises an inference that any of the metadata in this case is compromised by a user falsifying a computer's time and date stamp. Without such evidence, the government has done little more than raise an interesting hypothetical question.

[3] At both evidentiary hearings at which she testified, Ms. Taylor answered questions about when she had burned the CD. According to Mr. Koerber, the evidence shows that Ms. Taylor burned the CD on November 7, 2007, after her employment was terminated. The government argues that she burned the CD on November 6, 2007, before finding out that she was

The second evidentiary hearing before this court took place on February 23, 2011. At that hearing, three witnesses testified, including Mr. Koerber and an attorney with whom Mr. Koerber worked. Among other things, Mr. Koerber again stated that he created the July 20 draft letter for the purpose of putting a concept into to words to help his attorney review the concept and begin the process of having it reviewed by an attorney with a speciality in the correct area. He stated that he did not instruct Ms. Taylor to send either version of the draft letter before the court, and that he does not believe that it was sent out. He explained that he eventually decided not to send anything substantially similar to the draft letter, and that he would move forward with a different approach to what would be communicated to investors. Mr. Koerber testified for the first time at the February 2, 2011 hearing that he may have shown the July 20 draft letter to Forest Allen, a member of Mr. Koerber's accounting staff. Mr. Koerber also reasserted many of the same points he had made in the prior hearing before Judge Alba.

Finally, Mr. Koerber put on an investor witness at the February 2, 2011 hearing. Because he was an investor in the relevant company held by Mr. Koerber, that investor likely would have been a recipient of the July 20 draft letter if it had been given to investors in any form. That investor testified that he did not recall receiving any letter from Mr. Koerber that resembles the July 20 draft letter.[4]

---

to be terminated. The court need not reach this question, since Ms. Taylor cannot waive Mr. Koerber's privilege whether or not she obtained the document while she was still employed by him or not. The court notes, however, that the facts more strongly support a conclusion that Ms. Taylor burned the CD after she was terminated. While this fact does not change the legal analysis, it does negatively affect the court's view of Ms. Taylor's credibility on factual matters.

[4] The testimony on this point was complicated because Mr. Koerber could not show the witness the July 20 draft letter without facing a claim that by doing so he had waived the

Based on the evidentiary hearings of August 18, 2010 and February 3, 2011, the court finds that Ms. Taylor's assertion that she sent the July 20, 2005 draft letter in significantly identical form to that on the CD she produced to the government is not credible. Initially, there is no dispute that the version on the CD Ms. Taylor gave the government was only printed on July 20, 2005. No witness asserted that the draft letter as it exists on the CD was sent to anyone. Accordingly, there is no evidence that the exact version on the CD ever went to third parties. Second, there is no evidence to corroborate Ms. Taylor's recollection that a substantially identical letter was sent outside the office. Ms. Taylor herself acknowledges that the letter that she recalls eventually sending to investors could have undergone many changes and that she may have sent it months after July 2005. Further, while Ms. Taylor stated that she saved all important documents to the CD, there are no other versions of the July 20 draft letter on the CD, including no versions addressed to any investors. Additionally, the government did not provide any letters that resembled the July 20 draft letter that was actually received by any investor.

While there is no evidence to corroborate Ms. Taylor's recollection, there is evidence to the contrary. Various investors have stated in affidavits that they did not receive such a letter. Moreover, Mr. Koerber flatly denied that a letter substantially similar to the July 20 draft letter was ever distributed to investors or outside third parties. He testified that he did not instruct Ms. Taylor to send it, and that he did not intend to send it without having attorneys review it. Mr. Koerber recalls that he eventually decided not to send investors a letter that was substantially similar to the July 20 draft letter. Mr. Koerber put on evidence to corroborate his statements and

---

privilege. Thus, the testimony was based upon a general description of the letter without disclosure of the document.

help "prove the negative" that the July 20 letter was not sent near July 20. For example, his attorneys recall that they advised him not to send the letter in a form similar to the version on the CD. He also submitted emails and other documents showing that the process of reviewing and personalizing the draft letter was in process months after July 2005.

After the hearings, the parties submitted additional briefing and made final oral arguments. The court took the objections under submission on May 3, 2011.

**ANALYSIS**

**I.      Standard of Review**

The motion on which the Findings and Conclusions ruled was a motion for a protective order under Fed.R.Crim.P 16. In the normal course, such motions are considered non-dispositive and a magistrate judge's rulings are reviewed under a deferential standard. As a practical matter, however, the motion in this case is in effect a motion to suppress evidence, since a conclusion that the materials are privileged precludes use of the documents at trial. Moreover, Count I of the Superseding Indictment is based on allegations relating to the July 20, 2005 document and the contents of the letter are also referenced in other places in the Superseding Indictment. Thus, a ruling that the government cannot use that document would, as a practical matter, dispose of Count I.

For these reasons, the court has reviewed the Findings and Conclusions under the framework laid out in 28 U.S.C. § 636(b)(1)(C), covering motions such as motions to suppress evidence as well as dispositive motions. Section 636(b)(1)(C) states:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

As already described above, the court determined that additional evidence was needed on the question of whether Mr. Koerber waived privilege over the version of the July 20, 2005 letter Ms. Taylor provided to the government. After hearing that evidence, the court rejects the Findings and Conclusions in part. Specifically, to the extent that the Findings and Conclusions found facts and relied on legal analysis to reach the conclusion that Mr. Koerber has waived privilege over the version of the July 20 draft letter on the CD Ms. Taylor gave the government, the court sustains Mr. Koerber's objections and rejects the Findings and Conclusions.

On the other hand, the court accepts in whole the factual findings and legal conclusions of the Findings and Conclusions on the issue of the documents Mr. Koerber produced to the IRS. The court explains below why the government's objections to the portions of the Findings and Conclusions are overruled.

## II. Privilege and Waiver

### A. Mr. Koerber Acted Promptly and Reasonably to Protect Privilege

First, the court will address the government's argument that Mr. Koerber waived any claim to attorney client privilege because he should have acted sooner to assert the privilege. The government generally asserts that Mr. Koerber waited too long to assert the privilege over all of the documents he produced to the IRS.[5] In support of this argument, the government relies on

---

[5] As for the version of the draft letter provided by Ms. Taylor, the government cannot contend that Mr. Koerber did not promptly assert privilege. Mr. Koerber, after all, was not aware that the government had received that document from Ms. Taylor until he had already filed his motion for a protective order. When he realized that the government also had obtained a version of the July 20 document from Ms. Taylor, he included a claim of privilege over that version of

*United States v. Ary*, 518 F.3d 775, 785 (10th Cir. 2008) in which the Tenth Circuit concluded that a criminal defendant had waived his claim of privilege over certain documents because he had not claimed privilege in a timely fashion.

As an initial matter, the court agrees with Mr. Koerber that the *Ary* rule is not applicable in this case. Mr. Koerber correctly points out that *Ary* dealt with a claim of privilege over documents that had been involuntarily seized pursuant to a warrant. In this case, however, Mr. Koerber produced the documents in response to an IRS subpoena. The court is thus persuaded that the question of whether Mr. Koerber waived his privilege is governed by Federal Rule of Evidence 502(b). Rule 502(b) controls waiver of privilege for documents that were inadvertently produced "to a Federal office or agency." Fed.R.Evid. 502(b). Accordingly, the *Ary* standard does not apply to the relevant documents here.

Under Rule 502(b), a party does not waive a claim of privilege over documents disclosed to "a Federal office or agency" when "(1) the disclosure is inadvertent; (2) the holder of the privilege . . . took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error . . .." In this case, the government does not seriously or credibly contest that the documents Mr. Koerber produced to the IRS meet the first two prongs of the test. As described above, Mr. Koerber put on substantial evidence that he took reasonable care to try to keep the relevant documents from being produced, but that the documents were accidentally handed over nonetheless.

Instead, the government's argument centers on the third prong. On this part of the test,

---

the document in his briefing and arguments on this motion.

the government contends that Mr. Koerber's steps to rectify the inadvertent disclosure were not sufficiently prompt. The court declines to make such a conclusion and finds that Mr. Koerber acted promptly and reasonably in trying to rectify his inadvertent production of privileged documents to the IRS. The prosecution team in this case first alerted Mr. Koerber to the possibility that Mr. Koerber had accidentally produced privileged documents on October 30, 2009. On about that date, Mr. Koerber asked the prosecution to set aside about100 documents as privileged. Twenty days later, on November 20, 2009, Mr. Koerber again contacted the government about privilege, giving written notice and asking that another 100 document be set aside as privileged. On November 24, 2009, the government notified Mr. Koerber that it would challenge his claim of privilege. On March 25, 2010, Mr. Koerber brought the motion for protective order at issue here.

Under all these circumstances, Mr. Koerber acted promptly and reasonably to rectify his inadvertent disclosure. Promptly after the government notified him that he might have inadvertently produced privileged documents, Mr. Koerber asked the government that documents be treated as privileged and set aside. He did so again less than a month later. It is true that Mr. Koerber waited to move for a protective order until several months after the government indicated that it would challenge his assertion of privilege. But this delay was reasonable under all the circumstances. First, there is no evidence that the government detrimentally changed its position or that it lacked notice that Mr. Koerber contested the claim the he had waived the privilege. Moreover, after Mr. Koerber asserted privilege, the government could not ethically use the relevant documents until a court determined otherwise. There was also nothing stopping the government from seeking a ruling from the court that it could use the documents if they were

important to the case. In that context, Mr. Koerber's relatively short delay in seeking court protection of the documents is reasonable.

In addition to the general delay argument, the government makes an argument based on delay particular to the version of the July 20 draft letter that Mr. Koerber produced to the IRS. Specifically, the government points out that the July 20 draft letter is mentioned and quoted in several places in the original Indictment, including, most notably, in Count 1. The government asserts that after he reviewed the original Indictment, Mr. Koerber should be charged with knowing that the July 20 draft letter was in the government's possession. The government reasons that Mr. Koerber had the burden of asserting the privilege starting in May 2009, when the original Indictment was filed. The government concludes that following this time line, Mr. Koerber's delay in filing for a protective order or otherwise seeking the return of the letter is so excessive as to waive his claim of privilege over it.

This argument requires a logical leap for which the government has no support. That is, while it stands to reason that Mr. Koerber might have determined that the government had and was using a privileged document when he reviewed the original Indictment, there is no evidence that the issue came to his attention until the issue of inadvertent disclosure arose. In fact, the record shows the opposite: Mr. Koerber testified that when he first saw the Indictment, it did not give him any reason to think that he had inadvertently produced a privileged document. (Tr. of May 3, 2010 Hearing, Dkt. No. 111-2, p. 104.) Given that Mr. Koerber had produced thousands of documents to the IRS and had been the target of an investigation prior to the Indictment being filed, there is no clear basis to conclude that Mr. Koerber knew or should have known that the government had a potentially privileged document. Moreover, there is nothing on the face of the

document to distinguish it from other business communications. The fact that it is privileged only becomes apparent when one knows that the draft was prepared for the purpose of seeking advice on whether it should be sent to investors.

For all these reasons, the court rejects the government's argument that Mr. Koerber did not act promptly enough to protect his claim of privilege over the relevant documents, including the version of the July 20 draft letter he disclosed to the IRS.

B.  **The Documents Inadvertently Produced to the IRS are Privileged**

As mentioned, the Findings and Conclusions agreed with Mr. Koerber that all of the documents that Mr. Koerber produced to the IRS for which Mr. Koerber claimed privilege are privileged. After an *in camera* review of these documents, the court also agrees that they are all privileged, and that Mr. Koerber did not waive the privilege in any way. The court rejects the government's arguments otherwise, largely because those arguments heavily rely on the inapplicable *Ary* standard.

C.  **The July 20, 2005 Draft Letter Provided by Ms. Taylor**

In the Findings and Conclusions, Judge Alba ruled that the version of the July 20 draft letter provided to the government by Ms. Taylor is not privileged. Judge Alba reasoned that Mr. Koerber waived the privilege over that document in one of two ways. First, Judge Alba reasoned that because Ms. Taylor was not in the circle of individuals to whom disclosure could be made without waiving privilege, Mr. Koerber waived privilege when he gave her the letter. In the alternative, Judge Alba found that, as a factual matter, Ms. Taylor had sent the letter to investors.

As mentioned above, after hearing additional evidence, the court finds that both of those holdings are not supported once the court received more complete evidence on the issue. The

14

court bases this conclusion on three main points. First, the version of the July 20 draft letter on the CD provided by Ms. Taylor to the government is protected by the attorney client privilege. Second, the Mr. Koerber did not lose that privilege of the draft letter by providing it to Ms. Taylor. Finally, the record does not support a conclusion that Ms. Taylor sent the draft letter to third persons. The court explains each of these conclusions and addresses the government's arguments below.

First, the government contends that the July 20 draft letter was not privileged when drafted. This argument fails. Initially, it is undisputed that Mr. Koerber drafted the letter at the advice of an attorney, with the intent that the letter be reviewed by an attorney or attorneys before it was sent out–if it was to be sent out at all. While the government is correct that Mr. Koerber drafted the letter in contemplation of a potential business transaction, that mere fact does not strip the draft letter of privilege. To the contrary, Mr. Koerber was aware that the business dealing he was considering had potential legal ramifications beyond the underlying transaction. For this reason, Mr. Moore advised him to prepare the letter. There is no evidence that Mr. Koerber intended to send the letter without review and confirmation by an attorney that the letter would be in compliance with relevant laws. These facts distinguish this case from cases such as *Montgomery v. Leftwich, Moore & Douglas*, 161 F.RD. 224, 227 (D.D.C. 1995) and *United States v. Wilson*, 798 F.3d 509, 513 (1st Cir. 1986), where the courts found that communications between attorneys and clients that were of a primarily business nature were not privileged.

This case may also not be compared to cases such as *In re Grand Jury Proceedings*, 727 F.3d 1352, 1358 (4th Cir. 1984). In *Grand Jury* the court ruled that when a client gives an attorney information in the course of the attorney drafting a public filing such a prospectus, and

the client does not expect the attorney to keep that information confidential, the information was not protected by the attorney client privilege. *Id.* The facts here do not mirror those in *Grand Jury*. Here, the content of the letter concerned a possible deal that Mr. Koerber was considering and he planned that it be disseminated, if at all, only after review by specialized legal counsel. If the deal did not proceed, there is no evidence that anyone outside of Mr. Koerber or his support staff and legal counsel would have seen it. In fact, the evidence presented by Mr. Koerber was that the deal did not proceed as envisioned in the July 20 draft letter and absent the inadvertent disclosure and the unauthorized taking of the document by Ms. Taylor, no one outside of that group would have ever seen either version of the letter. While it is true that some of the facts contained in the letter were later made known to the investors, Mr. Koerber is not seeking to protect those facts as privileged. Rather, he claims privilege over draft letter itself.

Moreover, it is not relevant to the question of privilege that Mr. Moore had a general practice area in real estate. Mr. Koerber presented undisputed testimony that Mr. Moore told him to prepare the draft letter so that Mr. Moore could identify another attorney with more specialized knowledge to review it.

Finally, there is no evidence in this case that the attorneys assisting Mr. Koerber with the July 20 draft letter were acting as mere conduits. The government correctly argues that when a client gives an attorney information intending that the attorney make the information public, any privilege over that information is waived. *See*, *e.g.*, *Natta v. Hogan*, 392 F.2d 686, 692 (10th Cir. 1968). Here, the role of the attorneys in reviewing the draft letter was not to act as conduits to deliver the content of the letter to investors or regulatory agencies. Rather, the attorneys here acted as a legal control on whether the deal envisioned in the letter should proceed at all, and if it

did, what information Mr. Koerber would be required to disclose to meet the relevant legal requirements. The fact that counsel asked Mr. Koerber to place the content in the format that he believed may be used in the transaction does not change its true character as a request for legal advice. In the practical world in which transactions are done there is no requirement that a client phrase his request for legal advice in a particular format. The court recognizes the realities that advice may be requested in many different formats. It is the substance of the request, not the format of the questions, that controls.

The court is also convinced that Ms. Taylor was a person with whom Mr. Koerber could share the draft letter without waiving privilege over it. While Mr. Koerber cites Utah privilege rules on the question of whether sharing the letter with Ms. Taylor waived, the "attorney-client privilege is determined under the federal common law in a criminal matter." *United States v. O'Brien*, 836 F. Supp. 438, 442 (S.D. Ohio 1993). Under federal common law, there is "a small circle of 'others' with whom information may be shared without loss of the privilege ( e.g., secretaries, interpreters, counsel for a cooperating co-defendant, a parent present when a child consults a lawyer)." *United States v. Massachusetts Inst. of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997) (citations omitted). The "underlying concern" of creating this circle is "functional," seeking to allow lawyers and clients "to bring closely related persons who are appropriate, even if not vital, to a consultation." *Id.* (citation omitted). Moreover, it is necessary that a the communication of privileged information to a person in the circle be confidential. *See id.*

At the time Mr. Koerber gave Ms. Taylor the letter, she was acting as his executive assistant. Mr. Koerber gave Ms. Taylor the letter for the purpose of proof reading it and returning it to him before he sent it to Mr. Moore for his legal review. Initially, federal courts

17

have held the passing a communication to a secretary does not waive privilege. *See*, *e.g.*, *In re Adelphia Commc'ns Corp.*, 2005 WL 425498 at *8 (S.D.N.Y. Feb. 16, 2005) (receipt of privileged e-mail by secretary for purpose of passing it along to intended recipient did not waive privilege) and *Abbott Labs. v. Airco, Inc.*, 1985 WL 3596 at *4 (N.D. Ill. Nov. 4, 1985) ("A recognized exception to the rule that the communication must be directly between the client and attorney is for ministerial agents of the attorney (such as clerks, secretaries and stenographers) or of the client who facilitate transmission of the communication.")

In addition to Ms. Taylor's general role of acting as Mr. Koerber's assistant, she was, in practical terms, a person on whom he could rely not to disclose confidential information. She she had a duty not to disclose important company documents until directed to do so, and it is clear from the record that she understood this duty. Ms. Taylor knew that she was not to send the draft letter before Mr. Koerber specifically told her to do so. It is also clear to the court that Ms. Taylor realized that office documents were to be kept confidential, whether or not she had signed an agreement to that effect. Accordingly, there was no need for Mr. Koerber to specifically inform Ms. Taylor that the draft letter was confidential or privileged for the privilege to remain attached. This conclusion is unchanged even though Ms. Taylor also facilitated business transactions on Mr. Koerber's behalf.

In addition to Ms. Taylor, the government argues that Mr. Koerber showed the July 20, 2005 draft letter to Mr. Allen.[6] First, there is no clear evidence that Mr. Koerber actually

---

[6] The government also contends that Mr. Koerber showed the draft letter to several other people, but the court finds that the record does not support that contention. In making this argument, the government has conflated a promissory note that was initially intended to be attached to the draft letter with the draft letter itself. The record makes it fairly clear that the

18

provided a copy of the draft letter to Mr. Allen for Mr. Allen to review or keep. At best, it seems that Mr. Allen may have seen a copy of the draft letter at a meeting, but there is no evidence that he actually read the letter or that he was given a copy of it. Accordingly, the court finds that it is more likely than not that Mr. Allen did not read or keep a copy of the draft letter.

Even if it is true that Mr. Allen reviewed or kept the draft letter, however, the evidence supports a conclusion that Mr. Koerber expected Mr. Allen to keep information confidential and that Mr. Koerber specifically warned Mr. Allen that the draft letter was a privileged communication. There is no evidence that Mr. Allen thought that he was free to show communications from Mr. Koerber to investors or anyone outside of the office without being authorized to do so by Mr. Koerber.

Finally, the government has not convinced the court that the July 20, 2005 draft letter was mailed out to or received by any investor or other third party.[7] The reasons the court has come to this conclusion are described in detail above.

## CONCLUSION AND ORDER

For the reasons above, Mr. Koerber's motion for a protective order is GRANTED with respect to all documents over which Mr. Koerber claims privilege. Those documents are the ones individually listed in the Findings and Conclusions, as well as the version of the July 20 draft letter on the CD Ms. Taylor provided the government. The government shall return to Ms. Koerber all hard copies in its possession of the documents identified by Judge Alba as privileged

---

draft letter was never provided to any third person as a cover to the promissory note.

[7] Should the government produce a copy of the July 20 draft letter that was actually received by a third party investor, this ruling would not apply to such a letter.

and delete any electronic version of those documents as well. Moreover, the government should return to Mr. Koerber any hard copies of the version of the July 20 draft letter received from Ms. Taylor and also delete the electronic copies of that document.

The government should complete this return and destruction by June 13, 2011. On that date, the government shall file a notice with the court confirming the return and deletion of all privileged documents in their possession..

DATED this 2nd day of June, 2011.

BY THE COURT:

_____
Clark Waddoups
United States District Judge