IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES,<br><br>             Plaintiff,<br><br>      v.<br><br>CLAUD R. KOERBER<br><br>             Defendant. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No.  2:09-CR-302<br><br>Judge Clark Waddoups |

On July 2, 2012, the court heard oral arguments with respect to several motions filed by both Defendant and the government. (Dkt. No. 268). Barbara Bearnson, Stewart Walz and Patricia Parkinson Glenn appeared on behalf of the United States, and Marcus Mumford appeared on behalf of Defendant. After oral arguments, the court took Defendant's motion to dismiss certain counts[1] of the indictment on the grounds of untimeliness (Dkt. No. 220) and Defendant's motion to dismiss certain counts[2] of the indictment on the grounds of insufficiency (Dkt. No. 233) under submission. *See* Order (Dkt. No. 267). The court also stayed its decision on Defendant's motion for sanctions against counsel for the government (Dkt. No. 222) pending the court's decision on the two motions to dismiss mentioned above. *Id.*

For the reasons stated below, the court now DENIES Defendant's motion to dismiss certain counts of the indictment on the grounds of untimeliness (Dkt. No. 220), GRANTS Defendant's motion to dismiss Counts 2 and 3, but DENIES Defendant's motion to dismiss all

---

[1] Defendant moves to dismiss Counts 1, 2, 4, 5, 7 through 12, 17 and 18 of the Second Superseding Indictment for untimeliness.

[2] Defendant moves to dismiss Counts 1 through 20 (all counts) for insufficiency.

remaining counts of the indictment on the grounds of insufficiency (Dkt. No. 233), and DENIES Defendant's motion for sanctions against counsel for the government (Dkt. No. 222).

## BACKGROUND

Defendant was originally indicted on May 26, 2009 for mail fraud, wire fraud and tax evasion in connection with his business activities at Founders Capital, LLC ("Founders Capital"). The original indictment alleged that Defendant had intentionally devised a scheme to defraud investors in Founders Capital by making materially false statements to them, and that Founders Capital and related entities were being run as a Ponzi scheme.

A superseding indictment ("first superseding indictment") expanding the charges against Defendant was returned on November 10, 2009. The first superseding indictment alleged similar conduct on the part of Defendant, but charged Defendant with one count of mail fraud, six counts of fraud in the offer and sale of securities, one count of sale of unregistered securities, ten counts of wire fraud, two counts of money laundering, and two counts of tax evasion.

In February 2010, after being notified by Assistant United States Attorney Stew Walz that the government may have inadvertently received documents that could be considered privileged, Defendant filed a motion for a protective order and to "compel discovery regarding the government's intrusions into Defendant's privileged information." Defendant claimed, among other things, that the government had improperly presented a privileged letter to the grand jury and relied upon it heavily to procure an indictment.

After holding an evidentiary hearing, Magistrate Judge Sam Alba held that the government had obtained a non-privileged copy of the letter at issue and that the government did not err in presenting it to the grand jury or relying upon it to obtain an indictment. *See* Findings of Fact and Conclusions of Law 8-13 (Dkt. No. 95). Defendant objected to Judge Alba's

findings and conclusions, and asked the court to reopen the matter to receive further evidence. *See* Def.'s Objection to Magistrate's Findings and Conclusions (Dkt. No. 110). The court heard oral arguments on Defendant's objection on November 23, 2010 and discussed reopening the evidentiary hearing on the privilege issue. (Dkt. No. 130). The court sustained Defendant's objection, in part, and reopened the evidence on the privilege issue. *See* Order (Dkt. No. 129). After considering additional evidence, the court sustained the remainder of Defendant's objections to Judge Alba's findings and conclusions, found that Defendant had not waived his privilege with respect to the letter, and ordered the government to return all hard copies of the privileged letter to Defendant and to delete all electronic copies. *See* Order and Mem. Dec. (Dkt. No. 165).

Based, at least partially, upon the court's finding that the letter at issue was protected by attorney-client privilege, the government sought and obtained a second superseding indictment on September 29, 2011, which omitted Count 1 of the first superseding indictment. *See* Superseding Indictment (second) (Dkt. No. 191). Shortly after the second superseding indictment was returned, Defendant filed a motion seeking to quash the indictment on the grounds that it relied upon the privileged letter. (Dkt. No. 202). The court denied that motion. (Dkt. No. 237). The Defendant also filed the two motions to dismiss certain counts of the indictment that the court addresses in this decision. *See* (Dkt. Nos. 220 and 233).

## ANALYSIS

### I. LEGAL STANDARD

When evaluating a motion to dismiss a criminal indictment, the indictment is tested "solely on the basis of the allegations made on its face, and such allegations are to be taken as true." *United States v. Reitmeyer*, 356 F.3d 1313, 1316-17 (10th Cir. 2004) (citation omitted).

Although the indictment should be read as a whole, "each count of an indictment is regarded as a separate indictment, [and] the sufficiency of a particular count depends solely on the allegations contained in that count." *United States v. Wood*, 6 F.3d 692, 697 (10th Cir. 1993) (citations omitted).

## II.     MOTION TO DISMISS – TIMELINESS

Defendant's first motion to dismiss seeks dismissal of certain counts of the second superseding indictment on the grounds that they are time barred by 18 U.S.C. § 3282(a), which prohibits prosecution "for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." (2012).

A superseding indictment that is filed while an earlier indictment is "validly pending" is not barred by the statute of limitations unless it "broadens or substantially amends the charges in the first indictment." *United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992). "Notice is the touchstone in deciding whether a superseding indictment substantially changes the original charges." *Id*. (citation omitted). "If the allegations and charges contained in the superseding indictment are substantially the same as those contained in the original indictment, sufficient notice is presumed." *Id*. (internal quotation marks and citation omitted).

Defendant argues that the first indictment[3] and the first superseding indictment returned against him in this case do not toll the statute of limitations because they were not "validly pending." Because the first superseding indictment would toll the statute of limitations only if it were a valid indictment, Defendant argues that the counts of the second superseding indictment alleging conduct prior to September 29, 2006 are barred because they were brought more than

---

[3]  Because the statute of limitations will have been effectively tolled if the first superseding indictment was validly pending at the time the second superseding indictment was returned, the court will limit its discussion to the validity of the first superseding indictment. The validity of the initial indictment will not be addressed.

five years after the alleged crimes occurred.[4]  The basis for Defendant's contention that the first superseding indictment was invalid is his assertion that each of the counts of the first superseding indictment substantially relied upon the letter which the court has already determined was privileged.

Assuming, for the sake of argument, that Defendant is correct in his contention that a statute of limitations is not tolled by an indictment that relies substantially upon a document protected by the attorney-client privilege, the Defendant's motion fails because the evidence shows that for only one of the twenty-two counts of the first superseding indictment did the government rely upon the privileged letter at issue in presenting evidence to the grand jury.

Pursuant to Rule 6(e)(3)(E)(i)[5] of the Federal Rules of Criminal Procedure, the court issued an order on August 3, 2012 requiring the government to provide the court with a sealed, *in camera* copy of the grand jury proceedings leading to issuance of the first superseding indictment for review in connection with this motion.  After carefully reviewing the record of the grand jury proceedings, the court has determined that the evidence does not support Defendant's contention that the government relied on the privileged letter as evidence to support any counts other than Count 1 of the first superseding indictment.  Because the government relied upon different evidence to support the remaining counts, the record does not support a finding that the grand jury substantially relied on the privileged letter when deciding to indict Defendant on any count other than Count 1.  Because the second superseding indictment is virtually identical to the first superseding indictment, with the exception that Count 1 and a few other references to the privileged letter were omitted, there is no room for the suggestion that the second superseding

---

[4] The second superseding indictment was returned on September 29, 2011.  Defendant challenges each count that alleges criminal conduct that occurred prior to September 29, 2006.

[5] Rule 6(e)(3)(E)(i) states:
    (E) The court may authorize disclosure--at a time, in a manner, and subject to
    any other conditions that it directs--of a grand-jury matter:
        (i) preliminarily to or in connection with a judicial proceeding;

indictment "broadens or substantially amends the charges in the first [superseding] indictment." *Davis*, 953 F.2d at 1491.

For these reasons, the court finds that Counts 2-22 of the first superseding indictment were validly pending at the time the second superseding indictment was returned and effectively tolled the relevant statute of limitations. Defendant's motion to dismiss certain counts of the second superseding indictment on the grounds of untimeliness is denied.

### III. MOTION TO DISMISS – INSUFFICIENCY

In his second motion to dismiss, Defendant argues that Counts 1-20 (all of the counts) of the second superseding indictment should be dismissed because none of the counts are specific enough to give Defendant notice of the charges against him. The Defendant's primary emphasis, however, is on counts 1-6 alleging fraud in the offer and sale of securities.

Rule 7(c) of the Federal Rules of Criminal Procedure requires an indictment to make "a plain, concise, and definite written statement of the essential facts constituting the offense charged." (2012) An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished." *Id*. (internal quotation marks and citation omitted). It is also necessary, however, to include "a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged." *Id*. (citation omitted). Based on precedent, the indictment must include "the nature of the schemes or artifices . . . identified or described, including the particular pretenses,

6

representations or promises claimed to have been false." *United States v.* Curtis, 506 F.2d 985, 990 (10th Cir. 1974).  An indictment is defective if it is not framed to "apprise the defendant 'with reasonable certainty, of the nature of the accusations against him,'" even if it follows the language of the statute.  *Id,* at 991 (citations omitted).   To meet these requirements, the indictment must give "specific information as to the nature of the false statements alleged." *United States v. Daily,* 921 F.2d 994, 1001 (10th Cir. 1990).  In reviewing the indictment, the court is required to "look at practical, rather than technical considerations." *Id.* at 1000.  Thus, when determining whether the indictment gives a defendant sufficient notice of the charges against him, the court should give the indictment a common-sense construction.  *See United States v. Bass*, 411 F.3d 1198, 1202 (10th Cir. 2005) (rejecting defendant's argument that an indictment alleging possession of child pornography was insufficient because the indictment identified images as .bmp files rather than .jpeg files).  Each count of the indictment must stand on its own, as a separate indictment, although detail may be incorporated by reference.  Fed. R. Crim. P. 7(e), *see e.g. United States v. Staggs,* 881 F.2d 1527 (10th Cir. 1989); *United States v. Rogers,* 636 F.Supp, 237, n.8 (D. Colo. 1986).  An important, if not overriding, consideration is whether the indictment provides sufficient detail to meet the requirements under the Sixth Amendment that a defendant has been "informed of the nature and cause of the accusation" against him and allow him to prepare a defense.

    **A.**    **Counts 1 – 6**

Counts 1 through 6 of the second superseding indictment allege that Defendant committed fraud in the offer and sale of securities in violation of 15 U.S.C. §§ 77q(a) and 77x.  Defendant argues that these counts are insufficient because they do not identify what security

instruments were allegedly sold or offered, to whom the securities were offered or sold, or when or where they were sold.

In Counts 1 through 6 of the second superseding indictment the government incorporates by reference the allegations of the "Scheme and Artifice to Defraud" and then alleges that

> Defendant, willfully, in the offer and sale of securities, that is investments in Founders Capital, by the use of the means and instruments of transportation and communication in interstate commerce and by the use of the mails, directly and indirectly. (1) Did employ a device, scheme, and artifice to defraud; (2) Did obtain money by means of untrue statements of material fact and omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; (3) Did engage in transactions, practices, and courses of business which operated as a fraud and deceit upon investors; all in violation of 15 U.S.C. § 77q(a) and § 77x . . .

Superseding Indictment (second) Counts 7-8 (Dkt. No. 191). Although the language of the charge mirrors the language of 15 U.S.C. § 77q(a), unlike the statute each of the parenthetical prohibitions is separated by a semicolon, but without an "or." It is unclear from the indictment whether the government alleges that Defendant is accused of conduct under each of the three or only one of the three prohibited acts. The allegation is followed by a table alleging six different instances where Defendant is alleged to have used the means of interstate commerce to violate the statute and the dates when those violations were alleged to have occurred. Nevertheless, in Counts 2 and 3, the date is given only as "Summer 2006" and "Winter 2006/2007." In each of Counts 2 and 3, the "Use of Interstate Means" is described as "Advertisement to 'Safely Earn 1-5% per Month on Your Case' in Creative Real Estate Magazine." The indictment provides no further detail as to what investment is claimed to have been made during this period or by whom or how the investment, if any, was connected to the alleged advertisement.

Defendant argues that the reference in the indictment to "investments in Founders Capital" is not sufficiently specific enough to put Defendant on notice of what he must defend against. The court disagrees as to Counts 1 and 4 through 6. The government alleges that Defendant exercised almost complete control over Founders Capital. If true, Defendant would have available to him the information to identify investments made on the dates specified in those counts. From those investments, Defendant can identify the specific form used to document the investments and the investors. He can also determine whether the specific security instruments were sold or offered to investors in Founders Capital. Moreover, in the paragraphs setting forth the alleged Scheme and Artifice to Defraud, the government alleges the false statements it contends meet the requirements of the statute. Those alleged misrepresentations include, among others, statements that "Founders Capital would use the money to make 'hard money' or 'bridge loans' . . . for the purpose of acquiring real estate," (¶ 6) that through Equity Mill "substantial amounts of money could be made," (¶ 7) that the Defendant caused advertisements to be placed that investors could safely earn 1 to 5%, which Defendant allegedly knew was false (¶ 8) and that the investments were backed by real estate (¶ 9). Moreover, the government alleges that Defendant used the invested money for purposes different than he had represented to investors, and lists detailed amounts for six instances of alleged misuse (¶¶ 12-13). Because the government cannot broaden the charges alleged in the indictment beyond the specific conduct and misrepresentations alleged, Defendant has notice of the accusations and sufficient detail to prepare a defense on these four counts. *United States v. VanTieu,* 279 F.3d 917 (10th Cir. 2002).

That same conclusion, however, cannot be sustained for Counts 2 and 3. The time-frame stated for the alleged wrongful conduct is simply too indefinite to provide adequate notice to

Defendant. There is no factual detail included in the indictment from which Defendant can identify which investments or investors were involved in transactions during those several months that were the basis for the alleged wrongful conduct. Moreover, without additional detail, Defendant is unable to determine whether the investments are claimed to have been made as part of or in furtherance of the scheme that is alleged. The detail is insufficient to allow Defendant to identify the separate transaction that is alleged to be the conduct that is the basis for that count. Under § 77q(a) each count of the indictment must be "based on a separate purchase or sale of securities and must specify a false statement of material fact—not a full blown scheme to defraud—in connection with that purchase or sale." *United States v. Langford,* 496 F.2d 798, 804 (11th Cir. 1991). For offenses indicted under this section, the "appropriate units of prosecution . . . are *separate transactions* accompanied by use of the mails." *Id.* at 804 (citations and quotation marks omitted, emphasis in the original).

This lack of particulars is additionally problematic because of the failure of the government to state whether its alleged offense is (1) employing a scheme and artifice to defraud, (2) obtaining money by means of untrue statements or (3) engaging in courses of business which operated as a fraud upon investors, or all three. Defendant is not required to guess about what the government contends is the wrongful conduct. As alleged in these two counts, Defendant would be required to guess about which of the transactions that occurred during the several months included in the allegation were the transactions the government intends to rely upon at trial. For these reasons, Counts 2 and 3 are dismissed.

    **B.**    **Counts 7 – 16**

Counts 7 through 16 of the second superseding indictment charge Defendant with wire fraud, in violation of 18 U.S.C. § 1343. Counts 7 through 16 charge Defendant with

> having devised and intended to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing said in interstate commerce scheme and artifice to defraud, did cause to be transmitted by means of wire communication certain writings, signs and signals, each such use of wire communication being a separate count of this Indictment; all in violation of 18 U.S.C. § 1343 . . .

Superseding Indictment (second) Counts 8-9 (Dkt. No. 191). Like Counts 1 through 6, the language of these charges mirrors the language of the statute and does not omit any essential element of the crime. A table follows the charging language for Counts 7 through 15 that specifies nine different "fraudulent pretenses, representations, and promises" made using wires in interstate commerce, with corresponding dates. Count 16 is charged separately, but follows the same pattern as Counts 7 through 15.

Defendant argues that these counts of the indictment are insufficient because they do not specify who was defrauded or deceived, how Defendant was linked to any of the alleged false and fraudulent pretenses, whether he executed or caused to be executed these transactions, whether Defendant even knew about the transactions at issue, and how the alleged false and fraudulent statements were material.

In a mail fraud case, which is based on a statute that is analogous to the federal wire fraud statute, the Tenth Circuit has held that it is not required that the government prove that a defendant made any actual misrepresentations to a specific individual victim. *See United States v. Kennedy*, 64 F.3d 1465, 1476-77 (10th Cir. 1995). Instead, the statute identifies the scheme to defraud as the intended criminalized conduct. An individual instance of victimization is not a required element of the offense. *Id*. Thus, when a defendant uses the mail (or in this case wires) under false pretenses in furtherance of a scheme to defraud, he has violated the statute, even if there is no proof of a specific victim of the fraud. For this reason, Defendant's claim that the

indictment should fail because it doesn't identify anyone that was defrauded must fail. Moreover, unlike in Counts 2 and 3, the government identifies specific dates and wire transfers that it alleges as the wrongful conduct. This information, when read to include the paragraphs alleging the Scheme and Artifice to Defraud, provide Defendant notice of the accusations and sufficient detail to allow him to prepare a defense.

Defendant's other complaints about Counts 7 through 15 are also meritless. Although the government must prove the materiality of Defendant's alleged misrepresentations at trial, making materiality an essential element of the crime, an indictment will not fail in the absence of a specific materiality allegation. *See United States v. Grey*, 56 F.3d 1219, 1222-23 (10th Cir. 1995) (rejecting the defendant's argument that an indictment for bankruptcy fraud was defective because it failed to allege that the defendant's fraudulent statements were material). Defendant's remaining complaints are either irrelevant to the question of notice or, as noted above, are addressed in the "Scheme and Artifice" section of the indictment. The indictment is sufficient to put Defendant on notice of what he must defend against with respect to Counts 7 through 16 of the second superseding indictment.

### C.     Counts 17 – 18

Counts 17 and 18 of the second superseding indictment charge Defendant with money laundering, in violation of 18 U.S.C. § 1957. More specifically, these counts allege that Defendant

> did knowingly engage and attempt to engage in a monetary transaction by through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, . . . such property having been derived from a specified unlawful activity, that is fraud in the sale of securities in violation of 15 U.S.C. §§ 77q and 77x; all in violation of 18 U.S.C. [§] 1957 . . .

12

Superseding Indictment (second) Count 10 (Dkt. No. 191). Count 17 of the indictment cites the purchase of a Ferrari in the amount of $218,896.27 and Count 18 cites the purchase of a Ferrari in the amount of $213,459.67. As with the other counts of the indictment, the language of Counts 17 and 18 mirrors the language of the statute.

Defendant argues that these counts are insufficient because they do not allege that Defendant knew that the money in question was derived from any specified unlawful activity and do not allege that Defendant intended to conceal the source of the money involved. Defendant fails, however, to show that these elements must be alleged to make out a valid charge. To the contrary, the statute itself states that "the Government is not required to prove the defendant knew that the offense from which the criminally derived property was derived was specified unlawful activity." 18 U.S.C. 1957(c) (2012). Moreover, the incorporated paragraphs alleging the Scheme and Artifice to Defraud provide sufficient information for Defendant to determine the factual allegations supporting the claim that he knew that the source of the funds was from unlawful or deceitful conduct. Counts 17 and 18 allege all the essential elements of the crime of money laundering and effectively put Defendant on notice of what he must defend against at trial.

**D.     Counts 19 – 20**

Counts 19 and 20 of the second superseding indictment charge Defendant with tax evasion in violation of 18 U.S.C. § 7201. Count 19 of the second superseding indictment charges Defendant in the following manner:

> During the year 2005, in the Central Division of the District of Utah, CLAUD R. KOERBER, Defendant herein, a resident of the State of Utah, had and received a taxable income of in excess of $600,000; that upon said taxable income he owed to the United States of America income tax of in excess of $150,000; that he was required by law on or before October 15, 2006, to make an income

> tax return to the Internal Revenue Service, and to pay such income tax; that well knowing the foregoing facts, defendant KOERBER on or about October 15, 2006, in the District of Utah, did willfully and knowingly attempt to evade and defeat said income tax due and owing to the United States of America for the year 2005 by failing to make an income tax return to the Internal Revenue Service, by failing to pay said income tax to the Internal Revenue Service, and by causing various business entities under the control of defendant KOERBER to pay person expenses on his behalf; all in violation of 26 U.S.C. § 7201.

Superseding Indictment (second) Counts 11-12 (Dkt. No. 191). The language of Count 20 is identical to the language of Count 19, except it charges Defendant with failing to file a return or pay taxes for the year 2006. 18 U.S.C. § 7201 states that

> Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 ($500,000 in the case of a corporation), or imprisoned not more than 5 years, or both, together with the costs of prosecution.

(2012).

     Defendant argues that the charges made in these counts are deficient because they do not explain why having a business pay personal expenses on Defendant's behalf is illegal conduct. As support for his argument, Defendant cites *United States v. Rogers*, 636 F. Supp. 237, 248-50 (D. Colo. 1986). In *Rogers*, the district court held that an indictment that made the conclusory charge that the defendant had taken a deduction that he knew he was not entitled to take was not sufficient as a matter of law. The court stated that such an allegation "require[s] both defendants and [the court] to guess as to why the deductions [at issue] were fraudulent." *Id*. Because of this, the government could present legal and factual premises for the charges that differ from those presented to the grand jury.

*Rogers* is distinguishable from the charges made against Defendant in this case.  In *Rogers*, the counts of the indictment at issue relied solely on the allegation that the defendant had knowingly taken a deduction that he was not entitled to take.  The deficiency highlighted in *Rogers* was the failure of the indictment to specify why the defendant was not entitled to take the deduction at issue.  In contrast, in this case, the indictment alleges that Defendant, in each specified year, received taxable income, failed to file an income tax return, failed to pay income taxes, and caused various business entities he controlled to pay personal expenses on his behalf.  A common sense reading of Counts 19 and 20, when read to include the paragraphs alleging the Scheme and Artifice to Defraud, make clear the wrongful conduct alleged.  The amount of income for which no return was filed is stated for each year.  When read with the incorporated paragraphs, it is clear that the source of that income was the alleged misuse of funds from the investments described in the alleged scheme.  These counts are sufficient to state a valid charge against Defendant.

Furthermore, because Counts 19 and 20 would have been adequate to charge tax fraud if the allegation that Defendant caused business entities he controlled to pay personal expenses on his behalf were omitted, the allegation is a mere surplusage that can be disregarded by the court. *See United States v. Redcorn*, 528 F.3d 727, 734-35 (10th Cir. 2008) ("A part of the indictment unnecessary to and independent of the allegations of the offense to be proved may normally be treated as a useless averment that may be ignored.").  Any potential deficiency in the specific allegation identified is irrelevant to the determination of whether Counts 19 and 20 state the essential elements of the tax fraud crime or whether they put Defendant on sufficient notice to allow him to defend himself.

## IV. MOTION FOR SANCTIONS

Defendant's second motion for sanctions is based on Defendant's allegation that the government has made improper extrajudicial statements regarding this case. More specifically, Defendant alleges that the government has mounted a media campaign to prejudice Defendant and bias jurors and witnesses, accusing Defendant of using religion to prey on hundreds of victims. Defendant also alleges that the government used the media to attempt to link this case to other recent Ponzi scheme cases. As a sanction for the government's alleged misconduct, Defendant is seeking dismissal of the indictment, censure, estoppel, and/or an order prohibiting the government from introducing "any evidence of so-called affinity fraud, unfounded conclusions concerning the numerosity of alleged victims, or using the term 'ponzi.'" *See* Mem. Sup. Mot. for Sanctions 14 (Dkt. No. 222).

Pretrial publicity impacts a defendant's rights "only when it dictates the community's opinion as to guilt or innocence." *United States v. Abello-Silva*, 948 F.2d 1168, 1177 (10th Cir. 1991) (citing *Estes v. Texas*, 381 U.S. 532, 536 (1965)), abrogated on other grounds by *United States v. Bagley*, 473 U.S. 667 (1985). Trial courts have "broad discretion in gauging the effects of allegedly prejudicial publicity and in taking measures to insure a fair trial." *Id*. (citation omitted). Generally, however, "the proper occasion for determining juror partiality is upon voir dire examination." *Id*. at 1178 (citation omitted).

Defendant's concerns about the effect pretrial publicity may have on a jury pool are legitimate. In a case that attracts a lot of media attention, there is a danger that a defendant may not get a fair trial if public opinion is strongly against him or her. Sanctioning an attorney who makes statements to the press to stir up controversy in the media may be appropriate in some cases. It would be premature to address these issues at this stage of the proceeding. Defendant

16

has yet to provide evidence that the alleged conduct has impacted his right to a fair trial or an impartial jury. Should such evidence be produced, the court will address the issue at that time.

While Defendant points to many statements made by "the government," many of those statements were not made by the prosecutors in this case and many were not made publically. While evidence of an internal scheme to prejudice Defendant is troubling, such evidence does not constitute an extrajudicial public statement aimed at prejudicing Defendant and influencing potential jurors. Furthermore, it is not clear how sanctioning the prosecutors in this case would effectively influence statements made by state officials that are not directly involved in this case.

Defendant points to two press statements made by the United States Attorney's office in this case. The first was by former United States Attorney Brett Tolman at a press conference soon after the first indictment in this case was returned. That press conference occurred over three years ago. The second statement was a press release issued in September of 2011, shortly after the second superseding indictment was returned.

At the first press conference, Mr. Tolman apparently made the statement that Defendant was "preying on victims . . . through religion" and that there could have been hundreds of victims of the scheme. *See* Def.'s Mot. for Sanctions 2 (Dkt. No. 222). Defendant also alleges that Mr. Tolman stated that "these types of fraud are all too familiar." *Id*. at 4. While Mr. Tolman's remarks were inflammatory to some extent, there is little risk that they have influenced the jury pool for trial in this case. The comments happened over three years ago. Furthermore, it is not clear how sanctioning the government in this case would be effective since Mr. Tolman is no longer the United States Attorney supervising the case.

The second press release, issued in September of 2011, seems even more innocuous. Defendant argues that the press release's statement that the indictment alleges "investment and

tax fraud" was false.  Even assuming for the sake of argument that the statement was false, there is no evidence that the design of the statement was to influence potential jurors or prejudice Defendant.  The press release was two paragraphs long and not inflammatory.  *See Id.* at Ex. 4.  It is unlikely that many potential jurors are even aware that the press release even exists.

Because Defendant has failed to show at this time how any public statements of the prosecutors in this case have put into jeopardy the possibility of a fair trial, the court will deny his motion for sanctions against counsel for the government.

## CONCLUSION

For the reasons stated above the court hereby DENIES Defendant's motion to dismiss certain counts of the second superseding indictment on the grounds of untimeliness (Dkt. No. 220); GRANTS Defendant's motion to dismiss Counts 2 and 3, and DENIES Defendant's motion to dismiss all remaining counts of the second superseding indictment on the grounds of insufficiency (Dkt. No. 233).  The court also DENIES Defendant's motion for sanctions.  (Dkt. No. 222.)

DATED this 10th day of September, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge