Marcus R. Mumford (Utah Bar No. 12737)
MUMFORD PC
405 South Main, Suite 975
Salt Lake City, UT 84111
(801) 428-2000
mrm@mumfordpc.com
*Attorney for Defendant*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| United States of America,<br><br>    *Plaintiff*,<br><br>v.<br><br>Claud R. Koerber, a/k/a Rick Koerber,<br><br>    *Defendant*. | Case No. 2:09-cr-302-CW-EJF<br><br>MOTION TO DISMISS FOR IMPERMISSIBLE DELAY AND FOR SANCTIONS<br><br>**Oral Argument and**<br>**Evidentiary Hearing Requested**<br><br>Judge Clark Waddoups<br>Magistrate Judge Evelyn J. Furse |

The government having intentionally delayed this matter to prejudice Defendant, and having violated Defendant's right to a speedy trial, Defendant moves to dismiss all charges pursuant to the Fifth and Sixth amendments to the United States Constitution, the Speedy Trial Act (18 U.S.C. §§ 3161-3174), Rule 48 of the Federal Rules of Criminal Procedure, and other applicable authority.  This motion is based on the attached Memorandum of Points and Authorities, the records and pleadings on file with the court, all matters of which the court may take judicial notice, and such other evidence and argument as may be presented.  Defendant also hereby requests oral argument and an evidentiary hearing to address the issues raised.

### MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Defendant has previously established how the government's case was built on its use of privileged information, (Dkt 165), the twisting of Defendant's statements from *ex parte* interviews where the government intentionally violated his constitutional rights, (Dkt 360), and

on the personal and political motivations of members of a federal-state joint task force pursuing a theory that was admittedly "long on conclusions, but short on facts."[1]  The case has now been pending for almost 5 years.  In that time period, the government has prejudiced Defendant with its delays, whether in bringing the case to the grand jury, in trying to regroup after adverse court decisions calling into question the reliability of its evidence, (Dkt 360 at 10), or in the false certification that the United States Attorney made in September 2013, certifying that its appeal was "not taken for the purpose of delay," when in fact it was, which led to a delay of over 150 days.  (Dkt 366)

Based on these impermissible delays, Defendant moves to dismiss on four grounds:

First, dismissal is required under the Speedy Trial Act ("STA" or "the Act").  Title 18 U.S.C. § 3161(c) provides that trial of a defendant "shall commence within seventy days … from the date the defendant has appeared."  Where the government does not bring a defendant "to trial within the time limit required by section 3161 (c) as extended by section 3161 (h), the … indictment shall be dismissed."  18 U.S.C. § 3162(a)(2).  As set forth below, the government has allowed a total of more than **125** days to pass that were not excluded under the STA, and an additional **280** days total that count against the STA clock after correcting for faulty *ends of justice* orders entered in this case – either way, well past the 70-day time limit in the Act.  And Defendant is entitled to dismissal **with prejudice**.

Second, dismissal is required under the Sixth Amendment.  The Supreme Court has held that "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment…[and] one of the most basic rights preserved by our Constitution."  *Klopfer v. North Carolina*, 386 U.S. 213, 223 (1967) ("The pendency of [an] indictment may subject [a

---

[1]        *See* Dkt 234-3 & -4 (FBI302-074-0027 to -0030) & (IRSMOI-499 to -501).

defendant] to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes."). The majority of the more than 5-year delay in this case, from May 2009 to the present, is directly attributable to the government's actions: Despite promises, the government did not certify that it had provided all required discovery to Defendant until August 31, 2010 (more than a year after the first indictment). (8/31/2010 Hrg. 3:15-18.) The government also refused to admit that it had relied upon Defendant's attorney-client privileged information in obtaining the initial May 26, 2009 indictment. And it continued to use Defendant's privileged information even after it promised to sequester it, specifically incorporating that information into the superseding indictment filed November 10, 2009. Moreover, prosecutors and investigators refused to admit they knew Defendant was represented in February 2009, when they schemed to interview him *ex parte*. Finally, the government thwarted Defendant's rights to a speedy trial by falsely certifying in September 2013 that it was not taking appeal of the Court's August 15, 2013 Order for the purpose of delay, only later admitting that it never had authorization from the Solicitor General to seek the appeal in the first instance, resulting in more than 8 months unnecessary delay. Using the standards outlined in *Barker v. Wingo*, 407 U.S. 514 (1972), and *Doggett v. United States*, 505 U.S. 647 (1992), Defendant is entitled to dismissal.

Third, dismissal is appropriate under Rule 48(b)(3) of the Federal Rules of Criminal Procedure for unnecessary delay in bringing a defendant to trial. As recognized by *United States v. Begay*, 602 F.3d 1150, 1153 (10th Cir. 2010), dismissal under Rule 48 is committed to the "sound discretion of the court" pursuant to its inherent authority to police misconduct. The charges in this case should be dismissed on account the unnecessary delay of over **210** days resulting from the government's frivolous motions filed to manipulate the STA clock, and from

the United States Attorney's false certification that the time it took to pursue the government's appeal was "not taken for purposes of delay."

Fourth, all pending charges should be dismissed under Rule 48(b)(1) and the Fifth Amendment as a result of the government's intentional delay in presenting a charge to a grand jury between December 2008 and May 2009, while it engaged in a planned and orchestrated attempt gain unfair advantage of Defendant, specifically two unethical and unlawful *ex parte* interviews, where prosecutors impermissibly sought disclosure of Defendant's trial strategy and planned trial defenses. *See, e.g.*, *United States v. Gouveia*, 467 U.S. 180, 192 (1984) ("[T]he Fifth Amendment requires the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." (citations omitted)).

## STATEMENT OF FACTS

This section begins with an audit of the time elapsed in this case from May 26, 2009, to the present. It establishes first, that more than 70 days have elapsed unexcluded under the STA clock, and second, that even more time is counted against the STA clock when the Court corrects for faulty "ends of justice" orders and prosecutorial misconduct under § 3162(b).

## I.   CALCULATION OF TIME UNDER THE SPEEDY TRIAL ACT

1.   Time under the Act runs from the time of Defendant's first appearance in this case, June 19, 2009, when Defendant first appeared to plead not guilty to the charges alleged. 18 U.S.C. § 3161(c). Defendant has broken up time – from June 19, 2009 to April 16, 2014 – into twenty-six periods individually labeled A through Z. In recognition of Tenth Circuit authority

suggesting that the STA clock restarted when Defendant pled not guilty to the superseding indictment, the presentation of the issue begins with December 10, 2009.[2]  (Dkt 28)

2.      For each period of time, this subsection designates conservatively how many days count against the STA clock, as compared to those days purportedly excluded by __*any*__ of the provisions set forth in § 3161(h): __116__ days against the STA clock if the Court only considers time elapsed since December 10, 2009, and __125__ days total if the Court also includes time elapsed since June 19, 2009.

3.      In calculating time excluded under §3161(h)(1)(D), Defendant assumes that both the day of a motion filing *and* the day of a court order or ruling disposing of the motion are excluded.  *See United States v. Williams*, 511 F.3d 1044, 1050 (10th Cir. 2007) ("Although we have not directly addressed the issue … [w]e nonetheless assume in our calculations that the

---

[2]      The superseding indictment filed November 10, 2009, added 19 new charges to the May 26, 2009 indictment.  In comparison, the second superseding indictment filed September 29, 2011, dropped two counts from the November 10, 2009 indictment.  In a prior ruling on a different motion, this court has previously held that the second superseding indictment was "virtually identical to the first superseding indictment … [and] there is no room for the suggestion that the second superseding indictment 'broadens or substantially amends the charges in the first [superseding] indictment.'"  (9/11/2012 Order at 5-6 (quoting *United States v. Davis*, 953 F.2d 1482, 1491 (10th Cir. 1992).)  Because the second superseding indictment did not add any new charges or substantive detail, it did not restart the STA clock.  *United States v. Mora*, 135 F.3d 1351, 1355 (10th Cir. 1998) (citing *United States v. Long*, 900 F.2d 1270, 1275 n. 4 (8th Cir. 1990) (clock is not restarted upon the return of a superseding indictment); *United States v. Bermea*, 30 F.3d 1539, 1567 (5th Cir. 1994) (superseding indictment does not affect the speedy trial clock for offenses charged in original indictment or any offenses required to be joined, and the clock continues to run from original indictment or arraignment); *United States v. Savage*, 863 F.2d 595, 597 (8th Cir. 1988) (superseding indictment which merely embellishes an earlier charge or makes technical changes will not reset the speedy trial clock)).  For purposes of this section, Defendant assumes that the new counts added in the first superseding indictment started a new STA clock, but, as set forth below, argues in the alternative that the 19 counts added in November 2009 arise out of the same facts alleged in the May 2009 indictment, and thus the STA clock did not restart on December 10, 2009.  *See id.*

excludable period 'from the filing of the motion through the conclusion ... of such motion'
includes both the date of resolution of any pretrial motion and the date of filing.").[3]

4.       Finally, Defendant argues separately below that **280** additional days should be
counted against the STA clock after the Court corrects for eight faulty *ends of justice*
continuances, and more than **224** additional days as a sanction for (i) the government's frivolous
motions filed solely for the purpose of delay, and (ii) for the United States Attorney's false
certification (Dkt 366) that its appeal of the Court's August 15, 2013 Order was "not taken for
purposes of delay," when it was.  Either way, the Act's 70-day limit has been violated.

<u>**Time from December 10, 2009 to April 14, 2014**</u>
<u>**The "STA Clock" or "December 10, 2009 Speedy Trial Clock"**</u>

5.       As set forth below, the total number of elapsed time under the Act, for the period
of December 10, 2009 through April 16, 2014, is **116** days.

**<u>Period A.</u>**      <u>December 10, 2009 (Dkt 28) to December 14, 2009 (Dkt 29)</u>

6.       The first superseding indictment was filed on November 10, 2009 (Dkt 25).
Defendant appeared for arraignment on December 10, 2009, before Judge Nuffer (Dkt 28).  At
that arraignment, Judge Nuffer inquired, "Do you have a current scheduling conference with
[Judge Alba] or are you waiting…"  (12/10/2009 Hrg. 5:11-12).  The government responded,
"We are waiting for a date with Judge Alba."  (Id. 5:12.)  The government also reported that its
promised discovery had, "yet to be imported into our computer system and checked to be correct,
but we will be providing that information within a week or two."  (Id. 5:16-24).  No continuances

---

[3]      It does not appear the Tenth Circuit has ever definitively decided this issue, and other
circuits have reached different conclusions.  *See, e.g., United States v. Thomas*, 49 F.3d 253, 256
(6th Cir. 1995) ("[O]nly actual days elapsed between the filing of the motion and its disposition
are counted.").  If the issue becomes material to the issues presented in this motion, Defendant
reserves the right to argue for these additional unexcludable days.

were granted, no time excluded, and there was no discussion of the Act.  At the conclusion of the

hearing, Judge Nuffer simply stated, "Okay.  All right.  Well, I'll just pass that on."  (Id.)

7.      From December 10, 2009, to December 14, 2009, there were no orders entered

excluding any time related to these charges.  On December 14, 2009, Magistrate Alba entered an

order based on purported ends of justice findings from a October 23, 2009 hearing (Dkt 20),

before the superseding indictment was filed. Defendant argues below that this order did not

exclude time for the December 10, 2009 STA clock.  But for the purposes of the calculation in

this subsection, Defendant assumes that any order purporting to exclude time under § 3161(h)

was proper.  Accordingly, December 11, 12 and 13 count against the STA clock, as they passed

before Judge Alba's December 14, 2009 Order.  For Period A, the STA clock is at **3** days.

**Period B.**      December 14, 2009 (Dkt 29) to December 29, 2009 (Dkt 31)

8.      On December 14, 2009, Judge Alba entered a written order (Dkt 29) setting a

status conference for January 19, 2010.  While the order purported to exclude time under

§3161(h)(7)(A) and (B), its text only references the first indictment, and findings that were

considered on October 23, 3009 (prior to the return of the superseding indictment).  (Dkt 29)

Nevertheless, consistent with the conservative approach outlined above, and assuming for the

purpose of this subsection that any order purporting to exclude time under § 3161(h) was proper,

Defendant does not count any of the 15 days from December 14 to 28 against the STA clock.  In

sum, Period B adds **0** days to the STA clock.  For Periods A-B, the STA clock remains at **3** days.

**Period C.**      December 29, 2009 (Dkt 31) to January 18, 2010

9.      On December 29, 2009, Judge Alba entered an "Amended Notice of Hearing"

(Dkt 31) continuing the January 19, 2010 status conference to January 27, 2010.   Judge Alba did

not include any order excluding time.  While Defendant argues below that this is significant

pertaining to ends-of-justice considerations, here, no time is counted against the clock.  Thus, Defendant does not count any of the 21 days from December 29, 2009, to January 18, 2010 against the STA clock.  In sum, Period C adds **0** days to the STA clock.  For Periods A-C, the STA clock remains at **3** days.

> **Period D.**      January 19, 2010 to January 27, 2010 (Dkt 34)

10.     Assuming Judge Alba's December 14, 2009 order (Dkt 29) excluded time, it only did so up to "January 19, 2010."  And the "Amended Notice of Hearing" entered December 29, 2009 (Dkt 31) did not include any new findings, or order any additional time excluded.  From that day, there was nothing in place to exclude time under § 3161(h).[4]  Accordingly, eight days from January 19, 2010 (the originally scheduled hearing date) to January 27, 2010 (Dkt 34), count against the STA clock, including: January 19, 20, 21, 22, 23, 24, 25, and 26.  In sum, Period D adds **8** days to the STA clock.  For Periods A-D, the STA clock is **11** days.

> **Period E.**      January 27, 2010 (Dkt 34 ) to February 9, 2010 (Dkt 35)

11.     Defendant argues below that Period E represents one of the periods that should count against the STA clock because of a faulty *ends of justice* order entered by Magistrate Alba during the hearing on January 27, 2010 (Dkt 34).  But, as with other disputes regarding "purported" periods of exclusion, for purposes of the calculation in this subsection, no time is counted on the STA clock, and 12 total *ends of justice* days from January 27, 2010, to February

---

[4]      This situation recurs throughout the docket in this case, where a hearing is requested (which Defendant treats as a motion pursuant to §3161(h)(1)(D)) and that request is resolved by the court setting of a specific date.  Following the setting of the hearing or status conference, and where there is no order otherwise purporting to exclude time, and no other pending motion, time runs against the STA clock.  *United States v. Barnes*, 159 F.3d 4, 12 (1st Cir. 1998) ("Once a conference has been set down on a court's calendar, there is no longer any 'pending motion' to decide.  The motion seeking a status conference has already been resolved.").

9, 2010, are not counted.  In sum, Period E adds **0** days to the STA clock.  For Periods A-E, the STA clock remains at **11** days.

      **Period F.**      February 9, 2010 (Dkt 35) to June 2, 2011 (Dkt 165)

     12.     On February 9, 2010, Defendant filed a motion (Dkt 35) related to the government's intrusions into his privileged information.  The filing of the motion automatically excluded time under §3161(h)(1)(D), until August 18, 2010, when Magistrate Alba issued his ruling from the bench, granting the motion in part and denying it in part.  Thereafter, the STA clock ran for **7** days until August 26, 2010, when the government filed a motion for clarification (Dkt 92), so that August 19, 20, 21, 22, 23, 24, and 25 count against the STA clock.

     13.     The government's motion for clarification (Dkt 92) was resolved the same day (Aug. 26) (Dkt 93).  Thus, August 27, 28, 29, 30 and 31 also elapsed under the Act, adding **5** days to the STA clock.

     14.     On August 31, 2010, Magistrate Alba conducted a status conference (Dkt 94), where he purported to exclude time going forward.  On October 8, 2010, the government (Dkt 109) and Defendant (Dkt 110) filed objections to Judge Alba's ruling, also triggering the 30-day "advisement period" for this Court and excluding time under § 3161(h)(1)(H).  *See United States v. Mora*, 135 F.3d 1351, 1357-58 (10th Cir. 1998) (clarifying that both the magistrate and the district court have 30 days to consider a motion pursuant to § 3161(h)(1)(H)).  In that time period, the parties filed other motions (Dkts 96, 99, 100), which tolled time automatically under § 3161(h)(1).  On November 23, 2010, the district court sustained in part Defendant's objections and reopened the hearing on Defendant's motion (Dkt 35).  Over the course of the next year, the Court held a number of evidentiary hearings on the motion (Dkt 35) and issued a ruling on June 2, 2011, granting the motion in part (Dkt 165).  For all of these reasons, the time from September

1, 2010, through June 2, 2011, is excluded from calculation.  In sum, Period F adds **12** days to the STA clock.  For Periods A-F, the STA clock is at **23** days.

  **Period G.**  June 2, 2011 (Dkt 165) to June 16, 2011 (Dkt 172)

   15.  On June 2, 2011, the court issued a memorandum decision (Dkt 165) on Defendant's motion (Dkt 35).  After the order was issued, there were no applicable exclusionary provisions in effect under § 3161(h), and the government allowed several days to run until June 7, 2011 (Dkt 167), when it filed a motion to stay certain provisions of the order.  This motion was granted on June 16, 2011 (Dkt 172).  Accordingly, June 7 through June 16 are automatically excluded from the STA clock by §3161(h)(1)(D), but June 3, 4, 5, and 6 count against the STA clock.  In sum, Period G added **4** days to the STA clock.  For A-G, the STA clock is **27** days.

  **Period H.**  June 16, 2011 (Dkt 167) to June 23, 2011 (Dkt 174)

   16.  On June 16, 2011 (Dkt 172), the court granted the government's motion to stay destruction of certain privileged materials.  Thereafter, there were no applicable exclusionary provisions in effect under § 3161(h), and the government allowed several days to run until June 23, 2011 (Dkt 167), when it filed motions to admit *pro hac vice* government attorneys Leslie A. Goemaat (Dkt 173) and Jennifer R. Laraia (Dkt 174).  Accordingly, June 17, 18, 19, 20, 21, and 22 count against the STA clock.  In sum, Period H added **6** days to the STA clock.  For Periods A-H, the STA clock is **33** days.

  **Period I.**  June 24, 2011 (Dkt 175) to July 7, 2011 (Dkt 178)

   17.  On June 24, 2011 (Dkt 175 & Dkt 176), the court granted the government's motions to admit *pro hac vice* attorneys Leslie A. Goemaat (Dkt 173) and Jennifer R. Laraia (Dkt 174).  There is some question whether a motion to admit a government lawyer *pro hac vice* should toll time automatically under § 3161(h)(1)(D), but for purposes of this subsection

Defendant assumes it would, until the Court ruled on it, at which point the STA clock would have started again.  After the Court's June 24, 2011 ruling, the government allowed several days to run until July 7, 2011, when it filed a motion for status conference.  Thus, June 25, 26, 27, 28, 29, 30 and July 1, 2, 3, 4, 5, and 6 all count against the STA clock.  In sum, Period I added **12** days to the STA clock.  For Periods A-I, the STA clock is **45** days.

> **Period J.**     July 7, 2011 (Dkt 178) to August 2, 2011 (Dkt 185)

18.     On July 7, 2011, the government filed a motion (Dkt 178) for a status conference. In the motion (as with previous instances) there was no request to exclude time under the Act. However, under §3161(h)(1)(D), the filing of the motion automatically excluded time until July 12, 2011 (Dkt 180), when the court granted the motion and set a hearing for July 27, 2011.

19.     On July 21, 2011, without explanation and without a request by the government to exclude time, or an order by the court excluding time, the hearing was continued to August 2, 2011.  From July 7, 2011, 20 days passed until the hearing on August 2, 2011 (Dkt 185).  In that time, there were no provisions tolling time under § 3161(h), and the STA clock was running. Thus, July 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31 and August 1 all count against the STA clock.  In sum, Period J added **20** days to the STA clock.  For Periods A-J, the STA clock is **65** days.

> **Period K.**     August 2, 2011 (Dkt 185) to October 6, 2011 (Dkt 194)

20.     At the August 2, 2011 (Dkt 185) hearing, Magistrate Alba entered a purported ends of justice order, excluding time through October 7, 2011.  Defendant argues below that Magistrate Alba entered the order in error, and that Period K represents one of the periods of time that should count against the STA clock.  But for purposes of the calculation in this

subsection, the 64 *ends of justice* days are not counted.  In sum, Period K adds **0** days to the STA clock.  For Periods A-K, the STA clock remains at **65** days.

**Period L.**     October 6, 2011 (Dkt 194) to November 1, 2011 (Dkt 200)

21.     At the August 2 hearing, the government informed Judge Alba that it intended to file a second superseding indictment.  In anticipation of that event, Judge Alba scheduled a status hearing for October 7, 2011.  When the second superseding indictment was entered, a summons was also issued (Dkt 192), setting the arraignment for October 27, 2011.  On October 6, 2011, Defendant filed an unopposed motion to continue the hearing to October 27, 2011 (Dkt 194).  That same day, the court granted the motion with a simple docket entry and continued the hearing until October 27, 2011.   No order was entered excluding additional time.

22.     On October 25, 2011 (Dkt 197), Defendant filed a second unopposed motion, this time to continue the October 27, 2011 hearing.  The court granted the motion the same day and entered a written order (Dkt 198).  The hearing was continued to January 10, 2012.  No order was entered excluding any time additional time.

23.     Because the second superseding indictment did not add any new charges and, as the court since subsequently concluded, it was "virtually identical" to the prior indictment (*See* Dkt 284), all of the time in this period counts against the STA clock.  *Mora*, 135 F.3d at 1355.

24.     On October 28, 2011 (Dkt 199), the government filed a motion for a status conference.  This motion remained pending, excluding time automatically, until November 1, 2011, when the court granted the motion and set a hearing for November 15, 2011.  From October 7, 2011, to October 28, 2011, there were no other motions pending[5] or other applicable

---

[5]     On September 19, 2011 the government apparently filed a mistaken second motion for the *pro hac vice* admission of Leslie A. Goemaat (Dkt 189).  The court had already granted her admission on June 24, 2011 (Dkt 175) and Ms. Goemaat had withdrawn from the case on August

provisions excluding time under § 3161(h).  The STA clock was running and October 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, and 26, 27 all count against it.  In sum, Period L added **20** days to the STA clock.  For Periods A-L, the STA clock is at **85** days.

**Period M.**    November 1, 2011 (Dkt 200) to November 15, 2011 (Dkt 201)

25.    On November 1, 2011 (Dkt 200), the court granted the government's motion (Dkt 199) for a status conference, and scheduled a hearing for November 15, 2011.  No request was made in the motion to exclude time, and no such order was entered.  In fact, in its motion (Dkt 199), the government stated: "Although the United States did not object to a continuance of the defendant's arraignment based upon his medical condition, because the second superseding indictment did not add new charges, the speedy trial clock has not restarted.  Even though the defendant is unavailable to appear in court, the court can still set a time for motions to be filed and insure compliance with the Speedy Trial Act."  But the STA clock did not restart with the filing of the second superseding indictment.  As the Court later determined, it was "virtually identical" to the superseding indictment filed November 10, 2009, and "there is no room for the suggestion that the second superseding indictment 'broadens or substantially amends the charges in the first [superseding] indictment.'"  (Dkt 284 at 5-6 (quoting *Davis*, 953 F.2d at 1491))

---

30, 2011.  Throughout this exhibit, Defendant has treated all motions as effective for the purposes of excluding time under the Speedy Trial Act, but this motion is the exception for the following reasons: first, a motion for the government's lawyer to be admitted *pro hac vice* is a procedural technicality, second, there was never a pending dispute as to it, and more importantly, the motion had already been granted.  *See United States v. Ferguson*, 565 F. Supp. 2d 32, 40 (D.D.C. 2008) (granted STA motion and rejecting the government's argument that a motion for admission *pro hac vice* excludes time because "the Court had previously issued an order … admitting [the attorney] *pro hace vice* [and a]ccordingly ... [the] motion was administratively terminated by the Court on the same day …. [and] [n]o time is therefore excludable as a result of this motion").  In similar situations, the Tenth Circuit has recognized that motions like this, for purposes of the Speedy Trial Act, are really not motions at all.  *See, e.g., Williams*, 511 F.3d at 1054; *United States v. Gonzales*, 137 F.3d 1431, 1435 (10th Cir. 1998); *see also United States v. Sutter*, 340 F.3d 1022, 1028, opinion amended on denial of reh'g, 348 F.3d 789 (9th Cir. 2003).

Because the second superseding indictment did not add any new charges or substantive detail, it did not restart the STA clock. *Mora*, 135 F.3d at 1355 (citations omitted).

26.     Thus, while the court granted the government's motion for a status conference, it never made findings or entered an order to exclude time.  And the second superseding indictment did not restart the STA clock.  Accordingly, after the court ruled on the government's motion, there were no applicable exclusionary provisions in effect under § 3161(h), and time continued to run from November 1, 2011 through to the hearing date.  November 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 14, and 15 count against the STA clock.  In sum, Period M added **14** days to the STA clock.  For Periods A-M, the STA clock is at **99** days.

> **Period N.**      November 15, 2011 (Dkt 201) to November 19, 2011 (Dkt 202)

27.     At the November 15, 2011 (Dkt 201) hearing, Judge Alba entered a purported ends of justice order, excluding time through November 19, 2011 (Dkt 202).  Defendant argues below that Period N represents one of the periods that counts against the STA clock because Judge Alba's November 15, 2011 *ends of justice* order (Dkt 201) was invalid.  But for purposes of the calculation in this subsection, the 3 days are not counted.  In sum, Period N adds **0** days to the STA clock.  For Periods A-N, the STA clock remains at **99** days.

> **Period O.**      November 19, 2011 (Dkt 202) to August 15, 2013 (Dkt 360)

28.     The fact that motions were pending from November 19, 2011 (Dkt 202), to August 15, 2013, including Defendant's motion to suppress (Dkt 258) that was filed April 13, 2012, which the Court granted August 15, 2013 (Dkt 360), automatically excludes that time from calculation under the Act, pursuant to §3 161(h)(1)(d) and § 3161(h)(1)(H).  Accordingly, Period O adds **0** days to the STA clock.  For Periods A-O, the STA clock remains at **99** days.

**Period P.**     August 15, 2013 (Dkt 360) to August 20, 2013 (Dkt 363)

29.     On August 15, 2013, the court entered its final order (Dkt 360) pertaining

Defendant's motion to suppress (Dkt 258).  There were no other motions outstanding that

required a hearing, and more than 30 days had elapsed for any motions that may have still been

under consideration (*See, e.g.,* Dkt 189, Dkt 288 & Dkt 346).  18 U.S.C. § 3161(h)(1)(H).

Accordingly, as of August 15, 2013, there was no reason to exclude time under § 3161(h), and

the STA clock was running.

30.     On August 19, 2013, the government filed a motion for status conference (Dkt

361).  The text of the motion states that, "The United States, by the undersigned Assistant United

States Attorney, moves for a status and scheduling conference in order to insure compliance with

the Speedy Trial Act."  In other words, the government knew the STA clock was running.   The

next day, August 20, 2013, the court granted the motion (Dkt 363) and set hearing for August 27,

2013 (Dkt 364).  There was no order excluding time under the Act.  Thus, the time from August

15, 2013, to the filing of the government's motion (Dkt 361) (August 16, 17, and 18) counted

against the STA clock.  In sum, Period P added **3** days to the STA clock.  For Periods A-P, the

STA clock is at **102** days.

**Period Q.**     August 20, 2013 (Dkt 363) to February 10, 2014 (Dkt 394)

31.     On August 20, 2013, the court granted the government's motion (Dkt 361) and set

a hearing for August 27, 2013 (Dkt 364). There was no order excluding time and there were no

applicable provisions of the Act to exclude time under § 3161(h).  Thus, August 21, 22, 23, 24,

25, and 26 counted against the STA clock.[6]  In sum, Period Q added **6** days to the STA clock.

For Periods A-Q, the STA clock is at **108** days.

**Period R.**      February 10, 2014 (Dkt 394) to March 28, 2014 (Dkt 411)

32.      Following the August 27, 2013 hearing, the government filed a *notice of appeal*

on September 13, 2013 (Dkt 366), which triggered the automatic exclusion of time under

§3161(h)(1)(C).  This exclusion of time lasted the entire 150-day period to February 10, 2014,

when the government successfully dismissed its appeal and the district court received the

mandate from the Tenth Circuit (Dkt 394).[7]  As of February 10, 2014, the STA clock was

running and there was no basis to exclude time under § 3161(h).

33.      On February 14, 2014 the government filed a motion (Dkt 395) to reconsider the

Court's August 15, 2013 suppression order (Dkt 360).  Defendant argues below that this motion

was without merit or support and thus contrary to § 3162(b)(2)-(3).  Indeed, it did not even have

a memorandum attached, and the solicitor general had just instructed prosecutors to dismiss their

appeal of that ruling.  Given the number of times this has occurred in this case, the Court should

take the opportunity occasioned by this motion to review the improper practices of the Office of

---

[6]      At the conclusion of the status conference on August 27, 2013, the court entered an "ends of justice" order pursuant to §3161(h)(7)(A) and (B).  The order excluded time from August 27, 2013 through to February 10, 2014.  (8/27/2013 Hrg. 13:9-17.)  AUSA Bearnson had impermissibly asked the court to retroactively exclude 12 days prior to August 27, 2013, but the court disagreed.  This situation was addressed again at a hearing on November 13, 2013, where government counsel stipulated that the STA clock *had been running* prior to the August 27 hearing and only stopped on August 27, 2013: "We agree, Your Honor. That is correct." (11/13/2013 Hrg. 15:11-6:1.)  The court responded, "All right.  So that will be the court's ruling is that we will proceed with August 27th being the date that the Speedy Trial Act was tolled." (Id. 16:2-4; *see also* 8/27/2013 Hrg. at 7:17-19) (Court: "I've either got to set [this case] for trial or the defense has to file a motion of some sort that would toll the Speedy Trial Act.").

[7]      Defendant argues separately below that this time should not be excluded based upon deception and misconduct, and that this also has 5th and 6th Amendment implications justifying dismissal.  Alternatively, Defendant also argues below that the government's deceptive conduct here justifies dismissal under Rule 48.

United States Attorney for the District of Utah.  The Tenth Circuit has recognized that similarly frivolous motions do not count as motions at all for purposes of the Act.  *See, e.g., Williams*, 511 F.3d at 1054; *Gonzales*, 137 F.3d at 1435; *Sutter*, 340 F.3d at 1028-29.  Alternatively, the time tolled by such a motion should be offset by the sanction of running the STA clock an equivalent number of days pursuant to § 3162(b) ("The authority to punish provided for by this subsection shall be in addition to any other authority or power available to such court") and Rule 48 ("The court may dismiss an indictment … if unnecessary delay occurs in … bringing a defendant to trial").  For purposes of the calculation in this subsection, the time from February 14, 2014, to the March 28, 2014 hearing will be treated as excluded pursuant to § 3161(h)(1)(D).  Accordingly, February 11, 12, and 13 all count against the STA clock, and Period R added **3** days to the STA clock.  For Periods A-R, the STA clock is at **111** days.

> **Period S.**    March 28, 2014 (Dkt 411) to April 15, 2014 (Dkt 421)

34.    The court conducted a hearing on March 28, 2014 (Dkt 411), and denied the government's motion to reconsider (Dkt 395).  The court also explicitly refused to exclude time under the Act.[8]  Following the hearing, the court entered a written order (Dkt 412) reflecting the rulings it had delivered from the bench.   For clarity, the court also terminated "all pending motions on the docket (Dkt Nos. 398, 288, 266, 261, and 223)," and set a trial date for June 13, 2014, based in significant part upon Defendant's position that he wanted a trial date "the sooner the better" if there were going to be no further *ends of justice* continuances.

35.    After the March 28, 2014 hearing, there were no pending motions to exclude time under § 3161(h)(1)(D), and there was no order excluding time under § 3161(h)(7)(A) and (B) for

---

[8]    "The court is not at this time tolling time for the Speedy Trial Act or making any determination as to Speedy Trial Act issues, which may also be briefed as the parties deem appropriate."  (Dkt 412 at 2)

*ends of justice*.  Thus, time was running until April 3, 2014, when the government filed a motion
to exclude time (Dkt 413).  As set forth below, that motion was frivolous and should not exclude
time.  *See, e.g., Williams*, 511 F.3d at 1054; *Gonzales*, 137 F.3d at 1435; *Sutter*, 340 F.3d at
1028-29.  But for purposes of the calculation in this subsection, March 29, 30, 31, April 1, 2
count against the STA clock.  In sum, Period S added **5** days to the STA clock.  For Periods A-S,
the STA clock is at **116** days.

**Time from June 19, 2009 to December 10, 2009**
**"June 19, 2009 Speedy Trial Clock"**

36.     In addition to the STA clock calculations above, the time that passed from June
19, 2009, when Defendant appeared to plead not guilty to the charges in the original indictment,
to December 10, 2009, is also significant.  The original indictment filed May 29, 2009, not only
alleged mail fraud based on Defendant's privileged document, but also first alleged charges for
wire fraud and tax evasion that are still pending and subject to the June 19, 2009 STA clock.
Defendant also argues that the additional counts set forth in the first and second superseding
indictments were based on the same vague allegations of a "scheme and artifice to defraud," and
those counts should likewise be subject to the June 19, 2009 STA clock.  Though not
chronological, for ease in reference, we will refer to these seven time periods from May 26,
2009, to December 10, 2009, beginning with Period T.

**Period T.**     May 26, 2009 (Dkt 1) to June 19, 2009 (Dkt 10)

37.     The original indictment was filed May 26, 2009.  Pursuant to § 3161(c)(1), time
under the June 19, 2009 STA clock only began to run on June 29, 2009, when Defendant
appeared and pleaded not guilty.  Period T added **0** days to the June 19, 2009 STA clock.

18

**Period U.**     June 19, 2009 (Dkt 10) to August 4, 2009 (Dkt 14)

38.     At the June 19 hearing, no trial date was set.[9]  Judge Alba explained:

> Normally at this juncture I look for a trial date and things of that sort.  In light of the voluminous discovery that is at issue here, I would like to approach this differently.  As soon as the rest of the discovery is available to the government, make it available to counsel.  Mr. Mooney [Defendant's counsel at the time], I want to have a status conference on this case.

(6/19/2009 Hrg. 6:5-11).   No discussion was had or inquiry made regarding the nature or

relevance of discovery.  The court simply concluded,

> In light of that, I want the time excluded, Mr. Walz, under the Speedy Trial Act. If you'll prepare an order excluding the time based on allowing counsel an opportunity to get the discovery and the voluminous nature of the case.

(Id. 7:10-14).  Assistant United States Attorney, and lead prosecutor in this case, Mr. Walz

replied, "We will, Your Honor."  (Id.)   The subsequent minute entry says, "All time is to be

excluded pursuant to the Speedy Trial Act, Mr. Walz to prepare an order."  (Dkt 10)  This is

significant because Mr. Walz never circulated an order,[10] and no order was ever entered.

39.     Nor did Magistrate Alba's action constitute the granting of an actual

"continuance."[11]  He simply set a hearing date for August 31, 2009.  Until the joint motion filed

---

[9]     18 U.S.C. § 3161(a) ("In any case involving a defendant charged with an offense, the appropriate judicial officer, at the earliest practicable time, shall, after consultation with the counsel for the defendant and the attorney for the Government, set the case for trial on a day certain, or list it for trial on a weekly or other short-term trial calendar at a place within the judicial district, so as to assure a speedy trial.").

[10]     The government has almost consistently refused to circulate proposed orders to Defendant's counsel in this matter.  *See* DUCrimR 12-1(f); *see also* Dkt 133 at n.1.

[11]     Neither party requested a "continuance" of anything.  Although the Act potentially allows an *ends of justice* order, it would have been made on the court's "own motion," and there is nothing to indicate that.  *See also* DUCrimR 12-1(i) ("All motions for extensions of time or continuance under the Speedy Trial Act shall state: … the date the act is due to occur without the requested extension or continuance … including why the act cannot be done within the originally allotted time … [and] [i]f an extension is requested due to the complexity of the case, including voluminous discovery, the motion must include specific facts demonstrating such complexity …

on August 4, 2009 (Dkt 14), time was running, and there was nothing to exclude it under §

3161(h).   As argued below, this purported exclusion of time is invalid.  But the calculation in

this subsection assumes that all purportedly excluded time was effective, and thus the 46 days

from June 19, 2009, to August 4, 2009, are excluded from the STA clock.   In sum, Period U

added **0** days to the June 19, 2009 STA clock.

  **Period V.**  August 4, 2009 (Dkt 14) to August 31, 2009

  40.  On August 4, 2009, the government and the Defendant filed a joint motion (Dkt

14) to continue the August 31, 2009 hearing.  The motion was granted on August 10, 2009 (Dkt

15), and the hearing continued until October 13.  The period of time from August 4, 2009,

through August 10, 2009, was automatically excluded from calculation under § 3161(h)(1)(D).

  41.  Defendant argues below that the June 19 *ends of justice* order was invalid and

August 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, and 31 all

count against the June 19, 2009 STA clock.  But for purposes of this subsection, we assume these

21 days were excluded, and Period V added **0** days to the June 19, 2009 STA clock.

  **Period W.**  August 31, 2009 to October 13, 2009

  42.  The parties' joint motion (Dkt 14) was granted on August 10, 2009 (Dkt 15).

Accordingly, the hearing originally scheduled for August 31, 2009, was continued to October 13,

2009.  In the motion, the parties requested that the expanded time be excluded with an *ends of*

*justice* order, pursuant to 18 U.S.C §3161(h)(7)(A) and (B).

  43.  The stated grounds for the *ends of justice* order were:  1) Mistaken prior

representations by the government as to the volume of discovery that had been originally

produced to Defendant pertaining to the total expected volume of discovery in this case; 2) The

---

[and] an explanation of how the reasons offered in support of the motion justify the length of the
extension or continuance that has been requested.").

time the government required to scan and produce new discovery; and 3) Defendant's counsel

Mr. Mooney, was scheduled for a three-week trial in California.  For these reasons, and also "to

allow defense counsel to better determine how long he anticipates analysis of the discovery will

take and when motions can be filed," the parties moved to continue the hearing until "late

September or early October 2009."  The court stated in its order (Dkt 15):

> The Court, having considered the Joint Motion to Continue[,] the assertions made
> therein, and the record of the case: IT IS ORDERED that the Status Conference
> set for August 31, 2009, is stricken and that a status conference is set before Chief
> Magistrate Judge Samuel Alba on the 13th day of Oct, 2009 @ 9:00 am…IT IS
> ORDERED that the period of delay from August 31, 2009, to the eventual hearing
> date is excluded pursuant to 18 U.S.C. §3161(h)(7)(A) and (B) from the time
> within which this trial must commence pursuant to 18 U.S.C. §3161.

The minute entry states in relevant part, "ORDER TO CONTINUE – Ends of Justice as to Claud

R. Koerber Time excluded from 08/31/2009 until 10/13/2009."  (Dkt 15)  Thus, the court

purported to exclude time under the *ends of justice* provision of the Act.

44.     Defendant argues below that this purported *ends of justice* order is invalid under §

3161(h)(7)(A) and (B) and by the plain language of the statute.  Nevertheless, for the calculation

in this subsection the time from August 31, 2009, to October 13, 2009, is not counted against the

June 19, 2009 STA clock.  Period W added **0** days to the June 19, 2009 STA clock.

**Period X.**     October 13, 2009 to October 23, 2009 (Dkt 20)

45.     On September 16, 2009, without motion or explanation, the court entered a notice

(Dkt 16), continuing the status conference hearing (originally set for August 31, 2009, and

continued until October 13, 2009, as described above).  The hearing was "continued to

10/23/2009 at 9:30 AM."  No order was entered excluding time.  And there was no provision in

effect, under § 3161(h).  Thus, October 14, 15, 16, 17, 18, 19, 20, 21, and 22 count against the

June 19, 2009 STA clock.  Period X added **9** days, and the June 19, 2009 STA clock from

Periods T-X is at **9** days.

> **Period Y.**    October 23, 2009 (Dkt 20) to November 10, 2009 (Dkt 25)

46.    On October 23, 2009 (Dkt 20), Defendant appeared before Magistrate Alba for

the first time since his June 19, 2009 initial appearance.  At the hearing, Magistrate Alba noted

"this has already languished as a case," and stated, "[W]e're not going to continue this matter

indefinitely."  (10/23/2009 Hrg. 5:16-25).

47.    However, the government informed the court that it anticipated filing a new,

superseding indictment.  As a result, the court instructed the parties to confer and decide when

the government would scan and provide the previously discussed discovery material to

Defendant.  Subsequently, Magistrate Alba instructed, "[b]ased on that, I will send out a notice

again for a status conference on the case, probably 90 days out … and then at that point I need an

assurance, Mr. Mumford, as to what type of motions you anticipate filing."  (10/23/2009 Hrg.

8:16-24.)  The court also stated, "I do want to give you a proper opportunity to review the

materials because I want to make sure that you make a decision as to what applicable motions,

all right, should be filed on behalf of your client."  (Id. 9:21-24.)  "Um, counsel, I expect to hear

from you by next week and then based on that I will set the matter down for further status and

send the notice out."  (Id. 10:1-6.)

48.    Nothing was continued.  But the court directed: "I want the time excluded, Mr.

Walz, under the Speedy Trial Act based on new counsel coming into the matter … and also to

allow him an opportunity to properly review the discovery on the case."  (10/23/2009 Hrg.

10:14-20.)  The related minute entry (Dkt 20) says, "All time is to be excluded pursuant to the

Speedy Trial Act. Mr. Walz to prepare an order."

49.     Mr. Walz submitted an order, and it was entered on December 14, 2009 (Dkt 29). As argued below, this purported *ends of justice* order is not effective under § 3161(h)(7)(A) and (B), and the plain language of the statute.  Correcting for errors, 18 more days would count against the STA clock.  But for purposes of this subsection, Defendant is going to assume that the 18 days of October 23, 24, 25, 26, 27, 28, 29, 30, 31 and November 1, 2, 3, 4, 5, 6, 7, 8, and 9 are all excluded from the STA clock.  Period Y added **0** days to the June 19, 2009 STA clock, and the June 19, 2009 STA clock for Periods T-Y is at **9** days.

> **Period Z.**     November 10, 2009 (Dkt 25) to December 10, 2009 (Dkt 28)

50.     For the same reason as Period Y, the ends of justice order purporting to exclude the 30-day Time Period A from November 10, 2009, to December 10, 2009, was invalid. Defendant explains below.  But for purposes of this subsection, those days are excluded from the June 19, 2009 STA clock.  In sum, Period Z added an additional **0** days, and as of December 10, 2009 (the beginning of the December 10, 2009 STA clock period, addressed above) the June 19, 2009 STA clock for Periods T-Z is at **9** days.

## II.     ADDITIONAL FACTS CONCERNING THE GOVERNMENT'S DELAY

51.     Defendant's other arguments concern the nature of the government's delay.  First, Defendant and the Court could have avoided a tremendous amount of the delay if the government had not continued to refer to the privileged document, including its inclusion in the superseding indictment after the government had given Defendant assurances that it had been sequestered.  The government's insistence on publishing Defendant's privileged information in an indictment and press release issued November 2009, when it had previously given Defendant assurances that the document had been sequestered led to motion practice (Dkt 35) which was

not resolved until the Court granted that motion in early June 2011, which could have been avoided if the government had complied with the applicable rules.  (Dkt 165)

52.     Second, the government's actions from the pre-May 2009 time period wherein prosecutors and investigators schemed to arrange for illegal *ex parte* interviews of Defendant about his trial strategy and attorney-client relationships, supposing, as the Court observed, that they could excuse their actions by being "coy," seeking to "justify saying that he's not represented so we can interview [Defendant]," intending to indict Defendant at the time.  (Dkt 360 at 25)

53.     Third, the government's delay in seeking the indictment in the first place, where it was facing a conclusion that was "long on conclusions but short on facts," (Dkt 234-3 & -4), leading prosecutors and investigators to seek the prejudicial *ex parte* interviews in February 2009, for the purpose of obtaining evidence for the indictment.  (Dkt 360 at 10, 25)

54.     Fourth, the government's actions between August 27, 2013, when it obtained a trial date and the Court's order excluding time, and the present, where Defendant has been subject to the government's now-admitted delay <u>for the purpose of delay</u>, as the government filed a false certification under 18 U.S.C. 3731, and misled the Court concerning the status of its appeal.

55.     On August 15, 2013, the Court granted Defendant's motion to suppress certain evidence and all fruits derived therefrom based on significant and detailed findings of prosecutorial misconduct.  (Dkt 360)

56.     The Court held a status hearing on August 27, 2013, to address issues under the Speedy Trial Act and set the matter for trial.  At that hearing, an issue was raised concerning the government's appeal and the need to certify that any appeal was not for purposes of delay and

based on the substantiality of the evidence to be suppressed.  In direct response, the government

stated: "with respect to the appeal, that is something that the Solicitor General must pass on, we

don't make that decision, it's something that the Solicitor General must review."  (8/27/2013

Hrg. 7:20-8:7, 8:24-9:1.)

57.     Based on the statements of government counsel, the Court set a trial date for

February 10, 2014, and granted the government's motion for an *ends of justice* order, excluding

time under the Act from August 27, 2013, to the February 2014 trial date.  (Id. 13:9-14.)

58.     At no time did the government request additional time under FRAP 4, or any

other authority, to file its notice of appeal.

59.     On September 13, 2013, the government filed its notice of appeal.  (Dkt 366)

That Notice was signed by Assistant United States Attorney Stewart C. Walz, the prosecutor

whose misconduct was at issue in the Court's August 15, 2013 Order.  (Dkt 360)

60.     As required by 18 U.S.C. § 3731, the United States Attorney for the District of

Utah personally certified that its appeal was "not taken for purpose of delay, and that the

evidence suppressed and excluded by the order of the district court is a substantial proof of a fact

material in the proceeding."  (Dkt 366)

61.     Between October 9 and 15, 2013, the parties exchanged correspondence

concerning the preparation of a proposed *ends of justice* order excluding time, and submitted

competing orders to the district court.  On October 15, 2013, the district court asked the parties to

state their respective positions regarding whether the trial date should be vacated in light of the

government's filing of its Notice of Appeal and § 3731 Certification.  (Dkt 378)

62.     On October 29, 2013, the government filed a motion to vacate the trial "in light of

the pending interlocutory appeal," and asked the district court to exclude time retroactively.  (Dkt

379 at 1)  The government also asserted that all delay "resulting from the interlocutory appeal is excludable under the Speedy Trial Act."  (Id. at 3.)

63.     On October 30, 2013, Defendant raised concerns that the "bare certification" provided by the government pursuant to § 3731 was insufficient to ensure that the appeal was not "taken for purpose of delay" and questioned whether the United States Attorney had genuinely made "'a thorough and conscientious analysis of the case[] before deciding to appeal.'"  (Dkt 380 at 1-2 (citing *United States v. Lopez*, 518 F.3d 790, 795 (10th Cir. 2008); *United States v. Vega*, 58 F. App'x 815, 819 (10th Cir. 2003 (unpublished); *United States v. Hanks*, 24 F.3d 1235, 1238 (10th Cir. 1994)).)

64.     Defendant argued that "[w]ithout more in the way of analysis, the bare prosecutorial certification provided by the government with its notice of appeal, 'has all the earmarks of a rubber stamp – or in *Hanks'* words a "meaningless formality.'"  (Dkt 380 at 3 (quoting *Carrillo-Bernal*, 58 F.3d at 1494).)

65.     On November 7, 2013, the government defended its § 3731 Certification, arguing that certification was "conclusive" to the questions raised by Defendant and required that the trial date be vacated.  (Dkt 386 at 1-2)  The government argued further that the filing of its Notice of Appeal and § 3731 Certification divested the district court of jurisdiction over all but "collateral matters," and therefore the district court should postpone all litigation regarding "the merits of the case" because of how "[t]he outcome of the government's appeal may affect the future progress of this case."  (Id. at 6)

66.     On November 13, 2013, Defendant argued that his "due process and speedy trial rights must be considered notwithstanding the statutory provisions of § 3731," requesting further certification or assurances from the government that its Notice of Appeal was not filed "for

purposes of delay." (Dkt 387 at 3)  Defendant based his arguments in the unique circumstances

of this case where the district court has found prosecutorial misconduct violating his

constitutional rights, where the Court had already raised concerns about the prosecutorial

misconduct directed at him and the need to suppress and exclude evidence obtained illegally to

"prevent the erosion of 'citizens' faith in the evenhanded administration of the laws" resulting

from the government's misconduct.  (Id.)

        67.     On November 13, 2013, the Court conducted a hearing on these issues.  At no

time did the government inform Defendant or the Court (1) that it had not secured the approval

of the Solicitor General before filing the Notice of Appeal, (2) that it was not authorized to seek

an appeal of the August 15 Order, or (3) that it had filed the Notice of Appeal as a provisional

matter to intentionally delay the appellate timeline while waiting for the Solicitor General's

approval to pursue its appeal.

        68.     In fact, the Court specifically inquired if the government has "taken any action to

expedite the appeal in terms of accelerated briefing schedule or asking for expedited hearing"

with respect to Defendant's speedy trial rights.  (11/27/2013 Hrg. 10:15-18.)  In response, the

government stated: "No, we haven't Your Honor.  In fact, we recently asked [the Tenth Circuit]

for a 30-day extension in which to file our brief.  The reason for that is that these government

appeals are subject to quite intensive review at all levels of the department, and we are required

to coordinate with different components which make expedited briefing very, very difficult.

However, we intend to file our brief on the due date which is December 13th." (Id. 10:19-11:1.)

In other words, the government's papers and answers at the hearing were designed to leave the

Court and Defendant with the impression that it was using the time tolled by its Notice of Appeal

to prepare "briefing" for the appeal, when the government did not have authorization to appeal.

69.     On December 6, 2013, the government filed a second motion to extend time with the Tenth Circuit, requesting an extension of time until January 13, 2013, to "prepar[e]" and "fil[e]" its opening brief.

70.     In both of its motions to extend time to prepare and file its opening brief on appeal, filed November 1, 2013, and December 6, 2013, the government stated that it was relying on Tenth Circuit Rule 27.4.  Further, while explicitly stating that it was "coordinating its efforts with various Department of Justice components," including the "Solicitor General's Office," the grounds asserted were **_not_** that the government was still seeking authorization to appeal, but that it needed the extra time "[t]o accommodate that consultation and review process" in order to obtain "additional time to prepare its opening brief."  Nowhere did the government reveal that it had not received the Solicitor General's authorization to file its Notice of Appeal and § 3731 Certification.

71.     In each of its requests for an extension of time to "file its opening brief," the government represented that Defendant "does not object to this request but otherwise reserves rights," which was a fair statement of Defendant's stated position.  But, in eliciting that statement of position, the government did not inform Defendant of the true nature of its requested delay.

72.     On January 6, 2014, the government filed its "Motion to Dismiss Appeal" pursuant to Rule 42(b) and Tenth Circuit Rule 27.3(A)(9).  In its motion, the government stated that the "Solicitor General's decision not to pursue this appeal was made on Friday, January 3, 2014 and communicated to our office this morning.  As a result we are moving to dismiss the appeal."

73.     Since that time, Defendant inquired if the Solicitor General "change[d] their mind" or if the government was "waiting for their approval all along."  Government counsel

responded: "[t]he SG did not make any decision as to whether to pursue this appeal until January 3, 2014, but our office is required under USAM §2-2.132 to file a notice of appeal pending the SG's decision."

74.     Section 2-2.132 of the United States Attorneys Manual does not address appeals or certifications under § 3731.  It merely states: "If the time for appeal or cross-appeal is about to expire … and the United States Attorney has not received notice from the appropriate division of the Department as to whether an appeal is to be taken, a 'protective' notice of appeal should be filed in order to preserve the government's right to appeal."  USAM 2-2.132 (available at http://www.justice.gov/usao/eousa/foia_reading_room/usam/title2/2mapp.htm#2-2.131).

75.     And finally, Defendant submits that the Court should consider the government's improper actions in filing frivolous motions without basis or support for the purpose of delay. (*See, e.g.,* Dkt 395 & 413)

## ARGUMENT

An indictment should be dismissed where there is unnecessary delay in presenting a charge to a grand jury, and separately when the government fails to bring a defendant to trial in a fair and speedy manner, without unnecessary delay.  Dismissal is authorized under both the Fifth and Sixth Amendments to the United States Constitution, the Speedy Trial Act, and Rule 48 of the Federal Rules of Criminal Procedure.  This section begins with the Speedy Trial Act.

### I.     The 70-Day Speedy Trial Clock Has Been Exceeded.

When a criminal defendant pleads not guilty to any crime(s) charged against him, the Act mandates that the government bring him to trial within 70 days. 18 U.S.C. § 3161(c)(1).  A violation requires dismissal of the charges.  Id. § 3162(a)(2); *see also United States v. Larson*, 627 F.3d 1198, 1207 (10th Cir. 2010).  Perhaps recognizing how criminal cases vary widely, the

Act provides some flexibility in accommodating limited periods of delay.  Specifically, §
3161(h) outlines what the United States Supreme Court has recently described as a "detailed
scheme under which certain specified periods of delay are not counted" towards the 70-day limit.
*Zedner v. United States*, 547 U.S. 489, 492 (2006).  These provisions for excluding time are
divided into two basic categories:  First, Section 3161(h)(1) *automatically* excludes from the 70-
day limit a "long and detailed list" of eight separately defined time periods that commonly occur
in criminal cases.  *United States v. Tinklenberg*, __ U.S. __, 131 S. Ct. 2007, 2019 (2011).
Within this list, the Act excludes time "resulting from any interlocutory appeal" and time "from
the filing [of any pretrial motion] through the conclusion of the hearing on, or other prompt
disposition of, such motion."  § 3161(h)(1)(C) and (D).

　　　In contrast to the Act's *automatically* excluded periods of time, Section 3161(h)(7) "gives
the district court discretion – within limits and subject to specific procedures" to excluded other
"limited" periods of time, by "granting a continuance" for "limited delays" that address "case-
specific needs," *Zedner,* 547 U.S. at 498-99, when "the ends of justice served by granting the
continuance outweigh the best interests of the public and the defendant in a speedy trial."  §
3161(h)(7)(A).  Within this framework, "[i]f a defendant is not brought to trial within the [70-
day] time limit required by section 3161(c) as extended by section 3161(h), the … indictment
shall be dismissed on motion of the defendant."  § 3162(a)(2).

　　　　　　a.  **Even Assuming <u>All</u> Purported Exclusions Of Time Under § 3161(h), The
　　　　　　　　70-Day Speedy Trial Clock Has Been Exceeded.**

　　　Using either Speedy Trial Act clock (June 19, 2009 or November 10, 2009), the
permitted time under the Act has expired.  If we assume the STA clock restarted with
Defendant's December 10, 2009 appearance to plead not guilty to the charges in the first
superseding indictment, at least <u>**116**</u> days have run against the STA clock – more than 46 days

30

allowed by statute.  If we assume the STA clock has run from June 19, 2009, at least **125** days

have elapsed under the Act, more than 54 days allowed by statute.  This does not take into

consideration Defendants' arguments that time should be added to the clock for governmental

misconduct and to correct faulty ends of justice orders, set forth below.  *Zedner*, 547 U.S. at 506

("[T]he District Court's technical failure to make an express finding" is not excusable, and "if a

judge fails to make the requisite findings regarding the need for an ends-of-justice continuance,

the delay resulting from the continuance must be counted, and if as a result the trial does not

begin on time, the indictment or information must be dismissed.").  Here, Defendant simply

points out, without taking into consideration anything else, and based solely on the fact that

Defendant was "not brought to trial within the time limit required by section 3161(c) as extended

by section 3161(h)," the case must be dismissed.  18 U.S.C. § 3162(a)(2).

> **b.  There Are Eight Invalid *Ends of Justice* Orders, And When Corrected, The Time Purportedly Excluded Must Count Under the Act.**

There are **280** total days from June 19, 2009 (**122** from December 10, 2009) that have

been purportedly excluded by eight (8) invalid *ends of justice* orders, entered in this case by

Magistrate Alba, pursuant to § 3161(h)(7)(A).  Because the orders are invalid, the time

purportedly excluded should count against the STA clock.  These orders are as follows:

> 158 days purportedly excluded on the June 19, 2009 Speedy Trial clock.

> - (i) June 19, 2009 (Period U and Period V, 67 days)
> - (ii) August 4, 2009 (Period W, 43 days)
> - (iii) October 23, 2009 (Period Y and Period Z, 48 days)

> 122 days purportedly excluded on the December 10, 2009 Speedy Trial clock.

> - (iii cont.) October 23, 2009 (Period A and Period B and Period C, 36 days)[12]
> - (iv) January 27, 2010 (Period E, 12 days)

---

[12]     The October 23, 2009 order invalidly affects both STA clocks (48 days for the June 19 STA clock, and 36 days for the December 10 STA clock).

- (v) August 31, 2010 (Period F, 7 days)
- (vi) August 2, 2011 (Period K, 64 days)
- (vii) November 15, 2011 (Period N, 3 days)
- (viii) May 1, 2012 (Period O)

In contrast to the Act's automatically excluded periods of time, Section 3161(h)(7) gives the district court discretion, "within limits and subject to specific procedures," to exclude additional periods of time by "granting a continuance" for "limited delays" that address "case-specific needs." *Zedner,* 547 U.S. at 498-99. In doing so, the court must explicitly find that "the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. §3161(h)(7)(A). When a court purports to exclude *any* time through the granting of an *ends of justice* continuance, the law requires "procedural strictness" to ensure that the granting of such continuances does not "get out of hand and subvert the Act's detailed scheme." *Zedner,* 547 U.S. at 509.

The Tenth Circuit requires "exact compliance," with the statutory provisions and has repeatedly cautioned that such continuances should be a "rarely used tool," *United States v. Doran,* 882 F.2d 1511, 1515 (10th Cir. 1989), and when used, "should not be granted cavalierly." *Williams*, 511 F.3d at 1049; *Doran*, 882 F.2d at 1516-17 ("Allowing the granting of an ends-of-justice continuance to take place outside the boundaries discussed above also invites much wider use of this procedural device than Congress intended."). The District of Utah has also promulgated Rule 12-1(i) of the Local Rules of Criminal Procedure to further ensure compliance with § 3161(h)(7).

When a court seeks to exclude *any* time from the 70-day Speedy Trial clock by way of an *ends of justice* continuance, it must take four specific and deliberate actions:

**First, it must <u>consider</u> at least the following factors**: (1) "Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding

impossible, or result in a miscarriage of justice," § 3161(h)(7)(B)(i); (2) "Whether the case is so unusual or so complex"[13] that "it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Act," 3161(h)(7)(B)(ii); (3) "Whether the failure to grant such a continuance in the proceeding, in a case which taken as a whole, is *not* so unusual or so complex," and asking in that context, whether such failure (a) "would deny the defendant reasonable time to obtain counsel," (b) "would unreasonably deny the defendant or the Government continuity of counsel," or (c) "would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."   § 3161(h)(7)(B)(iv).

**Second, it must <u>specifically find</u>:** that the "ends of justice" served by *granting* the continuance, "outweigh the <u>*best*</u> interests of the public <u>*and*</u> the defendant in a speedy trial." 18 USC § 3161(h)(7) (emphasis added).

**Third, it must <u>set forth</u>**: either orally or in writing, the reasons for concluding that the ends of justice served by the granting of the continuance "outweigh the best interests of the public and the defendant in a speedy trial."   § 3161(h)(7)(A).  These findings must made "express[ly]," and "explicitly."  *Zedner*, 547 U.S. at 506 ("[T]he District Court's technical failure to make an express finding" is not excusable, and "if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed."); *United States v. Loughrin*, 710 F.3d 1111, 1119 (10th Cir. 2013) <u>cert.</u>

---

[13]      Unusual and complex, under the plain text of the act, is limited to the following three contributing factors:  1) "the number of defendants", 2) "the nature of the prosecution," and "the existence of novel questions of fact or law."  § 3161(h)(7)(B)(iv).  Further, DUCrimR 12-1(i)(5)(B) requires, in addition to the statutory factors, that "[i]f an extension is requested due to the complexity of the case, including voluminous discovery, the motion must include specific facts demonstrating such complexity."

granted, 134 S. Ct. 822 (2013) ("The court is required to make explicit findings in support of the exclusion, including, among others, whether any delay would result in a miscarriage of justice, the complexity of the case, and the need for adequate preparation.").  "A record consisting of only short, conclusory statements lacking in detail is insufficient." *United States v. Toombs*, 574 F.3d 1262, 1271-72 (10th Cir. 2009).  The findings must not only be explicit, but must explicitly address "why granting the continuance will strike a proper balance between the ends of justice and the best interest of the public and the defendant in a speedy trial."  *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993).  Where the court fails to inquire about or consider whether the respective events necessarily required additional time, such as where, in the case of voluminous discovery, it does not appear the court considered *the nature of the recently disclosed discovery*, the *relevance or importance* of the discovery, or *why* the court thought it proper to grant an approximately two-month continuance in each of the orders, relying instead on conclusory statements about discovery," ends of justice orders based on those statements are invalid, and the time purportedly excluded by such orders count against the STA clock.  *Toombs*, 574 F.3d at 1271-72.  "[The Act] is not satisfied by the District Court's passing reference to the case's complexity…[and] [t]herefore, the [] continuance is not excluded from the speedy trial clock."  *Zedner*, 547 U.S. at 507.

The only exceptions in the Tenth Circuit and Supreme Court are (a) where the court can incorporate by reference facts that are "obvious" from the record *and* explicit findings that were made in a motion for continuance based on those facts;[14] and (b) where the court later memorializes the explicit findings that were made at the time the continuance was granted and an order entered prior to a defendant's motion to dismiss under the Act.  *United States v. Saltzman*,

---

[14]    In this case, the government has only made two such motions, on August 4, 2009, and April 3, 2014.  As set forth below, neither motion complies with this exception.

984 F.2d 1087, 1091 (10th Cir. 1993) *(*dismissing where judge failed to make "ends of justice" findings at each continuance, noting that court is precluded from "justifying the continuances retroactively"); *United States v. Pasquale*, 25 F.3d 948, 951-52 (10th Cir. 1994) (same). The Tenth Circuit has made clear that "the appropriate time for the court to place its findings on the record is just prior to or contemporaneously with the grant of the continuance." *United States v. Rushin*, 642 F.3d 1299, 1303 (10th Cir. 2011). This is consistent with, but more specific than *Zedner*, where Justice Alito wrote that "the Act is ambiguous on precisely when those findings" must be set forth on the record, but "at the very least the Act implies that those findings must be put on the record by the time the district court rules on a defendant's motion to dismiss under §3162(a)(2)." 547 U.S. at 507. To allow a court to revisit the record after a defendant files for dismissal would risk creating insurmountable doubt as to the propriety of such findings: "the danger is great that every continuance will be converted retroactively into a continuance creating excludable time, which is clearly not the intent of the Act." *Doran*, 882 F.2d at 1516 (quoting *United States v. Janik,* 723 F.2d 537, 544–45 (7th Cir. 1983)).

      **Fourth, it must actually <u>grant a continuance</u>**. There is no authority in the Act, for a judge to simply exclude time at any juncture in the case. Instead, § 3161(h)(7) is specifically predicated upon the court first granting a continuance. *See Doran*, 882 F.2d at 1516-17 ("The court did not even explicitly grant a continuance."); *see also Toombs*, 574 F.3d at 1271 ("record … must contain an explanation" how the "continuance" met "the need *for additional time*"). In *Bloate v. United States*, 559 U.S. 196, 214 (2010), the Supreme Court observed that a *continuance* presupposes a *request for delay*. "In considering any request for delay, whether the exclusion of time will be automatic or not, trial judges always have to devote time to assessing

whether the reasons for the delay are justified, given both the statutory and constitutional requirement of speedy trials." *Id*.

Applying this legal standard to the eight particular *ends of justice* orders listed above and granted by Magistrate Alba results in counting **280** total additional days against the June 19, 2009 STA clock.  And even if we just consider time excluded by faulty *ends of justice* orders from December 10, 2009, results in a total of **122** additional days against the December 10, 2009 STA clock.  Either way, the Act has been violated, and the pending charges must be dismissed.

### i. Adjusting For The June 19, 2009 Faulty Ends Of Justice Order Adds A Total Of 67 Days To The STA Clock.

This was an oral order made by Magistrate Alba.  The order was made during a hearing where Defendant appeared to plead not guilty to the charges in the indictment filed May 26, 2009.  The court requested that the government to prepare a subsequent written order, but none was ever entered.  Because this was Defendant' first appearance, the only record available is the indictment itself and the transcript of the hearing.

FACTS: <u>What does the record reflect?</u>  After Defendant entered a plea of "not guilty," the court asked, "How is the government going to proceed with discovery in this case." (6/19/2009 Hrg. 5:10-11.)  AUSA Walz replied to state, "I gave Mr. Mooney [Defendant's attorney at the time] six DVDs with thousands of records that were produced during the investigation of this case; one CD, which contains most of the current memoranda, interview and FBI 302s; a CD with interviews of the defendant.  Additional discovery will be forth coming, but there is -." *Id*. 5:12-20.  The court interrupted and asked, "What other discovery do you have in mind?"  AUSA Walz replied, "Well, the investigation is continuing, Your Honor, and we will be generating additional discovery.  There may be 302s in matters that are not yet completed or that we need to review to see if they are discoverable.  Additionally there are some other documents

that probably have not yet been put on a CD.  But this is the bulk of the discovery in the case so far."  In the process, there was no inquiry into the nature or relevance of the discovery, simply the volume.  While the government did indicate that some of the discovery was 302s and interview memoranda, that is all the substance that was discussed or revealed.  As will be illustrated below, this is significant, because thousands of pages of discovery (20 boxes) were later evaluated by Mr. Mooney and determined to have "nothing" to do with Defendant.  After this brief exchange, Magistrate Alba simply stated –

> Let me do this.  Normally at this juncture I look for a trial date and things of that sort.  In light of the voluminous discovery that is at issue here I would like to approach this differently.  As soon as the rest of the discovery is available to the government make it available to counsel.  Mr. Mooney, I want to have a status conference on this case.

(6/19/2009 Hrg. 6:5-11).  The court suggested August 17 at 9:30 and Mr. Mooney stated, "I need to go into the following week.  I have an SCPA case beginning in Los Angeles on the 4th of August that's scheduled for three weeks.  So, if we could go to the week….Can we just make it for August 31st, Your Honor?"  The court responded,

> That's fine… I want a report at that time, Mr. Mooney, as to how you are proceeding with discovery on the case, because I want to get an assessment from you as to what type of motions you anticipate filing on behalf of the defendant…and also at that point get a better idea as to how long the matter will take to try so that I can look for a trial date from Judge Stewart, as well, okay?  So let's sequence it in that matter.

*Id*. 6:21-7:8.  Immediately next, the court turned to AUSA Walz and stated:

> In light of that, I want the time excluded, Mr. Walz, under the Speedy Trial Act.  If you'll prepare an order excluding the time based on allowing counsel an opportunity to get the discovery and the voluminous nature of the case.

*Id*. 7:10-14.  Mr. Walz replied, "We will, Your Honor."  However, no subsequent order was entered.  The minute entry (Dkt 10) states only: "All time is to be excluded pursuant to the Speedy Trial Act, Mr. Walz to prepare an order."

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  Nothing in the record reflects consideration of the factors under § 3161(h)(7)(B).

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance "outweigh the best interests of the public and the defendant in a speedy trial</u>?"  No.  There is no mention of the interests of justice, the interests of the public, or the interest of the defendant in a speedy trial.  There are no findings whatsoever.  The closest thing to a "finding" is the court's statement direction to AUSA Walz that he should prepare an order "based on allowing counsel an opportunity to get the discovery and the voluminous nature of the case."  But, this is not a finding about the ends of justice, the interests of the public, or the interests of the defendant.

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial</u>?  No.  No findings were entered, express or otherwise.

4) <u>Did the district court grant an actual continuance</u>?   No.  *See* § 3161(a) (requiring that a trial date must be set "on a day certain" at the earliest practicable time).  Since there was no trial date, it was not continued.  There were no deadlines, so none could have been continued.  Perhaps the government will argue that Defendant's counsel requested a status hearing be set for August 31 instead of August 17, but that does not excuse the lack of an order that would show how Magistrate Alba's management of the case complied with the Act.  Tellingly, unlike *Bloate*, *Toombs* and *Williams*, *supra*, there was no request made by the government or Defendant for "more time."  Absent a set date or proceeding that had already been established, there was no continuance, and the Act does not allow random exclusions of any period of time.

Based on this analysis, the June 19, 2009 statement by Magistrate Alba that he simply "want[ed] time excluded … under the Speedy Trial Act … based on allowing counsel an opportunity to get the discovery and the voluminous nature of the case" was not sufficient. And failure on the part of the government to even prepare the order as Magistrate Alba instructed reveals the "cavalier" nature of these omissions. *See Williams*, 511 F.3d at 1049. For these reasons, the June 19, 2009 order does not exclude time under § 3161(h)(7) for Periods U and V, and the Court must add **67** days to the June 19, 2009 STA clock.

### ii.   Adjusting For The August 4, 2009 Faulty Ends Of Justice Order Adds A Total Of 43 Days To The STA Clock.

On August 4, 2009, the government and Defendant filed a joint motion to continue the August 31, 2009 status conference. The court granted the motion on August 10, 2009 (Dkt 15).

FACTS:  <u>What does the record reflect?</u>  The motion (Dkt 14) requesting this continuance did not comply with DUCrimR 12-1(i) but indicated the following grounds for a continuance:  1) Mistaken prior representations by the government as to the volume of discovery that had been produced to Defendant; 2) the government's need for more time to scan and produce new discovery; and 3) scheduling conflicts related to Defendant's then-counsel, Mr. Mooney.  The parties moved to continue the hearing "[t]o allow defense counsel to better determine how long he anticipates analysis of the discovery will take and when motions can be filed."  The court granted the motion and entered a written order (Dkt 15) stating:

> The Court, having considered the Joint Motion to Continue[,] the assertions made therein, and the record of the case: IT IS ORDERED that the Status Conference set for August 31, 2009, is stricken and that a status conference is set before Chief Magistrate Judge Samuel Alba on the 13th day of Oct, 2009 @ 9:00 am…IT IS ORDERED that the period of delay from August 31, 2009, to the eventual hearing date is excluded pursuant to 18 U.S.C. §3161(h)(7)(A) and (B) from the time within which this trial must commence pursuant to 18 U.S.C. §3161.

The minute entry accompanying the order states in relevant part: "ORDER TO CONTINUE – Ends of Justice as to Claud R. Koerber Time excluded from 08/31/2009 until 10/13/2009."

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  No.  There is nothing in the motion, or the order, about alternatives, i.e., whether not granting the continuance would have "resulted in a miscarriage of justice."   There is nothing in the motion or order to suggest that the court considered whether the case was "so unusual or so complex" that it was "unreasonable" to expect "adequate preparation for pretrial proceedings … within the time limits established by the Act."  The court referred to the volume of discovery.  But nothing in the record suggests that the court considered in detail what would make this case "unusual" or "complex."   While the motion references 20 boxes of purported discovery material, there was no representation made about "the relevance or importance of the discovery."  *Toombs*, 574 F. 3d at 1271-72.  This is significant, because at the next hearing, Defendant explained that the "20 boxes" Mr. Mooney reviewed "had nothing to do with" this case.  (10/23/2009 Hrg. 6:7-15.)

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance</u> <u>"outweigh the best interests of the public and the defendant in a speedy trial"</u>?  No.  There was nothing mentioned about the interests of justice, the interests of the public, or the interests of defendant in a speedy trial.  There is no indication that such a finding was ever made, and thus the purported "ends of justice continuance" could not have been made "based" on such findings.

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the</u> <u>"express" and "explicit" findings explaining its reasons for concluding that the ends of justice</u> <u>served by the granting of the continuance outweigh the best interests of the public and the</u> <u>defendant in a speedy trial</u>?  No.  No findings were entered.  The only thing in the order was a

conclusory statement that "the period of delay from August 31, 2009, to the eventual hearing date is excluded pursuant to 18 U.S.C. §3161(h)(7)(A) and (B) from the time within which this trial must commence pursuant to 18 U.S.C. §3161." This is clearly not sufficient. *Occhipinti*, 998 F.2d at 797 ("When considering such a continuance, the trial court must make explicit findings regarding why granting the continuance will strike a proper balance between the ends of justice and the best interest of the public and the defendant in a speedy trial."). And, while in "setting forth its findings… the district court need not articulate facts that are obvious and set forth in the motion for the continuance itself," *Toombs*, 574 F.3d at 1269, it must still make express and explicit findings, which did not happen. Further, the facts related to "the balancing of the ends of justice" are not obvious. In fact, the motion and order at issue here is very similar to the motions and orders invalidated in *Toombs*, 574 F.3d at 1270. Even if the Court were to construe a finding, it would have to have been based upon the record at the time – reflecting a proper balancing took place when the order was made.

4) <u>Did the district court grant an actual continuance</u>? Yes. Nevertheless, because there are no express or explicit *ends of justice* findings, because the court did not "articulate its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant," and because there is no clear "indication that the court balanced the relevant interests prior to or contemporaneous with the grant of the continuance," the order does not meet the requirements for an *ends of justice* continuance. *Doran*, 882 F.2d 1516-17 ("Unless it is clear from the record that the trial court struck the proper balance when it granted the continuance, the twin purposes of the record requirement will be ill-served.").

For these reasons, the August 4, 2009 order does not exclude time under § 3161(h)(7) for Period W, and the Court must add **43** days to the June 19, 2009 STA clock.

### iii.  Adjusting For The October 23, 2009 Faulty Ends Of Justice Order Adds A Total Of 36 Days To The December 10, 2009 STA Clock, and 37 Days To The June 19, 2009 STA Clock.

On October 23, 2009, Defendant appeared before Magistrate Alba for the first time since his June 19, 2009 initial appearance and arraignment.  At the hearing (Dkt 20), Magistrate Alba noted "this has already languished as a case."  (10/23/2009 Hrg. 5:16-25.)  "[W]e're not going to continue this matter indefinitely."  (Id.)  However, the government informed the court it anticipated filing a new, superseding indictment, and that it would add more counts.

FACTS:  What does the record reflect?  This was the first appearance of Defendant's current attorney.  Before dismissing Mr. Mooney, the court inquired, "Now, before you go though, hang on, have you been provided with discovery in this case?"  (10/23/2009 Hrg. 3:17-18.)  Mr. Mooney answered, "Yes, Your Honor.  I have given the most recent discovery to Mr. Mumford.  Some of the first discovery is still in my office in Los Angeles and we have made arrangements for transfer of that to Mr. Mumford."  (Id. 3:19-22.)

The court then inquired, "Mr. Walz, where are we?"  Mr. Walz replied, in relevant part, "We are continuing the investigation, we're continuing to provide discovery" informing the court that the government needed "more time" to copy "20 boxes" of documents.  The court asked how much time the government would need and a conversation ensued between defense counsel, the government and the court.  The court then interrupted,

> The problem is this, I need to know how soon that is going to happen because this has already languished as a case…You need an adequate opportunity to prepare yourself, but I'm going to give you a cut off to file motions on this matter because then we're going to be looking for a trial date on this case.  And I want to make sure that it is a reasonable time to give you an opportunity properly address motions.  But we're not going to continue this matter indefinitely.  I will set some guidelines, all right?

(Id. 5:16-25.)  Defendant's counsel made clear that the defense was not responsible for delays.

> The --- the government made a statement that they had produced 95 percent of the materials at the hearing back in June. They were later forced to admit that was not the case. They simply – they just produced last week to us two CDs containing over 58,000 pages of documents. Though in terms of government produced material, the material that they produced last week are actually 25 times what they produced to us in June…[and] as regards the 20 boxes, um, you know, Mr. Walz is correct that previous counsel when [he] reviewed those boxes his opinion was they had nothing to do with – with Mr. Koerber….

(Id. 6: 12-19.) The court directed the parties to confer and work out a timeframe and inform the court about the parties' plans regarding a high volume of discovery.

Following the discovery conversation, AUSA Walz stated, "And so the investigation is ongoing. And there is one other factor we should alert the court to, we do anticipate a superseding indictment within a month." (Id. 8:1-3.) The government indicated that indictment would be adding "more counts." But when Defendant asked the government to provide "more information about this superseding indictment," the government declined. (Id. 8:7-9.)

Magistrate Alba concluded, "[b]ased on that, I will send out a notice again for a status conference on the case, probably 90 days out … and then at that point I need an assurance, Mr. Mumford, as to what type of motions you anticipate filing." (Id. 8:16-24.) The court also stated, "I do want to give you a proper opportunity to review the materials because I want to make sure that you make a decision as to what applicable motions, all right, should be filed on behalf of your client." (Id. 9:21-24.) "Um, counsel, I expect to hear from you by next week and then based on that I will set the matter down for further status and send the notice out." (Id. 10:1-6).

The court concluded, "I want the time excluded, Mr. Walz, under the Speedy Trial Act based on new counsel coming into the matter…and also to allow him an opportunity to properly review the discovery on the case." (Id. 10:14-20). The related minute entry (Dkt 20) says, "All time is to be excluded pursuant to the Speedy Trial Act. Mr. Walz to prepare an order." Walz apparently submitted that order, and it was entered on December 14, 2009 (Dkt 29).

43

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  No.  In fact, it appears that Magistrate Alba's primary consideration was to accommodate the government's ongoing "investigation," and its stated intent to obtain a superseding indictment.  Neither factor is grounds to exclude time under § 3161(h)(7)(B).  While Magistrate Alba expressed concern that Defendant have time to review the discovery, there was no *Toombs* inquiry into the "nature" and "relevance" of the discovery to the underlying charges.  *Toombs*, 574 F.3d at 1271-72.  Further, there was no indication in the record that the statutory factors were considered.

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance "outweigh the best interests of the public and the defendant in a speedy trial"</u>?  No.  There is nothing in the record to show that the court or the government had any concern for the "interests of the public" or the Defendant in a speedy trial.  There was no balancing.  The closest the court came was stating that "I do want to give you a proper opportunity to review the materials because I want to make sure that you make a decision as to what applicable motions, all right, should be filed on behalf of your client."  (10/23/2009 Hrg. 9:21-24.)  But, that is not a finding, and it does not reflect a conclusion or reason relating to balancing interests.

Also, while there was a discussion at the hearing about "new counsel" needing time to "review discovery," for reasons previously stated, this is insufficient to exclude time for ends of justice.  Defendant was never directly asked if he wanted more time, or how much time he needed.  In fact, the delay at issue was all the government's.  Though the court was concerned about Defendant having the time he needed, this was due in substantial part to the fact that the government was dumping thousands of pages of documents in the name of "discovery" and the court never inquired into their relevance or nature.  Significantly, the government was quoted in

the newspaper around the time of this hearing to suggest that the "20 boxes" of evidence represented a "mountain" of evidence against Defendant.  (*See, e.g.,* Dkt 222)

      3) Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial?    The only "express" finding at the hearing was: "I want the time excluded, Mr. Walz, under the Speedy Trial Act based on new counsel coming into the matter … [a]nd also to allow him an opportunity to properly review the discovery in this case." (10/23/2009 Hrg. 10:14-21.)  This is inadequate under *Toombs* and *Occhipinti* because there was no explanation as to "why" or "how" the court was balancing the relevant interests.

On December 14, 2009, Magistrate Alba filed a written order (Dkt 29).  That order memorialized a conversation about voluminous discovery, e.g., "according to notifications of compliance filed by the United States, over 250,000 pages of discovery, in addition to audio recordings, have been provided to the defense."  (Dkt 29 at 2)  Tellingly, there is still no disclosure as to the "nature" or "relevance" of the material being discussed.  The December 14 order was entered approximately two months after the fact, and after the government had filed its superseding indictment.  This is significant because, first, because while the government stated its intent to seek a superseding indictment at the October 23, 2009 hearing, any findings would not have been relevant to unfiled charges.  Second, there was no representation or description of the future charges and whether the reasons stated regarding discovery had any relevance to those new charges.  Thus, neither the October 23 nor December 14 orders purported to exclude time pertaining to the November 10, 2009 superseding indictment.

There was an express and explicit finding in the written order (Dkt 29):

The Court finds that the ends of justice outweigh the best interests of the
defendant and the public in a speedy trial. §18 U.S.C. 3161(h)(7)(A) and (B).
The Court specifically finds that the period of delay is warranted because of the
following factors: 1. The discovery in this case is so voluminous that defense
counsel, Mr. Mumford will need a substantial period of time to review and
evaluate it; 2. The 20 boxes of discovery received from the United States from
the State of Utah will not be copied until December, 2009; 3. As indicated by the
Indictment, the case is complex. 4. Mr. Mumford is new to the case.

But there are still several problems with this finding. First, the finding that the case is complex is

conclusory, without explanation or reference to the statutory factors for complexity. Second, as

the court observed in *Williams*, 511 F.3d at 1056-57, "it must be clear from the record that the

trial court struck the proper balance when it granted the continuance." Thus, while the court

entered express findings, the question is, did its order make clear that it struck the "proper

balance." The order does reveal one side of the relevant *Toombs* inquiry, how long it would take

the government to copy the 20 boxes of discovery it received from the State of Utah. But there

was nothing in "the district court's orders as to the nature of the recently disclosed discovery,

[or] the relevance or importance of the discovery." *Toombs*, 574 F.3d at 1272. Without first

establishing the nature and relevance, the schedule is irrelevant and does not answer the

fundamental question of "why" the court concluded that "more time was needed" in that the

"ends of justice outweigh the best interest of the defendant and the public in a speedy trial." *Id*.

"Thus, the record does not satisfy even the minimal threshold set forth in *Occhipinti*." *Id*. To

put the point simply, § 3161(h)(7) requires a valid "reason" for the volume of discovery at issue

to justify "the ends of justice" being invoked over the public's and defendant's interests in a

speedy trial, and that the court must inquire into the "the nature and relative importance"

importance of the discovery. Without this, the government might bypass speedy trial rights by

dumping hundreds of thousands of irrelevant pages of so-called discovery in a defendant's lap

and prolong its investigation, virtually indefinitely. This is precisely what happened here. The

46

20 boxes of evidence proved largely irrelevant, gave the government a headline referring to a "mountain" of evidence, (Dkt 222), and resulted in at least a year of delays before it certified that its document production was complete.

Finally, the entrance of this order, two months after the fact, asserting findings not made during the hearing (no discussion was had at the hearing regarding the ends of justice, or the interests of the public or the defendant in a speedy trial) cannot save the invalid October 23, 2009 order. *Loughrin*, 710 F.3d at 1122 ("Those findings were not merely being entered on the record, but were being made in the first instance after a hearing. As such, they cannot be given retroactive effect."); *Doran*, 882 F.2d at 1516 ("However, this rule is not a license to routinely convert run-of-the-mill continuances retroactively into ends-of-justice continuances."). There is nothing to excuse the lack of an order entered at the time of the October 23 hearing. As the Tenth Circuit has made clear, "the appropriate time for the court to place its findings on the record is just prior to or contemporaneously with the grant of the continuance." *Rushin*, 642 F.3d at 1303. The lateness of these findings suggests that the court did not base its decision on the statutory findings, but later added the statutory findings in support of its decision. This is impermissible under § 3161(h)(7)(A).

4) Did the district court grant an actual continuance? No. Magistrate Alba's December 14 Order did not cancel, vacate or reschedule any dates. He simply set a hearing date. If setting a hearing date were allowed to translate into the equivalence of "granting a continuance" under the Act, the period of time from an order setting any hearing date – until the hearing itself (regardless of whether there was delay, and regardless of whether there was more time granted to either party) would become a vehicle for noncompliant ends of justice continuances. *See, e.g., Doran*, 882 F.2d at 1516-17 ("Allowing the granting of an ends-of-justice continuance to take

place outside the boundaries discussed above also invites much wider use of this procedural device than Congress intended.").

In sum, the court did not consider the statutorily required factors, it did not make express and explicit findings at the time of making the order, and the findings "made" and entered two months later, remained ineffective, largely because its conclusory statements were inadequate and it did not make sufficient inquiry regarding the nature or relevance of the discovery to the underlying charges. Without these, the order cannot satisfy the statute and the purported exclusion of time is ineffective. For these reasons, the October 23, 2009 order does not exclude time under § 3161(h)(7) for Periods B and C, and the Court must add at least **36** days to the December 10, 2009 STA clock, and for Periods Y and Z a total of **37** days to the June 19, 2009 STA clock.[15]

### iv.   Adjusting For The January 27, 2010 Faulty Ends Of Justice Order Adds A Total Of 13 Days To The STA Clock.

On January 27, 2010, Magistrate Alba conducted a status conference and, among other things, set a follow-up status conference for March 31, 2010. During the hearing, Magistrate Alba purported to exclude time through March 31. The minute entry states, "All time is to be excluded pursuant to the Speedy Trial Act. Mr. Walz to prepare an order." (Dkt 34)

FACTS: What does the record reflect? At the hearing, Magistrate Alba inquired about the status of the government's promised discovery. "The last time that you appeared in front of me there were certain representations made concerning the amount of discovery in this case and the availability of that discovery for the defense. Mr. Walz, how has that proceeded?" (1/27/2010 Hrg. 3:5-9.) AUSA Walz reported that the government copied and produced the "20 boxes," and that it was "going through all of our evidence again to make sure that we have

---

[15]     As set forth above, for Period A, Defendant already counted 3 of these days as unexcluded.

provided what needs to be provided."  (Id. 4:1-7.)  Walz represented that the government would

be finished with its production by February 12, 2010.

The court responded by asking defense counsel: "In light of the representations by Mr.

Walz of the material that has been provided and the material yet to be provided by February 12,

how much longer do you need in order to adequately review the material and be prepared to file

motions on behalf of your client? "  (Id. 7:12-17.)  "I realize there is quite a bit of volume of

discovery, but I want to rein this much as I can."  (Id. 8:17-19.)

Without receiving an answer from defense counsel, Magistrate Alba stated:

Let's do this.  I am going to continue this matter for further status to March 31st.
On that date I want to have a further status conference in front of me at 9:00.  I
want to get an idea, Mr. Mumford, at that time whether there are still some issues
on items that you may not have received by then, but I also want to better focus in
terms of what motions you anticipate filing and by when.  Because on that date I
do want to look at a cutoff date for motions.… For now let's just have a further
status conference on March 31st.

(Id. 8:20-9:7.)  At the end of his statement, Magistrate Alba turned to Walz and simply stated, "I

want the time excluded under the Speedy Trial Act in light of the voluminous nature of the

discovery that is being made available to counsel, to the defense, and if you will get that order to

me for signature I would appreciate that."  (Id. 9:14-18.)

On February 17, 2010 the court entered a written order (Dkt 41).  The minute entry

stated: "Order To Continue – Ends of Justice as to Claud R. Koerber Time excluded from

01/27/2010 until 03/31/2010."  The written order (Dkt 41) recounted some of the discussion at

the hearing regarding discovery and concluded:

Based upon the voluminous discovery in this case, and the need for additional
time for defense counsel to review the discovery in order to determine what
motions need to be filed and when they can be filed, the period of delay from
January 27, 2010 to March 31, 2010, is excluded from the time within which trial
of this case must commence pursuant to 18 U.S.C. §3161.  The Court finds that
the amount of discovery in this case necessitates this continuance for this period

of time which renders this case so complex that the ends of justice outweigh the best interests of the defendant and the public in a speedy trial.  18 U.S.C. §3161(h)(7)(A) and (B).  The text of the order recounts some of the discussion on January 27, 2010 about discovery and concludes, "the period of delay from January 27, 2010 to March 31, 2010, is excluded from the time within which trial of this case must commence pursuant to 18 U.S.C. §3161.  The Court finds that the amount of discovery in this case so complex that the ends of justice outweigh the best interest of the defendant and the public in a speedy trial. 18 U.S.C. §3161(h)(7)(A) and (B).

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)?</u>  No.  There was no consideration of the factors under § 3161(h)(7)(B) or *Toombs* inquiry regarding the nature or relevance of the discovery to be provided.  *Toombs*, 574 F.3d at 1271-72.

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance "outweigh the best interests of the public and the defendant in a speedy trial"?</u>  No.  There were no findings made at the hearing.  There is nothing in the record to show that the court or the government showed any concern for the ends of justice, the public's interest or the defendant's interest in a speedy trial.

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial?</u>    No.  The order itself, entered two weeks after the hearing (Dkt 41), appears to enter findings, but they are simply conclusory statements, which, as previously described, are prohibited by *Williams* and *Toombs*.  In fact, the statements are so generic that the order could have been entered at any time, before or after, and there would be no way to reference these "findings" to what actually took place at the hearing.

The finding that the case is "complex" due to voluminous discovery is also problematic. The statute limits a finding of complexity to three factors. Those factors were not addressed by Magistrate Alba, nor were they referenced in his January 27, 2010 order. The government cannot justify a faulty order simply by having the court enter a generic finding that the case is "complex." *Zedner*, 547 U.S. at 507 ("[The Act] is not satisfied by the District Court's passing reference to the case's complexity.").

4) <u>Did the district court grant an actual continuance</u>? No. The court simply set a hearing. There were no dates continued. While it is true that Magistrate Alba said that he was "continuing this matter for status" that is not a continuance within the meaning of the Act, as previously referenced and previously argued. No existing dates were cancelled, and no trial date was vacated or rescheduled.

For these reasons, neither the January 27, 2010 order (Dkt 34) nor subsequent written order (Dkt 41) exclude time under § 3161(h)(7) for Period E, and the Court must add **13** days to the December 10, 2009 STA clock.

### v. Adjusting For The August 31, 2010 Faulty Ends Of Justice Order Adds A Total Of 7 Days To The STA Clock.

On August 31, 2010 (Dkt 94) the court held a status and scheduling conference that it observed, at the outset, was "for attorneys only, um, the defendant need not be present."

FACTS: <u>What does the record reflect?</u> On August 31, 2010, Magistrate Alba stated: "What I need to find out is where we are from the government in terms of discovery." It had been over a year since the initial May 26, 2009 indictment and more than nine months since the November 10, 2009 superseding indictment, the government still had not delivered the discovery it promised. For the first time, the government certified: "Your Honor, we have produced everything in our possession except for those things, for instance, the Jencks material or matters

51

coming to our attention and we turn those over within two weeks of getting them."  (8/31/2010

Hrg. 3:15-18.)

After a minor dispute with the government over when it would be required to produce

Jenks Act material (Id. 3:19-4:13-17), the court inquired of Defendant, "[Are there] any other

kind of motions that you anticipate filing?"  (Id. 4:19-20.)  Defendant previewed five anticipated

motions.  The court then set a deadline, "Mr. Mumford, I am going to give you until September

30th to file those motions with the court."  (Id. 5:19-20.)  Defense counsel described the volume

of discovery to be reviewed and explained that while he "asked the government to help us

pinpoint the relevant information within that information," those efforts "have just broken

down."  (Id. 6:5-13.)  Defendant's counsel requested a pre-trial motion cut-off of February 1,

2011.  The government argued that amount of time was "excessive."  (Id. 7:7-13.)

> Magistrate Alba concluded,
>
> I want all motions filed in this case by December 15th.  Now, as soon as they are
> filed, I will contact Judge Stewart to see whether – and his practice is usually that
> he will hear motions to suppress because they really guide how he goes on with
> the trial matters…So, we'll do it – that will be the cut off date, and then he will
> decide when to set them for hearing, okay?"
>
> ….  I will not set a trial date at this time, but that is the cut off date for motions.  I
> want the time excluded under the Speedy Trial Act and the reason for that is the
> defense still needs time to prepare the motions and to file them by that time.  If
> you will prepare, Mr. Meyfield, an order excluding the time and get that to me for
> my signature I would appreciate it.

(Id. 8:23-9:4.)  Following this August 31, 2010 status conference, on September 21, 2010

(Dkt 98) the court entered a written order.  The relevant portion of the order states,

> [T]he period of time between August 31, 2010 and the date set for trial is
> excluded from the time within which trial of this case must commence pursuant to
> 18 U.S.C. §3161.  The Court finds that the ends of justice outweigh the best
> interests of the defendant and the public in a speedy trial.  18 U.S.C.
> §3161(h)(7)(A) and (B).  The Court specifically finds that the period of delay is
> warranted because of the following factors:  1. The discovery in this case is

voluminous and requires additional time for defense counsel to review and evaluate it, and determine what motions may be filed in light of the facts determined thereby; [sic].

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  There is no indication that the court considered the statutory factors.  The findings are generic and conclusory.  While the order again references that there is a large amount of discovery and that Defendant has requested time for pretrial motion preparation, there is no consideration of *Toombs* factors.  Nor did Magistrate Alba consider the holding of the Supreme Court in the then-recent decision in *Bloate v. United States*, 559 U.S. 196, 204 (2010), that time required to prepare pretrial motions may not be excluded under § 3161(h)(1)(D) as an automatic exclusion, and may only be excluded when a district court enters express findings under § 3161(h)(7).

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance "outweigh the best interests of the public and the defendant in a speedy trial"</u>?  No.  This was not the basis of the court's decision.  The court denied the continuance, finding that the "ends of justice" did not outweigh the best interests of the public and the defendant.

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial</u>?   No.  In fact, Magistrate Alba declined the request for a continuance, so his attempt to make findings in support of an exclusion of time was out of place.  And the government's effort to prepare a written order purporting to state those grounds in support of a continuance was trying to put a square peg into a round hole.

Finally, the conclusory reference and passing reference to voluminous discovery is inadequate, particularly more than a year into the case.  As argued previously, without the *Toombs* required inquiry into the nature and relevance of the discovery, the findings fail to satisfy the ends of justice requirements.   This is more particularly so with this order, because Defendant's counsel actually raised with the court his difficulty in getting the government's help to "pinpoint the relevant information within that information."  (Id. 6:5-13.)

4) <u>Did the district court grant an actual continuance</u>?  No.  The court denied Defendant's request for a continuance of the pre-trial motion deadline.  In the context of the above exchange, §3161(h)(7)(A) clearly states that the court can exclude time, *<u>if</u>,* "at the request of the defendant or his counsel… the judge *<u>granted</u>* such continuance" and does so the "basis of his findings that the ends of justice served by" granting the continuance "outweigh the best interest of the public and the defendant ins a speedy trail."   But, in this situation, the court denied the request of Defendant and then purported to exclude time under the Act.  This is impermissible.  Further, it illustrates the mistaken approach Magistrate Alba repeatedly took in this case, purporting to exclude time whether or not a *bona fide* continuance of some prior date or set event took place. The practice frustrates the very nature of the *ends of justice* provision itself.  See *Doran*, 882 F.2d at 1516-17 ("Allowing the granting of an ends-of-justice continuance to take place outside the boundaries discussed above also invites much wider use of this procedural device than Congress intended.").  In fact, the statutory framework is set-up for exactly the opposite handling.  As the Supreme Court observed:  "[i]n considering *<u>any</u>* request for delay, whether the exclusion of time will be automatic or not, trial judges always have to devote time to assessing whether the reasons for the delay are justified, given both the statutory and constitutional requirement of speedy trials…. district courts [are not] forced to choose between rejecting a

defendant's request for time to prepare pretrial motions and risking dismissal of the indictment if preparation time delays the trial. Instead, a district court may exclude preparation time under subsection (h)(7) ***if it grants a continuance*** …" *Bloate*, 559 U.S. at 214 (emphasis added).

For these reasons, the August 31, 2010 order does not exclude time under § 3161(h)(7) for Period F, and the Court must add **7** days to the December 10, 2009 STA clock.

### vi.   Adjusting For The August 2, 2011 Faulty Ends Of Justice Order Adds A Total Of 65 Days To The STA Clock.

On August 2, 2011, the court held a status conference to reset the pre-trial motion cut-off date and a trial date.  (8/02/2011 Hrg. 3:3-9.)

FACTS: <u>What does the record reflect</u>?  At the outset, the government informed Magistrate Alba that it would seeking a second superseding indictment "occasioned by Judge Waddoups' ruling on the privileged matter," expecting that to be filed within "30 and 60 days." (Id. 3:23.)  Walz represented that the government would be adding "counts and maybe some refinement of some counts."  (Id. at 4:10-12.)  Of course, the superseding indictment did not add new counts, and, in fact, dropped two.

In response, Magistrate Alba stated, "I'm really reticent, as you can tell, to set any dates based on that representation."  (Id. 4:13-15.)  The court continued, "Let me do this.  Rather than set dates, in light of those representations, let me just continue this matter for further status to October 6th or 7th."  (Id. 5:5-8.)   AUSA Walz replied,  "No problem with that, Your Honor, as long as the time between now and October 7th is excluded from the Speedy Trial Act calculation."  The court responded, "And I want that done… And [the] reason for that being, again, it is the complexity of the case.  And in light of the prior rulings by Judge Waddoups, to allow the government an opportunity to go back to the grand jury and supersede."  Magistrate

Alba concluded, "If you will prepare an order, Mr. Walz, I would appreciate it." (Id. 6:3-25.)

The court subsequently entered a written order on August 22, 2011 (Dkt 186) stating,

> Based upon the representations at the hearing, the record of the case heretofore, including the fact that the case has previously been declared complex and involves considerable discovery, it is hereby ORDERED that the period of delay between August 2, 2011 and October 7, 2011 is excluded pursuant to 18 U.S.C. §3161(h)(7)(A) and (B) from the time within which the trial of this case must commence pursuant to 18 U.S.C. §3161.

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>? No. To the contrary, Magistrate Alba's ruling was conclusory, focusing on the interests of the government in seeking a superseding indictment, after it was forced to concede that it could not proceed under the current indictment on account of the Court's June 2011 suppression ruling. Referencing "complexity" generally is not sufficient. *Zedner*, 547 U.S. at 507 ("[The Act] is not satisfied by the District Court's passing reference to the case's complexity."). And for Magistrate Alba to give the government a purported "continuance" to allow them "an opportunity to go back to the grand jury" was not appropriate.

If the court would have considered "whether the failure to grant such a continuance" would have deprived the party of the reasonable time necessary for effective preparation, taking into account the exercise of due diligence," § 3161(h)(7)(B)(iv), he would have reached the opposite conclusion. Granting the so-called continuance ensured that Defendant was placed in a holding pattern following the Court's ruling on his motion to suppress (Dkt 165) while the government figured out how to proceed with its case. And, without the *Toombs* inquiry into the "nature" and "relevance" of the "voluminous" discovery, Magistrate Alba should not have allowed the government to "continue" its investigation, including a superseding indictment, without any substantial consequence for the defendant's and the public's interest in a speedy

trial.  This is exactly the kind of impermissible delay that the Act seeks to thwart and is broader than the "ends of justice" standard in § 3161(h)(7).

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance "outweigh the best interests of the public and the defendant in a speedy trial"?</u>  No.  There is nothing in the record to show that the court or the government had any concern for the ends of justice or the interests of the public's interest or the defendant's interest in a speedy trial.  This is particularly so when the government could have dismissed the prior indictment(s), as it had represented it was going to do, and thereby tolled time pursuant to § 3136(h)(5).[16]

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial?</u>   No.  While the court did enter an order on August 22, 2011 (Dkt 186), the "findings" there was a one sentence conclusory statement that does not comply with *Occhipinti*, 998 F.2d at 797.  In fact, the order is similar to the impermissible example in *Zedner*, where the Supreme Court concluded, "[The Act] is not satisfied by the District Court's passing reference to the case's complexity… [and] [t]herefore, the [] continuance is not excluded from the speedy trial clock."  547 U.S. at 507.

4) <u>Did the district court grant an actual continuance?</u>   No.  The court merely set a future hearing on October 7, anticipating that there "may" be a second superseding indictment and that hearing date could be used as a potential arraignment.  There were no postponed events or dates

---

[16]     "Because the filing of the indictment or information lies entirely within the prosecutor's discretion, it is ultimately the obligation of the Government to ensure compliance with the Speedy Trial Act." *Saltzman*, 984 F.2d at 1091 (citing *Doggett*, 505 U.S. at 647).

continued, no existing dates were cancelled, and no trial date was vacated or rescheduled. While

Magistrate Alba said that he was continuing this matter for status, that is not a *continuance*

within the meaning of the Act.  *See supra.*

For these reasons, neither the August 2, 2011 order (Dkt 185) nor subsequent order (Dkt

186) excluded time under § 3161(h)(7) for Period K, and the Court must add **65** days to the

December 10, 2009 STA clock.

### vii.   Adjusting For The November 15, 2011 Faulty Ends Of Justice Order Adds A Total Of 3 Days To The STA Clock.

The November 15, 2011 order arises from hearing (Dkt 201) where Magistrate Alba

denied Defendant's request for a continuance, and then purported to exclude time regardless.

FACTS:  What does the record reflect?  The court conducted a status hearing on

November 15, 2011 (Dkt 201).  The government filed a motion for scheduling conference on

October 28, 2011 (Dkt 199).  This is the first hearing following the government's filing of the

second superseding indictment on September 29, 2011.  The court confirmed that, contrary to the

government's prior representations, "Nothing has changed in terms of new counts or anything of

that sort."  (11/15/11 Hrg. 3:19-4:8.)   Defendant previewed anticipated pretrial motions and

Magistrate Alba set a pre-trial motion deadline for December 30, 2011.

> THE COURT:  Mr. Mumford…I need to give you a cut off date to file all motions, period.  By Friday of this week, you file those [motions] addressing the indictment.  Any other motions you file by December 2nd.
>
> MR. MUMFORD:  Your Honor, with respect to – Your Honor, that is not going to give us enough time to bring to the court's – the court's attention the serious issues that we have in this case…I would suggest a date of March 1st.
>
> THE COURT:  No.  That is too far into the future.
>
> MR. MUMFORD:  How can it be too far into the future, Your Honor, given the fact that we – we have litigated this case for over two years and we prevailed.  Your honor, we prevailed.

THE COURT:  Mr. Mumford.

MR. MUMFORD:  I'm simply seeking the relief that Judge Waddoups gave us.

THE COURT:  Mr. Mumford, here is what I am telling you.  You have until Friday to file the motions address[ing]d in the Superseding Indictment.  You have until December 30th to file all other motions in this case, period.  And I want the time excluded under the Speedy Trial Act to allow counsel an opportunity to prepare those motions.

MR. MUMFORD:  Certainly, Your Honor.  But with respect, December – I know the issues that we have in this case.  We have already previewed them.  December 30th is not going to be sufficient.  What – what I would ask the court is this.

THE COURT:  Hang on.  What motions do you contemplate filing?  What other ones, other than the ones addressing the Superseding Indictment by Friday?

MR. MUMFORD:  The ones that we have already – that we have already forecast for the court.  A motion attacking the securities fraud counts on the basis that there is not securities here, Your Honor.

THE COURT:  Well, you need to file that by December 30th, period….And if you don't file it by then…you may be out.  You understand that?  I want to make sure you understand that."

(Id. 5:1-7:25.)  Following this exchange, Magistrate Alba stated, "That is my ruling.  And, I want the time excluded under the Speedy Trial Act to allow counsel an opportunity to prepare these motions."  (Id. 8:9-13.)

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  No.  To the contrary, it appears Magistrate Alba considered the inverse of those factors, concluding that the failure to grant Defendant the requested continuance would not deny Defendant time to prepare for trial, and denied the continuance on that basis.

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance</u> <u>"outweigh the best interests of the public and the defendant in a speedy trial"</u>?  No.  First, the

court did not grant a continuance, it denied one.  Second, there are no findings on the record, or thereafter.

     3) Did the court "set forth" in the record of the case, either orally or in writing, the "express" and "explicit" findings explaining its reasons for concluding that the ends of justice served by the granting of the continuance outweigh the best interests of the public and the defendant in a speedy trial?  No findings were entered at or after the hearing.  Magistrate Alba asked AUSA Glenn to "[p]repare an order that reflects that, all right?"  (Id. 8:9-11.)  But no such order was ever entered.  The statement by the court – "That is my ruling.  And, I want the time excluded under the Speedy Trial Act to allow counsel an opportunity to prepare these motions" – is not sufficient "findings" under the Act to ensure the "ends of justice" served by granting the continuance "outweigh the best interests of the public and the defendant in a speedy trial."

     4) Did the district court grant an actual continuance?  No.  The court denied Defendant's request for a continuance of the pre-trial motion deadline.  In the context of the above exchange, § 3161(h)(7)(A) states that the court can exclude time, *if,* "at the request of the defendant or his counsel… the judge *granted* such continuance" and does so the "basis of his findings that the ends of justice served by" granting the continuance "outweigh the best interest of the public and the defendant ins a speedy trail."  But in this situation, the court denied the request of Defendant and then purported to exclude time under the Act.  This cannot be permissible.  Further, it illustrates the mistaken approach (and pattern) repeatedly taken by the court that purports to exclude time whether or not a *bona fide* continuance of some prior date or set event has taken place.  Magistrate Alba appears to have divorced the analysis that requires "*ends of justice*" findings and apply the Act as if it was an open ended authorization to exclude any time for the reasons stated.  This practice should not be allowed, as it frustrates the very nature of the *ends of*

*justice* provision.  *See Doran*, 882 F.2d at 1516-17 ("Allowing the granting of an ends-of-justice continuance to take place outside the boundaries discussed above also invites much wider use of this procedural device than Congress intended.").  In fact, the statutory framework is set up to do the opposite.  As the United State Supreme Court recently observed:  "[i]n considering *any* request for delay, whether the exclusion of time will be automatic or not, trial judges always have to devote time to assessing whether the reasons for the delay are justified, given both the statutory and constitutional requirement of speedy trials…. district courts [are not] forced to choose between rejecting a defendant's request for time to prepare pretrial motions and risking dismissal of the indictment if preparation time delays the trial. Instead, a district court may exclude preparation time under subsection (h)(7) ***if it grants a continuance*** …" *Bloate*, 559 U.S. at 214.

For these reasons, the November 15, 2011 order (Dkt 201) does not exclude time under § 3161(h)(7) for Period N, and the Court must add **3** days to the December 10, 2009 STA clock.

### viii.   The May 1, 2012 Ends Of Justice Order Is Invalid.

In response to Defendant's motion (Dkt 243) (sealed), the court conducted a hearing on March 30, 2012 (Dkt 255).

FACTS: <u>What does the record reflect</u>?  While other pre-trial motions were pending, Defendant filed a motion requesting, *inter alia*, time to file additional pre-trial motions.  The court conducted a hearing on March 30, 2012.  After noting his concern that this case "has been dragging on for years" ((3/30/2012 Hrg. 4:3-4), Magistrate Alba "granted Defendant a 13-day continuance, until April 13, 2012, to file additional pre-trial motions.  (Id. Hrg. 6:2-10) ("Today is March 30th.  You have until April 13th to file any other motions in this case, period.  That is it. You have two weeks to get it done.").

One of the factors leading up to Defendant's request for additional time was that, despite the government's prior representations concerning discovery, Defendant had learned of additional discovery with potentially exculpable information, had not been turned over.  (Id. 4:16-5:15) (government counsel:  "we can't even certify to you that we have given you all of the discovery because we can't find it any more").

Magistrate Alba then concluded: "Well, I want the time excluded under the Speedy Trial Act, and again, to facilitate the parties completing the filing of the motions and things of that sort.  And then once the trial date is set by the court, it will be extended until that time."  (Id. 13:2-6.)  Defendant's motion included a proposed order, which the court declined to use. Instead, approximately one month later, on May 1, 2012, the court entered a written order that had been prepared by the government.  (Dkt 262.)  Like the government's proposed order filed on April 3, 2014 (Dkt 413), the order contains statements and conclusions that were not mentioned or discussed at the original hearing.  The relevant portion of the written order states,

> Based upon the record of this case, the extensive discovery documented in prior orders to continue, and the unresolved issues, including Defendant's motion to compel further discovery, the court orders that the period of delay between March 30, 2012, and the eventual trial date is excluded pursuant to 18 USC § 3161(h)(7)(A) & (B) from the time within which trial of this case must commence pursuant to the speedy trial act.  The court finds that the complexity of the case, the remaining issues to be resolved by the motion, the amount of discovery, establishes that the best interest of the Defendant and the public in the speedy trial are outweighed by the need for the continuance.

ANALYSIS:

1) <u>Did the court consider the required factors under § 3161(h)(7)(B)</u>?  No.  To the contrary, Magistrate Alba's ruling was a "run of the mill" continuance that only considered the limited question of whether Defendant should have 13-days of time to file pre-trial motions. *Doran*, 882 F.2d at 1516 ("[T]his rule is not a license to routinely convert run-of-the-mill

continuances retroactively into ends-of-justice continuances.").   As with previous orders, there

was nothing in the hearing record to suggest that Magistrate Alba considered the statutory factors

for "complexity," and referencing "complexity" a month later in the written order in conclusory

fashion is not sufficient.  *Zedner*, 547 U.S. at 507 ("[The Act] is not satisfied by the District

Court's passing reference to the case's complexity.").   While Defendant does not here argue that

the granting of 13 additional days for the filing of pre-trial motions was not considered, the

record is void of any reference to the required statutory factors necessary for a judge to consider

in making *an ends of justice* continuance under the Act.

2) <u>Did the court *find* that the "ends of justice" served by granting a continuance</u>
<u>"outweigh the best interests of the public and the defendant in a speedy trial"</u>?  No.  There were

no findings made at the hearing, no discussion of the ends of justice, and nothing in the record to

suggest that such findings were "made" at the time the court granted the continuance.

3) <u>Did the court "set forth" in the record of the case, either orally or in writing, the</u>
<u>"express" and "explicit" findings explaining its reasons for concluding that the ends of justice</u>
<u>served by the granting of the continuance outweigh the best interests of the public and the</u>
<u>defendant in a speedy trial</u>?    Yes and no.  In its written order a month later (Dkt 262), the court

did "enter" the finding that "the best interest of the Defendant and the public in the speedy trial

are outweighed by the need for the continuance," however, there was no reference to the ends of

justice, or the statutory factors the court should have considered.  There is nothing in the record

or in the body of the order to suggest that the public's interest were considered.  Further, the

"findings" in the order was merely a short conclusory statement that does not comply with the

requirement outlined in *Occhipinti*, 998 F.2d at 797.  In fact, the order is similar to the

impermissible example in *Zedner*, where the Supreme Court concluded, "[The Act] is not

satisfied by the District Court's passing reference to the case's complexity… [and] [t]herefore, the [] continuance is not excluded from the speedy trial clock." 547 U.S. at 507.

4) <u>Did the district court grant an actual continuance</u>?  Yes.  But it was only for 13 days. No other time period was identified at the hearing.  The order (Dkt 262) states that the "delay between March 30, 2012, and the time within which trial of this case must commence" is excluded, but this was without explanation or factual foundation.   It was also without justification under the Act.  There is substantial evidence that the government acknowledged the insufficiency of this purported *forevermore* attempt at exclusion, on its part, on multiple occasions in future proceedings when the STA clock was acknowledged to be running.[17]  Finally, even if the findings and order were adequate (which they are not) the very most time that could have been excluded on March 30, 2012 is the 13 day period between March 30 and April 14, 2012 which was already being excluded by pending motions.  The subsequent written order is an impermissible attempt at retroactive exclusion (and insufficient anyway), based upon the authority cited previously, and particularly *Loughrin*, 710 F.3d at 1122 ("Those findings were not merely being entered on the record, but were being made in the first instance after a hearing. As such, they cannot be given retroactive effect."), and *Doran*, 882 F.2d at 1516 ("However, this rule is not a license to routinely convert run-of-the-mill continuances retroactively into ends-of-justice continuances.").  There is nothing to excuse the lack of an order entered at the time of the March 30 hearing.  As the Tenth Circuit has made clear, "the appropriate time for the court to place its findings on the record is just prior to or contemporaneously with the grant of the continuance." *Rushin*, 642 F.3d at 1303.

---

[17]      *See,* e.g., the description of Period R above.

For these reasons, neither the March 30, 2012 (Dkt 255) nor the subsequent written order on May 1, 2012 (Dkt 262) exclude time under § 3161(h)(7).   Because there were motions pending in the time affected hereby, it is consumed by the automatic exclusion of time pursuant to § 3161(h)(1)(D).

### c.   The June 19, 2009 Speedy Trial Clock Should Apply.

Defendant showed above how time expired under the STA clock that restarted on December 10, 2009, when Defendant appeared to plead not guilty to the charges in superseding indictment.   The purpose of that analysis was to illustrate that even under the most conservative calculation, the Act has been violated.  However, there is good reason to conclude that the charges should be subject to the June 19, 2009 STA clock, which includes the December 10, 2009 STA clock.

"As a general rule, new Speedy Trial Act periods begin to run with respect to an information or indictment adding a new charge not required to be brought in the original indictment." *United States v. Andrews*, 790 F.2d 803, 808-09 (10th Cir. 1986) (holding that Speedy Trial Act was violated but that a defendant waived by pleading guilty).  But the Tenth Circuit held that "when the later charge is merely a part of or only 'gilds' the initial charge, the subsequent charge is subject to the same Speedy Trial Act limitations imposed on the earlier indictment." *Id*.  Thus, the question here is whether the charges in the November 10, 2009 superseding indictment rise anew or are they "part of" the initial ones.

The original May 26, 2009 indictment consists of a 16-paragraph description of an alleged scheme, followed by one count of mail fraud (18 USC § 1341), one count of wire fraud (18 USC § 1343) and one count of tax evasion (26 USC § 7201).  In the November 10, 2009 superseding indictment, the government added 19 counts based on the exact same "scheme."

65

(Dkt 25)  The Court will recall how Defendant pressed this issue for several years because of how the November 10, 2009 superseding indictment incorporated the privileged document that had not been sent to so-called "investors," after the government had represented to Defendant several weeks earlier that the document had been sequestered.  (Dkt 35)  The wire fraud counts in the November 10, 2009 superseding indictment were based on the same "facts" and "scheme and artifice to defraud" pleaded and charged in the original indictment, as were those counts alleging violations of securities laws.  The two money laundering counts were based on the same "predicate offenses" and the same "scheme" alleged in the original indictment.  Finally, the November 10, 2009 indictment added a new count for tax evasion, but in so doing appears to have simply split the amount of "taxable income" and taxes "owed" stated in the May 2009 indictment across two years instead of one.  In other words, the superseding indictment appears simply to "gild" the charges and scheme alleged in the original indictment.

In similar situations, courts in the Tenth Circuit have held that the STA clock did not restart with a superseding indictment.  *See United States v. Bailon-Cruz*, 351 F. Supp. 2d 1131, 1136 (D. Colo. 2004).  In *Bailon-Cruz*, the court dismissed old and technically "new" counts added to a superseding indictment pursuant to the Speedy Trial Act because those added counts "'merely annotate[d] in more detail' the charges alleged in the original indictment." *Id.* (quoting *United States v. Bailey*, 111 F.3d 1229, 1236 (5th Cir. 1997)).  Other cases applying this analysis hold that where a "superseding indictment is simply a more detailed version of the crimes described in the [original pleading]; it is the completed canvas of the painting first etched in the [original pleading]," and thus the charges added to the superseding indictment should be dismissed with the original when the government has violated the Speedy Trial Act.  *United States v. Bilotta*, 645 F. Supp. 369, 371-72 (E.D.N.Y. 1986).

At a minimum, the Court should conduct an analysis on a count-by-count basis, applying the original June 19, 2009 STA clock to those counts added in the superseding indictments that were "part of" or "gild" the charges in the original indictment. *Andrews*, 790 F.2d at 808-09.

**d.   The Government Having Violated The Speedy Trial Act, This Case Should Be Dismissed With Prejudice.**

As argued above, the Act plainly requires dismissal for a violation of the 70-day clock. The Act further provides that "in determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  18 U.S.C. § 3162(a)(2).

**<u>Seriousness</u>**.  The charges against Defendant are serious, which is why Defendant has fought them for almost 5 years, and for several years prior to that, seeking to vindicate his rights. But the manner in which the government has prosecuted this case reduces the weight of this factor for purposes of a § 3162(a)(2) analysis.  When it comes to important matters, the government has not pursued this case diligently.  To the contrary, it took the government over a year to certify that it had provided the initial discovery after making representations to the Court and Defendant about how much it had disclosed at Defendant's first appearance in June 2009. (*Compare* 8/31/2010 Hrg. 3:15-18 *with* 6/19/2009 Hrg. 5:12-20.)  In this case, the government has cycled through a dozen Assistant United States Attorneys.  Nor can the Court avoid the sordid history of this case, where Defendant has already established how the government intentionally intruded on his constitutional rights and attorney-client relationship to secure an indictment in the first instance.  (Dkt 360 at 9-10, 25.)

**Circumstances Leading to Dismissal**.  The circumstances of this case are unique.  The government has been engaged in unethical misconduct since at least February 2009, when prosecutors directed the IRS and FBI investigators to circumvent Defendant's attorney at the time and interview him *ex parte*.  (Dkt 360 at 9-10)  In fact, Defendant has established evidence of "an internal scheme to prejudice Defendant" reaching back before February 2009, where the government pursued the strategy it spelled out in an internal case-related memo from early 2008, advising prosecutors and investigators to use "the media, investors and other attorneys" as their "audience" and to consider the "policy reasons" of using legal filings as a "means of making information public and urging investors to choose between cooperating [with the government] or allying with Koerber."  (Dkt 234-4)  The Court will recall being "troubl[ed]" at this evidence, referring to the government's press strategy from the outset where it also sought falsely to tar Defendant as having orchestrated a "classic ponzi scheme" where "religion" was used to prey on "hundreds" of victims.  (Dkt 222 at 1-3; 284 at 17)

Defendant has been the target of the government's investigation since 2005.  (Dkt 360 at 10)  He presented evidence from the years before the May 2009 indictment where government investigators admitted that he was being singled out for punishment even though "[t]here [was] no conduct that has been isolated … that [he] violated any laws or rules," because he had "painted [the government] in a corner … [by going] on the radio and [having] publicly accused us of stuff."  (Dkt 234-3)  Initially, the state part of the joint federal-state task force assigned to this case admitted they "did not have proof" to pursue Defendant for the actions of others, and even though it was "long on conclusions, but short on facts," they "want[ed] the case filed quickly."  (Dkt 234-4)

Federal prosecutors appear to have adopted a similar "shoot now, ask questions later" approach.  They filed the original indictment based in large part on the false testimony of Defendant's disgruntled assistant that a document had been mailed to "investors" in July 2005 – testimony that Defendant rebutted with simple document forensics.  (Dkt 165 at 5-6)  Defendant has shown how the government continued to use that privileged document, which had not been sent to "investors," in the superseding indictment even after representing to Defendant that it had been sequestered.  (Id. at 9)  In those proceedings, the Court was able to assess the credibility of the government's primary witness, and found it wanting.  (Id. at 8)  And that was not an isolated incident.  In proceedings on Defendant's later motion to suppress, the Court found the testimony of the lead prosecutor and investigators "unconvincing" when they tried to testify that they believed that Defendant was unrepresented at the time of the illegal *ex parte* interviews in February 2009.  (Dkt 360 at 22)  The Court concluded it was more likely those individuals "wanted to be coy and say, can we justify saying [Defendant's] not represented so we can interview him."  (Dkt 360 at 25)

Coupled with the misconduct complained of herein, i.e., filing frivolous motions for the purpose of delay, submitting a false certification in support of the government's appeal that it was not taken for the purpose of delay, where it turns out the government was still waiting for authorization to pursue the appeal, these circumstances warrant dismissal with prejudice. "Where the delay is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy."  *Saltzman*, 984 F.2d at 1093-94.

The fact that the government is directly responsible for most if not all of the delay in this case should weigh heavily in the favor of dismissal with prejudice.  *See, e.g., United States v.*

69

*Smith*, 225 F. Supp. 2d 1305, 1311 (D. Utah 2002) (where "record shows a clear pattern of neglect by the government," "dismissal with prejudice is appropriate").  Here, so much of the delay in the case could have been avoided had the government not engaged in unethical conduct, cooperated with Defendant's requests to return his privileged information, or not falsely certified to this Court that it was authorized to pursue the appeal when it was not.

Further, in the instant case, the faulty ends of justice continuances were related to the government's dilatory approach to producing and certifying discovery.  In the process, the government persistently neglected meet discovery deadlines, to assist the defense in organizing and identify "relevant" information, and seemed all to eager to dump hundreds of thousands of pages (some not even related to the Defendant or this case) in a disorganized and haphazard fashion, leading to headlines announcing a "mountain" of evidence against Defendant, and allowing the government to "continu[e] the investigation" for more than a year after the first two indictments.[18]  This is not a case where Defendant was the primary or even a significant cause for the delay.  The Court will recall letters Defendant wrote seeking the cooperation of the United States Attorney to avoid motion practice.  Of course, Defendant's pre-trial motions (which automatically excluded time) were meritorious and successful at in seeking remedies for the government's misconduct.  So much of the time at issue in this motion elapsed as the government attempted to shift theories and regroup after the adverse rulings.

**Impact of Reprosecution on the Administration of the Act and Justice**.  In light of what the court has already found to be unconstitutional, unlawful and unethical conduct, the court has already concluded that evidence from the February 2009 interviews and all fruits derived therefrom should be suppressed "[to] prevent the erosion of "citizens' faith in the even-

---

[18]     Robert Gehrke, Commerce Had A Mountain Of Evidence In Alleged Ponzi Scheme, Salt Lake Tribune, Sept. 18, 2009 (referring to the "20 boxes of evidence").

handed administration of the laws."  (Dkt 360 at 59)  Dismissal with prejudice for violations of

the Speedy Trial Act serves the same purpose.  The government's conduct in pursuing and

prosecuting this case for at least 9 years has violated ethical rules, federal statute, and

Defendant's constitutional rights.  (Id.)

       Nor can the government restore confidence in its case with another indictment, having

relied first on Defendant's disgruntled assistant, who the Court found to be "not credible," (Dkt

165 at 8), the lead prosecutor and investigators took the witness stand to defend their misconduct

– testimony the Court found "unconvincing."  (Dkt 360 at 22)  The Court has already had to

"admonish" prosecutors in the United States Attorney's Office for the District of Utah to "adhere

with exactness to the ethical obligations set forth in the Rules of Professional Conduct."  (Id. at

29 n.1)  With this motion, Defendant has shown how that same office spent several months

disregarding the important stricture of 18 U.S.C. § 3731, which was enacted to protect

Defendant's rights. "The certification itself is a representation by the United States Attorney, as

an officer of the court, that the appeal is not for purposes of delay and that the suppressed

evidence is indeed material."  *United States v. W.R. Grace*, 526 F.3d 499, 507 (9th Cir. 2008).

"A certification that the appeal has not been taken for the purpose of delay would be a hollow

protection for a defendant's right to resolve his or her case quickly if we were regularly to allow

prosecutors to wait months before verifying the propriety of their appeals."  *United States v.*

*Hanks*, 24 F.3d 1235, 1239 (10th Cir. 1994) (emphasis added).  But in this case, instead of

representing that he had made "a thorough and conscientious analysis of the case before deciding

to appeal," the United States Attorney casually certified to this Court that the government's

appeal was "not taken for the purpose of delay," only to later admit that it was filed as a

"protective" measure while his office was waiting for the necessary authorization, during which

time his office moved for two extensions of time and admitted to this Court that it was not doing anything to protect Defendant's rights to a speedy resolution of the issues.

All this while Defendant has been under indictment, re-indictment, and then another re-indictment for almost 5 years. The prejudice he has suffered has been legal, personal, and real. Legally, the lapse has caused the government to lose critical information (which it has admitted, and which will become an issue in future motion practice should that prove necessary). (See Dkt 219 & 268) Witness memories are already proving severely impaired (Agent Marker for example has already testified twice that he remembers little of several critical communications he had back in 2007 and 2008). Personally, Defendant has been under pre-trial release conditions for five years. This includes being deprived of his Second Amendment rights, the abridgment of his First Amendment rights to associate freely, and his general ability to live, work and raise his family. He has faced financial ruin, family issues, and health issues as a result of being subject to the abuse of process and misconduct by stewards who hold the overwhelming resources of the federal government. These are not small things and with the passage of time, the prejudice grows. The elapsed time under the Act is not a technicality, but even without the invalid ends of justice continuances the time passed is significant.

The violation of the Speedy Trial Act, in this instance, is another violation of law by federal prosecutors who, through the pattern and conduct of this case, have been strikingly unwilling to confirm their own conduct to the Constitution, the applicable ethical standards, rules and statutes. To allow the government a fourth chance to re-indict would be unjust, unjustified, and a tacit form of tolerating this kind of prosecutorial misconduct.

## II.    Defendant's Sixth Amendment Speedy Trial Rights Have Been Violated.

As recognized by the Supreme Court, "the right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment…[and] one of the most basic rights preserved by our Constitution." *Klopfer*, 386 U.S. at 223 ("The pendency of [an] indictment may subject [a defendant] to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes."). The delay Defendant has experienced in this case is sufficient to "trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 671. Pursuant to *Barker v. Wingo*, 407 U.S. 514 (1972), a court should assess 4 factors to evaluate a motion to dismiss for violations of Sixth Amendment's rights to speedy trial: (1) whether delay before trial was uncommonly long, (2) whether the government or the defendant is more to blame for that delay, (3) whether, in due course, the defendant asserted his right to a speedy trial, and (4) whether the defendant suffered prejudice as the delay's result. *Id.*

In the present case, two of these factors are exceptionally fact intensive. First, the question of "blame" for the delay, in this case, relates directly to some of the government's very specific conduct. The government's false § 3731 certification for its interlocutory appeal, the government's refusal to admit that it knew Defendant was represented by counsel in 2009 (despite having email communications with the Department of Justice on that very subject), and the government's misleading representations related to both the conduct of its recent appeal and its frivolous motion practice since moving to dismiss its own appeal place at issue evidentiary considerations of intent and motive. How was it that the United States Attorney himself certified to this Court that the government's appeal of the August 15, 2013 Order was not "taken for the purpose of delay," when in fact the Notice of Appeal was filed for that very purpose? More than

150 days elapsed from September 2013 to February 2014, when the Tenth Circuit returned the case mandate.

On what grounds, and on whose orders, has the government filed at least 2 frivolous motion since moving to dismiss its own appeal, motions which had no basis and were filed solely for the purpose of delaying and to purportedly toll the applicable STA clock while the government figures out its next move?

Why did the government not certify until August 2010 that it had provided all required discovery to Defendant (more than a year after the first indictment)?  (*See* 8/31/2010 Hrg. 3:15-18.)  Why did the government refuse so long to admit that it had relied upon Defendant's attorney-client privileged information in obtaining the May 26, 2009 and November 10, 2009 indictments?  Why did it use that privileged information to obtain the November 2009 superseding indictment even after it promised to sequester it?

Second, on the question of prejudice, the government has used the extra time it has had to directly prejudice Defendant in preparing for trial and in availing himself of legitimate defenses. In this regard, the government has admitted that it has already lost critical evidence, including recordings of presentations where the very facts discussed in the indictment(s) are discussed between the individuals who are parties several of the individual counts (including but not limited to Mr. Isom, Mr. Clark, Mr. Maglby and the Defendant).  (See Dkt 219)  Further, the government utilized information it obtained from the illegal February 2009 interviews of Defendant (particularly regarding Defendant's prior attorney Brad Jacobson, related to the original formation of Founders Capital, LLC) and used that information in furtherance of this prosecution.  Accordingly, Defendant moves for an evidentiary hearing to assess "blame," and further support his motion.

### III.     The Case Should Be Dismissed Under Rule 48(b)(3) For Unnecessary Delay.

Rule 48(b)(3) of the Federal Rules of Criminal Procedure provides that a court "may

dismiss an indictment … if unnecessary delay occurs in … bringing a defendant to trial."

F.R.Cr.P. 48(b)(3).  The Tenth Circuit commits dismissal under Rule 48 to the "sound discretion

of the court" under its general supervisory powers, including possible "prosecutorial

vindictiveness."  *United States v. Begay*, 602 F.3d 1150, 1153-55 (10th Cir. 2010).  The Tenth

Circuit has noted that "much of the case law applying Rule 48 standards predates the Speedy

Trial Act."  *Id.* at 1154 n.4.

What authority would this Court have to dismiss under Rule 48?  Starting with the Act

itself, Congress has provided for certain sanctions "in addition to any other authority or power

available" to the court.  18 U.S.C. § 3162(b).  Section 3162 specifically forbids "an attorney for

the Government" from filing "a motion solely for the purpose of delay which he knows is totally

frivolous and without merit" and from making "a statement for the purpose of obtaining a

continuance which he knows to be false and which is material to the granting of a continuance."

§ 3162(b)(2)-(3).  Yet, in the present case, government attorneys have engaged in exactly these

types of practices, repeatedly.  Rule 48(b)(3) would be a just and fair use of the court's

supervisory authority to sanction misconduct, and it would further be consistent with the Act.

Example 1:  On February 14, 2014 the government filed a motion to reconsider (Dkt 395)

and Defendant responded with a motion to strike (Dkt 398).  Among Defendant's reasons were

that the motion was procedurally deficient under DUCrimR12-1 (its amounted to a one sentence

request, without grounds), it was based upon a false statement in suggesting that "[t]he issue of

the suppression of fruits was never briefed or argued by the parties", and it was part of a pattern

of the government filing serial motions to reconsider "as a second chance when a [it] ha[d] failed

to present its strongest case in the first instance." *Sec. Serv. Fed. Credit Union v. First Am. Mortgage Funding, LLC*, 906 F. Supp. 2d 1108, 111 (D. Colo. 2012).  Finally, Defendant concluded that "it would be unjust and unfair, to allow the government to benefit from a procedurally and substantively invalid filing, to, among other consequences, unfairly toll the application of the [S]peedy [T]rial [A]ct" and requested a "court tailored sanction and remedy, pursuant to DUCrimR12-1(b)(8).   The court denied the government's motion and left open the subject for Defendant's future briefing, pertaining to a possible Speedy Trial Act consequence.

Example 2:  At the March 28, 2014 hearing, the governed secured Defendant's agreement to the "earliest possible" trial date, based in significant part upon the Court's assurances that it was not granting any "ends of justice" continuances pertaining to the Speedy Trial Act.  The Court made clear in its order from the bench, (Dkt 411), and subsequent written order (Dkt 412) that it was not tolling or excluding any time under the Speedy Trial Act, securing at the March 28, 2014 hearing the verbal assent to this by both counsel for the government and for Defendant. In the follow-up written order (Dkt 412) the court re-affirmed that it was "not at this time tolling time for the Speedy Trial Act or making any determination as to Speedy Trial Act issues, which may be briefed as the parties deem appropriate."

Yet, on April 3, 2014 the government filed a motion for an order excluding time under the Speedy Trial Act.  Given the resolution of matters at the March 28 hearing, this was inappropriate because the matter had been settled.  But the government's action was more inappropriate for how it asserted falsely that its request was "based on the record of the case and the hearing on March 28, 2014."  (Dkt 413)  The Court expressly declined to exclude time under the Act at the March 28 hearing.  Yet the government submitted with its motion, a proposed order that falsely states how "the Court finds that the period of delay from the filing of the

76

government's Motion for Status, Reconsideration and Scheduling Conference until the June 13,

trial date is excluded from the time within which trial of this case must commence."  (Dkt 413)

Of course, the Court made no such findings and there was no purported basis for such

findings.  And "[a]lthough findings may be entered on the record after the fact, they may not be

made after the fact."  *United States v. Larson*, 627 F.3d 1198, 1203 (10th Cir. 2010).   "[E]nds-

of-justice continuances should not be granted cavalierly."  *Williams*, 511 F.3d at 1049.

Nevertheless, the government appears to have been hoping that like the faulty *ends of just* orders

discussed above, it might try to rewrite history, retroactively tolling time under the Act, and

securing from the court an order that was contrary to what Defendant obtained at the March 28,

2014 hearing.

Example 3:  At the August 27, 2013 status conference, the court asked the government,

"[W]hat is the United State's response to how the defense has suggested we should proceed."

AUSA Bearnson answered, "Your Honor, with respect to the appeal, that is something that the

Solicitor General must pass on, we don't make that decision it's something that the Solicitor

General must review.  So that decision is something that we can't speak to."  This, was part of a

representation as part of a planning process, that contributed to the court granting an "ends of

justice" continuance excluding time from August 27, 2013 through to February 10, 2014 (the

then anticipated trial date).  Of course, approximately two weeks later, the government filed a

notice of appeal (Dkt 366).  It was not until January 2014 that the government admitted the

Solicitor General had not reviewed the matter by the time of the filing of the appeal, and that

United States Attorney had filed a false certification in support of a "protective" notice of appeal for the purpose of delay.[19]

The Court will recall Defendant pressed this issues during the pendency of the government's appeal, and before the government admitted that it did not have authority to pursue the appeal when it filed the notice of appeal.   During the November 13, 2013 hearing, this court asked the government: "It is in everyone's interest and the defendant has some constitutional protections to entitle him to a speedy resolution.  Has the United States taken any action to expedite the appeal in terms of accelerated briefing schedule or asking for expedited hearing by the court of appeals?"  AUSA Hagen answered, "No we haven't, Your Honor."  If she would have stopped there, she would have been completely candid.  However, she continued:

> In fact, we recently asked for a 30-day extension in which **to file our brief**.  The reason for that is that these government appeals are subject to quite intensive review at all levels of the department, and we are required to coordinate with different components which make expedited briefing very, very difficult. However, **we intend to file our brief** on the due date which is December 13th. Hopefully this case will be fully briefed before the March oral argument calendar and we will have a decision within two or three months after that.  So we're hoping that it will move fairly quickly.

(11/13/2013 Hrg. 10:10-11:4.)  In December, the government would file a second request for an extension of time to "file our brief."  It was not until January 2014 that the government acknowledged its deceit and moved to dismiss the appeal, something that Defendant and the Court may not have ever found out otherwise.

Pertaining directly to this motion, in all three of these instances, the government unethically and deceptively obtained a tolling of the STA clock.  As a sanction, Defendant

---

[19]     On January 17, 2014, the government admitted that "[t]he SG did not make any decision as to whether to pursue this appeal until January 3, 2014."  In the same email, the government admitted that it had actually filed the "notice of appeal" pursuant to the United States Attorneys Manual, §2-2.132 which directs, in relevant part, that "a 'protective' notice of appeal should be filed in "[i]n order that the Department may have adequate time to consider the case."

moves to count the more than 150 days that elapsed from September 2013 to February 2014 against the STA clock. *Long*, 900 F.2d at 1276 ("We do not think it self-evident that allowing the government excludable time to decide whether to file an interlocutory appeal of an exclusionary order serves the ends of justice to an extent outweighing the public's and defendants interest in a speedy trial. We therefore include the 27 days from March 6, 1987, to April 4, 1987, in the calculation of the 70 days."). In that time, the United States Attorney reaped the unjust benefit of § 3161(h)(1)(c) which automatically excluded time under the Act during "any interlocutory appeal." And Ms. Hagen obtained multiple extensions of time underneath this umbrella of exclusion, by making statements to this court and to the Tenth Circuit that failed in her duty of candor.

Or, to put this matter simply, by misleading the court and by falsely certifying that the filing of the appeal was ***not*** filed for purposes of delay, when in fact it was purposefully filed for the purpose of delay, the government secured a 150-day delay from September 13, 2013 to February 10, 2014, showing contempt for the purpose and framework of the Speedy Trial Act.

Therefore, Defendant here requests that as a sanction, 1) that the 18 day "ends of justice" exclusion secured by the government on August 27, 2013, be revoked and those 18-days count on the Speedy Trial Act clock; 2) that more than 150 days of delay, from September 13, 2013, to February 10, 2014, be offset by a 150-day district court sanction of time added to the STA clock; 3) that the 42 days of automatically excluded time from February 14, 2014, to March 28, 2014, be offset with a district court sanction of 42 days added to the STA clock; 4) and that the 14 days of automatically excluded time from April 3, 2014, to April 16, 2014, be offset by a 14 day district court sanction of time added to the STA clock; and finally 5) that AUSA Walz, AUSA Hagen, AUSA Bearnson, AUSA Petersen and United States Attorney Barlow each be fined the

statutory amount of $250; each be denied the right to practice before the United States Federal

Court, District of Utah for 90 days, and that this motion be filed with the court's own report with

the appropriate state and federal disciplinary committees, for having participated in the

misconduct seeking unnecessary and prejudicial delay.  18 U.S.C. § 3162(2)(B), (C) & (E).

> "[N]either counsel nor district courts may employ measures for excluding time
> from the speedy trial clock that impermissibly frustrate the [Speedy Trial Act]'s
> purpose of protecting the shared interest of criminal defendants and the public in
> bringing criminal charges to the bar of justice as promptly as practicable." *United
> States v. Richardson*, 421 F.3d 17, 29 (1st Cir.2005); see also *United States v.
> Scott*, 270 F.3d 30, 54-57 (1st Cir.2001) (reversing on the basis of the district
> court's unauthorized late decisions on motions); *Staula*, 80 F.3d at 602 n. 3 ("We
> will not permit either the district court or the prosecution to jerry-build a 'hearing'
> in order to thwart the concinnous operation of the Speedy Trial Act.").

*United States v. Hood*, 469 F.3d 7, 10 (1st Cir. 2006).  Other courts have pointed out the

appropriate use of § 3162(b), in providing that "[s]anctions may be imposed, however, if counsel

seek[s] an exclusion without justification or based upon false information, see 18 U.S.C. §

3162(b)(2)-(4)." *United States v. Trybus*, 2006 WL 1763672 (W.D.N.Y. June 23, 2006)

(unpublished); *see also United States v. Carlone*, 666 F.2d 1112, 1116 (7th Cir. 1981)

("[I]n appropriate cases, for example where the government ha[s] procured a continuance by

deliberate misrepresentation and the delay caused by the continuance was seriously prejudicial to

the defendant, the trial court could revoke the continuance retroactively as a sanction for the

misconduct and a protection for the defendant.").

### IV.  The Court Should Dismiss All Pending Charges Based On The Government's Violation Of The Fifth Amendment And Rule 48(B)(1).

Finally, all pending charges in this case should be dismissed as a result of the

government's intentional delay in presenting them to a grand jury.  The delay at issue is between

March 2008 and November 10, 2009, and particularly February 2009 to May 2009.

The Supreme Court has set an exacting standard for both the government and the defense when addressing the issue of pre-indictment delay.  "The Fifth Amendment *requires* the dismissal of an indictment, even if it is brought within the statute of limitations, if the defendant can prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." *Gouveia*, 467 U.S. at 192 (emphasis added).

> The Fifth Amendment prohibits the government from depriving a person 'of life, liberty, or property, without due process of law.' … [and the] due process clause requires the dismissal of charges against a defendant when (1) the government has caused the delay to obtain a tactical advantage or to harass the defendant, and (2) the delay has, in fact, unfairly prejudiced the defendant's case.

*United States v. Mitchell*, 2014 WL 1151455, at *2 (10th Cir. Mar. 24, 2014) (unpublished).

Unlike Sixth Amendment and Speedy Trial Act, the emphasis under the Fifth Amendment analysis is not on how long the delay, since "possible prejudice is inherent in any delay, however short."  *United States v. Marion*, 404 U.S. 307, 322 (1971).  Instead the emphasis is on "the right[] to a fair trial," *id*. at 324, and whether the government's action "violate[d] fundamental conceptions of justice or the community's sense of fair play and decency."  *United States v. Automated Med. Labs, Inc.*, 770 F.2d 399, 403 (4th Cir. 1985); *see also United States v. Dewing,* 2 F.3d 1161 (10th Cir. 1993) ("A defendant's inability to present a defense at trial is only one type of prejudice caused by delay, however.  *See United States v. Lovasco*, 431 U.S. 783, 790 (1977) (court's task in deciding whether Due Process Clause is violated by preindictment delay is to determine 'whether the action complained of ... violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.").

This is a similar interest, charged on a broader scale, to the court's generally supervisory power under Rule 48.

> The Rule is particularly focused, however, on some type of fault by the government, resulting in lack of diligent prosecution. *See United States v. Yuan Qing Jiang*, 214 F.3d 1099, 1101 (9th Cir. 2000) (prior to dismissing under Rule 48(b), the court must find prosecutorial misconduct and actual prejudice to the accused).

*United States v. Reumayer*, 530 F. Supp. 2d 1200, 1208-09 (D.N.M. 2007).

In the present case, both factors have already been established.  First, the government has caused the delay to obtain a tactical advantage or to harass the defendant.  As this Court found in its August 15, 2013 Order: "In March 2008, prosecutors from the U.S. Attorney's Office began laying the groundwork for the indictment they intended to seek against Defendant."  (Dkt 360 at 12).  And, "by February 2009" the "posture of the Government toward Defendant had shifted from investigatory to prosecutorial." *Id*. at 8.  Knowing Defendant was represented by legal counsel, but pretending otherwise, the record shows that "prosecutors [already] intended to indict Defendant" but to unfairly try and strengthen their position, "they instructed the investigators to contact him and arrange the interviews, and this desire or focus rationally explains the Government's efforts to 'justify saying that he's not represented so we can interview him.'" *Id*. at 25.   In other words, the prosecutors "wanted to be coy," and in the process, violated Defendant's rights, professional ethics rules, federal law, and the due process protections guaranteed by the Fifth Amendment to the Constitution.

In doing so, the government purposefully delayed its efforts to indict, based in significant part on efforts to ask Defendant if "would be willing to waive privilege and whether he intended to rely on an 'advice of counsel' defense at trial, both prohibited inquires." *Id*. at 29, n.1.   These questions were scripted by the lead prosecutor in this case, and interviewing agents (acting as the alter egos of prosecutors) were instructed that "they should pose" these questions to him and find out "whether he intended to rely on an "advice of counsel" defense at trial (though he was as yet unindicted)." *Id*. at 31.   Finally, the Court observed that it "remains perplexed as to why the

Government believes it has the right to inquire into how a party intends to defend before the government has even … gone to the grand jury for an indictment." *Id*. at 32 n.4.  The Court's prior conclusions establish how the government has caused delay to obtain a tactical advantage, specifically having "designed" a strategy to "induce Defendant, who was the target of their investigation and whom prosecutors intended to indict, to waive attorney-client privilege and to reveal potential trial strategy." *Id* at 10.

The court has also already concluded that the delay has, in fact, unfairly prejudiced defendant.  The unlawful and illicit ex-parte interviews provided the government with statements that "were integral to the indictment return against [Defendant] on May 26, 2009." *Id*.  Further, the government has used the information it gained by this strategic, unethical and unlawful conduct (and the benefits of delay related thereto), *inter alia*, to approach witnesses with Defendant's confidential attorney-client privileged materials (Mr. Isom and Mr. Long) and to question Defendant's former attorneys about his business and legal strategies, including enlisting one of the attorneys involved in formulating a critical portion of Defendant's potential trial defense, and enlisting that same attorney (Brad Jacobson) to cooperate in the government's prosecution, to severely and unfairly prejudice defendant.

This conduct continued after the May 26, 2009 indictment, and enabled the government to toll the relevant statute of limitations by bringing a three count indictment in May, and then bringing two subsequent indictments that relied upon the knowledge of Defendant's trial strategy, and other information unlawfully and illicitly obtained through the delay.  In addition to the actual, demonstrable prejudice that has resulted (the indictment and the use the government has unfairly made of this material), the particular nature of the tactical advantage gained by the government (unlike other types of harm) has been repeatedly recognized (though in a Sixth

83

Amendment context) as so unfair that prejudice must be presumed.  *See e.g., Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995) ("[B]ecause of its purposeful intrusion into the attorney-client relationship … a prejudicial effect on the reliability of the trial process must be presumed.  In adopting this rule, we conclude that no other standard can adequately deter this sort of misconduct.  We also note that prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.").  If the Court requires additional proof of prejudice, even after having already explicitly found prejudice by the delay, Defendant hereby requests and moves for an evidentiary hearing as described in *United States v. Danielson*, 325 F.3d 1054, 1072 (9th Cir. 2003) ("[T]he government must present evidence, and must show by a preponderance of that evidence, that 'all of the evidence it proposes to use,' and all of its trial strategy, were 'derived from legitimate independent sources.'  In the absence of such an evidentiary showing by the government, the defendant has suffered prejudice.").

CONCLUSION

In support of this motion, Defendant requests oral argument and an evidentiary hearing to establish:

- The circumstances that led to the government's filing on February 14, 2014, its frivolous and unsupported motion to reconsider (Dkt 395);

- The circumstances that led to the government's filing on April 3, 2014, its frivolous and unsupported motion to exclude time, falsely based on the March 28, 2014 hearing;

- The circumstances that led to the Certification Pursuant To 18 U.S.C. § 3731 that United States Attorney David Barlow filed on September 13, 2013;

- The delays in providing and certifying discovery to Defendant; and

- The prejudice Defendant has suffered as a result of the government's intentional and unnecessary delays.

For the reasons set forth above, Defendant asks the Court to:

- dismiss all charges pending against the Defendant **with prejudice** (5th Amend., 6th Amend., 18 U.S.C. § 3162(a)(2) & F.R.Cr.P. 48); and

- sanction the prosecutors in this case for their actions seeking delay to prejudice Defendant, including AUSA Walz, AUSA Hagen, AUSA Bearnson, AUSA Petersen, and United States Attorney Barlow, by fining each of them $250, denying each the right to practice before the United States District Court for the District of Utah for 90 days, and reporting them to the appropriate disciplinary committee as provided in 18 U.S.C. § 3162(b)(4).

DATED:  April 22, 2014

*/s/ Marcus R. Mumford*
Attorney for Defendant