IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| UNITED STATES, | **MEMORANDUM DECISION AND ORDER DISMISSING WITH PREJUDICE FOR VIOLATION OF THE SPEEDY TRIAL ACT** |
|---|---|
| Plaintiff, | |
| v. | |
| CLAUD R. KOERBER | Case No. 2:09-cr-00302 |
| Defendant. | Judge Clark Waddoups |

## INTRODUCTION

The court heard oral argument on Defendant's Motion to Dismiss for Impermissible Delay and for Sanctions (Dkt. No. 426) on June 19, 2014. At the hearing, the Government agreed that a "technical" violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-3174 (the "STA"), had occurred. At oral argument as in its briefing, however, the Government again urged the court to "cure" this violation by entering an Order that retroactively provides end-of-justice findings excluding time under the STA relating to a continuance this court granted on January 27, 2011 resulting in an elapse of 50 days of unexcluded time under the STA clock. (*See* Pl.'s Resp. Based on Time Elapsed under STA 2, 13, 15-16 [Dkt. No. 431].) If the four days that elapsed between June 3 and June 6, 2011 are not retroactively excluded in this manner, "the government must concede that the Speedy Trial Act has been violated [as of June 6, 2011], at least with respect to the counts in the original indictment." (*Id.*) Moreover, if the 46 days that then elapsed between June 17 and August 1, 2011 are not retroactively excluded, "the government must concede that

the Speedy Trial Act has been violated as to the counts in both the original and the superseding indictments." (*Id.* at 17.)

For the reasons discussed below, the court declines the Government's invitation to enter ends-of-justice findings retroactive to January 27, 2011. Moreover, the court finds that even if it had accepted this invitation, Defendant has more accurately counted the non-excluded days on the STA clock, and the STA would have been violated both as to the original indictment and the superseding indictments even if a corrective ends-of-justice Order were substituted for the January 27, 2011 Order. Finally, the court finds that in the peculiar facts and circumstances of this case, dismissal based on this STA violation must be with prejudice, as discussed below.

## DISCUSSION

### A. Retroactive Ends-of-Justice Findings

As noted above, the Government invites the court to enter a new Order providing ends-of-justice findings that are missing from the court's January 27, 2011 Order, thus retroactively "curing" that Order for STA purposes and properly excluding time on the STA clock through August 1, 2011. The Government, however, neither presents nor engages substantial precedent explicitly precluding this approach. The Tenth Circuit, for example, has held that the STA "does not allow a district court to retroactively grant an ends-of-justice continuance. Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive; an order granting a continuance on that ground must be made at the outset of the excludable period." *United States v. Williams*, 511 F.3d 1044, 1055 (10th Cir. 2007) (internal quotation marks and citations omitted). "This conclusion logically follows from our oft-repeated observation that although the ends-of-justice findings mandated by the Act may be entered on the record after the fact, they may not be made after the fact." *Id.* at 1056 (internal quotation marks and citation

omitted). In addressing an attempt to retroactively adjust an ends-of-justice finding, the Sixth Circuit noted that "[a] district judge cannot wipe out violations of the Speedy Trial Act after they have occurred by making the findings that would have justified granting an excludable delay continuance before the delay occurred." *United States v. Moran*, 998 F.2d 1368, 1372 (6th Cir. 1993) (quoting *United States v. Crane*, 776 F.2d 600, 606 (6th Cir. 1985)). The Ninth Circuit has held similarly that "[t]he Act's carefully-crafted exclusions would be rendered wholly irrelevant if a district court could invoke the 'ends-of-justice' provision retroactively, to validate any delay that occurred prior to trial." *United States v. Clymer*, 25 F. 3d 824, 829 (9th Cir. 1994). If the court were to enter an Order replacing or modifying the January 27, 2011 Order at this date in 2014, it would certainly be the kind of retroactive adjustment that courts have specifically rejected. The court declines the invitation to do so.

As a result, the Government concedes that "the Speedy Trial Act has been violated as to the counts in both the original and the superseding indictments." (Pl.'s Resp. Based on Time Elapsed under STA 17 [Dkt. No. 431].)

**B.     Dismissal With Prejudice**

Because the STA has been violated, the case must be dismissed. *See* 18 U.S.C. § 3162(a)(2); *United States v. Toombs*, 574 F.3d 1262, 1271 (10th Cir. 2009) (reversing District Court denial of the motion to dismiss because the District Court had not included adequate ends-of-justice findings for purposes of excluding time under the STA). "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. § 3162(a)(2).

3

*1. Seriousness of the Offense*

Both parties agree, and the court accepts, that the allegations against Defendant in this case are "serious." But the seriousness of the Government's allegations against Defendant does not obviate his presumption of innocence as an American citizen accused of crimes in federal court. And, though the allegations if proven would indeed be a serious offense, the court observed in July 2012 that in light of the significant problems relating to the indefiniteness of the information contained in the indictments, prosecutors seem to be arguing, by virtue of their pursuit of these allegations, that allegations that would cause a complaint to "fail on its face in a civil action should be sufficient in a criminal case to put a person in jeopardy of his liberty and money." (Tr. Hrg. 7/2/2012, at 33:22-25 [Dkt. No. 270].) The court stated, at that time, that it was "having trouble seeing how [Defendant is] supposed to prepare [his] defense based on the indefiniteness of this indictment," a concern that has not been alleviated for the court in the intervening two years since the July 2, 2012 hearing. (*Id.* at 35:11-13.) In fact, this problem with the allegations upon which the indictments have been based has become even more pronounced following the suppression of the February 2009 interviews and *all fruits in the investigation derived therefrom* in August 2013. (Order dated Aug. 15, 2013, at 59 [Dkt. No. 360].) It seems clear that the information obtained in those interviews became "integral" to the original indictment, both directly and because it guided investigators and prosecutors in their further investigation. (*See id.* at 10.) The court must also regrettably agree with Defendant's argument that the Government's actual problematic conduct in prosecuting this case (as observed by the court in several previous Orders) should be a relevant consideration in considering both the seriousness of its allegations against Defendant and the actual and presumed prejudice caused to Defendant, as discussed below.

## 2. *Facts and Circumstances of the Case Leading to Dismissal*

The facts and circumstances leading to the STA violation—primarily, the Government's pattern of neglect and dilatory conduct in managing the STA clock, but also several instances of questionable ethical conduct in prosecuting this case—weigh in favor of dismissal with prejudice.

Although "[t]he Speedy Trial Act expressly places the burden on the defendant . . . to establish a violation of the Act" and move, on that basis, for dismissal prior to trial, *United States v. Seals*, 450 Fed. Appx. 769, 771 (10th Cir. 2011), "it is ultimately the obligation of the Government to ensure compliance with the Speedy Trial Act." *United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993). And "[t]he courts share with the government the responsibility to protect the speedy trial rights of both the defendant and society." *Id.*; *see also United States v. Williams*, 197 F.3d 1091, 1095 (11th Cir. 1999) (holding that "the burden should not be on the defendant to take affirmative steps to keep the speedy-trial clock running. The duty to comply with the Speedy Trial Act lies with the courts, not with defense counsel") (internal citation omitted). Meticulously examining the record of purported ends-of-justice continuances, Defendant establishes beyond question that the Government and the court have together failed "to protect the speedy trial rights of both the defendant and society" in this case by entering at least eight ends-of-justice Orders/purported continuances that fall far short of complying with the relevant statutory and precedential requirements for valid ends-of-justice findings. *Saltzman*, 984 U.S. at 1091. (*See* Def.'s Mot. Dismiss 31-64 [Dkt. No. 426].) The court need not rehearse each of them here aside from finding Defendant's position to be correct that Magistrate Judge Alba's ends-of-justice Orders or continuances (in some cases an actual Order was never entered, e.g.

June 19, 2009 and November 15, 2011) were invalid for the reasons stated in Defendant's Motion. (*Id.*)

The deficiencies in these Orders resulted directly in the running of the STA clock, but these are also symptomatic of the Government's pattern of neglect and dilatory conduct in managing the STA clock in this case. In examining the facts and circumstances leading to the dismissal, "the court should focus 'on the culpability of the delay-producing conduct.'" *Saltzman*, 984 F.2d at 1093 (quoting *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988) ("Where, as here, the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused")). Defendant is therefore correct to note that this inquiry probes specifically "who was responsible for the delay leading to a violation of the Act," and not any chance delay in the case. (*See* Def.'s Reply 19-20 [Dkt. No. 456].) It is true that, as the Government argues, a number of significant "delays" were caused by Defendant's briefing of issues, as was his right. (*See* Pl.'s Resp. to Mot. Dismiss 7-24 [Dkt. No. 437].) But such delays are already carved out of the timing of the STA clock by specific exclusions in the STA itself, including providing for briefing, evidentiary hearings, oral argument, and court consideration of motions to suppress and other such substantive pretrial motions.

Because the Government "bears the burden of ensuring the Defendant's speedy trial rights are not violated," its conduct is necessarily central to this inquiry. As the *Hastings* Court observed, "the appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches. Accordingly, delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice." 847 F.2d at 925. Moreover, "[i]f

delay is occasioned by a pattern of governmental inattention or because the prosecutor, like a recalcitrant schoolboy, fails to learn oft-repeated lessons, the situation becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue." *Id.* This is consistent with the Tenth Circuit's explanation that "[w]here the delay is the result of intentional dilatory conduct, *or a pattern of neglect on the part of the Government*, dismissal with prejudice is the appropriate remedy." *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009) (citing *Saltzman*, 984 U.S. at 1093-94) (emphasis added).

*Hastings* is instructive here: "[T]he Speedy Trial Act, as we interpret it, demands a causal nexus between [prosecutorial] misconduct and trial delay in order to justify reliance on the former in barring reprosecution under section 3162(a)(2)." 847 F.2d at 928. In *Hastings*, the prosecution flagrantly violated local discovery rules in its dealings with the defendant after indictment. *Id.* at 922 ("After digging through several layers of lame prosecutorial excuses, it became all too clear that the government's reluctance freely to furnish automatic discovery materials was chronic. . . . This had the effect of standing the local rule on its head."). The District Court for the District of Massachusetts reacted with "well-articulated indignation at the prosecution's cavalier approach to criminal discovery," *id.* at 921, and concluded that "the Act and the administration of justice had been undercut." *Id.* at 923. "The district judge rightfully excoriated the government's conduct and stated unequivocally that he would have dismissed the original indictment with prejudice had he known the entire story. Noting the systemic threat which the USAO's repeated use of vulpine discovery tactics posed, the court rectified its earlier 'mistake' by barring reprosecution." *Id.* (internal citation omitted).

On appeal, however, the First Circuit reversed, finding that under the circumstances of that particular case, the dismissal (which the Government had not contended was in error) should

7

have been without prejudice. *Id.* at 921. Despite the prosecution's deplorable violation of the local discovery rule, "the actual delay was wholly unrelated to the discovery violation." *Id.* at 926. The Court held that "the misconduct of which the USAO appears guilty—flouting the automatic discovery principle and in that way handing defendants the short end of the stick—was entirely separate and apart from the actual delay. It did not cause the speedy trial overrun in this case." *Id.* at 927. The Court explained that "[i]f an impermissible delay resulted from such shenanigans, dismissal with prejudice would probably conduce to the due administration of the statute. By entering such an order, the court would sound a tocsin: the judicial system will not tolerate willful, dilatory conduct which results in crossing the Act's well-marked frontiers into forbidden territory. Without question, a delay caused in such an intolerable way offends both the public and private interests in speedy trials." *Id.* at 928. But this "scenario," the Court found, "is not Hastings's case and does not reflect his predicament." *Id.* The five-day overrun, which he could not show had actually prejudiced him, *id.* at 929, lacked "any causative link between the government's truly blameworthy behavior and the speedy trial infraction." *Id.* at 927.

This is not the case here, however. Defendant has amply shown the direct "causative link between the government's truly blameworthy behavior and the speedy trial infraction." The logic behind the "causal connection requirement" in the STA context mirrors the more generally applicable principle that "improper acts," *id.*, must have precipitated actual harm, or prejudice, to a defendant in dismissing an indictment with prejudice. This is because dismissal with prejudice is an admittedly harsh measure not to be taken lightly in the balancing of "the defendant's interest in a speedy trial" (in which the public also has a stake for the sake of "resolving the guilt or innocence of those accused of crime rapidly") and the Government's latitude in mustering its case. *Id.* at 923. As the Eleventh Circuit has held, dismissal of an indictment for government

8

misconduct can be appropriate where there is a "demonstration of actual prejudice, or a substantial threat thereof, *or a pattern of widespread and continuous misconduct.*" *United States v. Ballivian*, 819 F.2d 266, 267 (11th Cir. 1987) (emphasis added). The facts and circumstances of this case, contrary to *Hastings*, reveal such "actual prejudice, or a substantial threat thereof, or a pattern of widespread and continuous misconduct." Taken together, the delay in this case "is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government," and therefore "dismissal with prejudice is the appropriate remedy." *Williams*, 576 F.3d at 1158 (10th Cir. 2009) (citing *Saltzman*, 984 U.S. at 1093-94).

Even on the surface, the Government's failure to competently manage the STA clock in "ensuring the Defendant's speedy trial rights are not violated," including by neglecting to prepare and submit to the court, at Judge Alba's request, at least two ends-of-justice orders (relating to the June 19, 2009 and November 15, 2011 hearings) resulting in the elapse of 70 unexcluded days, (*See* "Period U & V," Def.'s Mot. Dismiss 19-20 [Dkt. No. 426]; Def.'s Reply 20 & 22 [Dkt. No. 456]),[1] suggests a "pattern of neglect on the part of the Government." *Saltzman*, 984 F.2d at 1093. Further evidence of this pattern of neglect in the Government's management of the STA clock includes its preparation of a faulty ends-of-justice order,[2] at Judge

---

[1] 46 unexcluded days for the June 19, 2009 hearing, for which the Government never prepared an Order at Judge Alba's request *plus* 21 unexcluded days between August 4, 2009 and August 31, 2009 as a result of the missing June 19, 2009 ends-of-justice Order *plus* 3 unexcluded days attributable to the missing November 15, 2011 ends-of-justice Order that Judge Alba asked the Government to prepare, which was never done, for a total, for these three hearings alone, of 70 unexcluded days against the STA clock. This is merely a fraction of the total unexcluded days that have run against the STA clock as a result of the Government's management of the clock and its approach in this case.

[2] At the October 23, 2009 hearing, Magistrate Judge Alba said he wanted time excluded under the STA and asked the Government to prepare the Order. (Tr. Hrg. 10/23/2009, at 10:14-20 [Dkt. No. 405].) However, no Order was entered until December 14, 2009, after the Superseding Indictment was filed. (Dkt. No. 29.) The December 14, 2009 purported ends-of-justice Order was faulty based on the face of § 3161(h)(7)(B) of the STA and under *Toombs*, 574 F.3d at 1271-72. Defendant is correct that although "Magistrate Alba expressed concern that Defendant [and his new counsel] have time to review the discovery, there was no *Toombs* inquiry into the 'nature' and 'relevance' of the discovery to the underlying charges. Further, there was no indication in the record that the statutory factors were

Alba's request, that was not prepared and entered until two months after the October 23, 2009 hearing, causing the elapse of at least 36 unexcluded days (*See* Def.'s Mot. Dismiss 42-48 [Dkt. No. 426]); its failure to properly exclude time after filing its first superseding indictment on

---

considered." (Def.'s Mot. Dismiss 42-48 [Dkt. No. 426].) Neither did the Order find that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. As Defendant notes, "There is nothing in the record to show that the court or the government had any concern for the 'interests of the public' or the Defendant in a speedy trial. There was no balancing. . . . Defendant was never directly asked if he wanted more time, or how much time he needed. In fact, the delay at issue was all the government's." (*Id.* at 44.) The written Order provided some findings missing from the record of the hearing but was still inadequate under *Toombs* because it stated conclusorily that the case was complex "without explanation or reference to the statutory factors for complexity" (*id.* at 33 & n.13, 46); *see also* § 3161(h)(7)(B)(ii), (iv); DUCrimR 12-1(i)(5)(B) ("If an extension is requested due to the complexity of the case, including voluminous discovery, the motion must include specific facts demonstrating such complexity."); *Toombs*, 574 F.3d at 1272 ("A record consisting of only short, conclusory statements lacking in detail is insufficient.").
     In fact, the December 14, 2009 Order was deficient precisely as described in *Toombs*: "it is insufficient to merely state that counsel is new and thus needs more time to adequately prepare for trial or that counsel or witnesses will be out of town in the weeks preceding trial and therefore more time is needed to prepare for trial. . . . Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." 574 F.3d at 1271-72; *see also United States v. Zedner*, 547 U.S. 489, 507 (observing that the STA "is not satisfied by the District Court's passing reference to the case's complexity"). The Order simply stated "As indicated by the Indictment, the case is complex." (Order of Dec. 14, 2009, at 2 [Dkt. No. 29].) The Order also did not discuss "the nature of the recently disclosed discovery" or "the relevance or importance of the discovery," as required by *Toombs*. 574 F.3d at 1272. The court agrees that

> [t]o put the point simply, § 3161(h)(7) requires a valid 'reason' for the volume of discovery at issue to justify the 'ends-of-justice' being invoked over the public's and defendant's interests in a speedy trial, and that the court must inquire into the 'nature and relative importance' of the discovery. Without this, the government might bypass speedy trial rights by dumping hundreds of thousands of irrelevant pages of so-called discovery in a defendant's lap and prolong its investigation, virtually indefinitely. This is precisely what happened here. The 20 boxes of evidence proved largely irrelevant, gave the government a headline referring to a "mountain" of evidence (Dkt 222), and resulted in at least a year of delays before it certified that its document production was complete.

(Def.'s Mot. Dismiss 46-47 [Dkt. No. 426].) The court notes that, with regard to the 20 boxes, Defendant's previous counsel had already determined that the 20 boxes contained largely irrelevant material. But the discovery issue was much larger than just that material and fits into the concern raised by Defendant here. In any event, the meager findings in the December 14, 2009 Order cannot validate the inadequate record of the October 23, 2009 hearing because it seems clear, based on the context and the nearly two-month delay, that "[t]hose findings were not merely being *entered* on the record, but were being *made* in the first instance after a hearing. As such, they cannot be given retroactive effect." *United States v. Loughrin*, 710 F.3d 1111, 1122 (10th Cir. 2013) (emphasis in original). Finally, the December 14, 2009 Order did not actually grant a continuance but rather simply set a hearing date. *Cf. United States v. Doran*, 882 F.2d 1511, 1516-17 (10th Cir. 1989) (discussing findings required for an ends-of-justice continuance).

November 10, 2009, resulting in the elapse of 39 additional unexcluded days on the STA clock "even if the clock restarted at that point" (*See* Def.'s Reply 20 [Dkt. No. 456]),[3] allowing a total of 42 days to elapse, calculated conservatively,[4] between the Order of June 2, 2011 granting Defendants' motion to compel the return of privileged information and the status conference held on August 2, 2011 (*See* "Periods G – K," Def.'s Mot. Dismiss 10-11 [Dkt. No. 426]); and allowing 12 unexcluded days to elapse on the STA clock after the court's August 15, 2013 Order granting Defendant's Motion to Suppress the February 2009 interviews and all fruits derived therefrom (*See* Def.'s Reply 21 [Dkt. No. 456]). These facts and circumstances alone (among further such circumstances[5] carefully outlined in Defendant's briefs) surrounding the Government's management of the STA clock in this case are sufficient, the court finds, to constitute "a pattern of neglect on the part of the Government" warranting dismissal with prejudice. *Saltzman*, 984 U.S. at 1093-94.

But in addition to this administratively dilatory conduct and pattern of neglect, the court has already found significant problems with the substantive prosecution of this case essentially amounting to "a pattern of widespread and continuous misconduct." *Ballivian*, 819 F.2d at 267. This "pattern" unfortunately began even before the original indictment, as this court has previously noted in finding that "under the unique factual circumstances present in this case, the posture of the Government toward Defendant had shifted from investigatory to prosecutorial by

---

[3] The court agrees that "Defendant cannot be culpable for delay related to the government's strategic decision to obtain a superseding indictment." (*See* Def.'s Reply 23 [Dkt. No. 456].)

[4] For example, although "[t]here is some question whether a motion to admit a government lawyer *pro hac vice* should toll time automatically under § 3161(h)(1)(D)," in the case of such a Government motion during the period between June 24, 2011 and July 7, 2011, "Defendant assumes it would, until the Court ruled on it, at which point the STA clock would have started again." (Def.'s Mot. Dismiss 10-11 [Dkt. No. 426].)

[5] The court is, for example, concerned with the Government's practice in at least two instances as its appeal—which was ultimately revealed to have been made without the authorization of the Solicitor General—was withdrawn of filing one sentence or one paragraph motions requesting reconsideration or other relief completely absent the necessary artifice for requesting such relief, apparently for the mere purpose of putting a motion on the record that could be a touchstone for excluding time under the STA.

11

February 2009 (even though Defendant had not yet been technically indicted by that time)."

(Order dated Aug. 15, 2013, at 8 [Dkt. No. 360].) As Defendant summarizes,

> Despite promises, the government did not certify that it had provided all required discovery to Defendant until August 31, 2010 (more than a year after the first indictment). (8/31/2010 Hrg. 3:15-18.) The government also refused to admit that it had relied upon Defendant's attorney-client privileged information in obtaining the initial May 26, 2009 indictment. And it continued to use Defendant's privileged information even after it promised to sequester it, specifically incorporating that information into the superseding indictment filed November 10, 2009. Moreover, prosecutors and investigators refused to admit they knew Defendant was represented in February 2009, when they schemed to interview him *ex parte*.

(Def.'s Mot. Dismiss 3 [Dkt. No. 426].) The court agrees that the discovery practice of the Government in this case has been puzzling and raises a strong inference of tactical delay on the part of the Government in its prosecution of the case. In fact, the court notes that the Government has followed a similar practice after its Order of August 15, 2013 granting Defendant's Motion to Suppress the two February 2009 *ex-parte* interviews and all fruits derived therefrom: Defendant has tried in vain since that time to obtain information from the Government about what the basis of its prosecution will be in the absence of the February 2009 interviews and all fruits derived therefrom. And only *after* the hearing on this current Motion to Dismiss based on violations of the STA (Dkt. No. 426)—violations which the Government reluctantly concedes—has the Government produced an additional 1,400 pages of supplemental discovery to Defendant. (*See* Dkt. No. 469.) "Most of the evidence was between one and four years old, and clearly has been in the government's possession for a long time. There was no explanation for the late production, no description of the content, no table of contents, and no index." (Def.'s Suppl. Mem. Supp. 2 [Dkt. No. 470].) The court finds this curious considering the Government's awareness that this case must be dismissed under the STA, the only question being whether with or without prejudice.

The court also acknowledges that it has found that the Government had inappropriately based the superseding indictment in substantial part on attorney-client privileged information. (*See* Order dated June 2, 2011, at 9, 12 [Dkt. No. 165].)[6] The court found this troubling at the time but viewing it now in the context of this case's five-year prosecution history, it fits into a larger pattern justifying dismissal with prejudice.

Finally, and most egregiously, the court has already written at length about the Government's tactic of illegally planning and conducting impermissible *ex-parte* interviews with Defendant in February 2009 when he was represented by counsel, thus violating his due process rights, interfering with his attorney-client privilege, and inquiring into or attempting to interfere with his advice of counsel defense, though he was as yet unindicted, resulting in the suppression of those interviews and all fruits derived therefrom. (*See generally* Order dated Aug. 15, 2013 [Dkt. No. 360].) As mentioned above, the analysis of dismissal with prejudice in the STA context mirrors the more generally applicable principles governing the relatively rare remedy of dismissal with prejudice. In this broader context, the Tenth Circuit has observed that the right to counsel is essential "to secure the fundamental right to a fair trial guaranteed by the Due Process Clause of the Fourteenth Amendment." *Shillinger v. Haworth*, 70 F.3d 1132, 1141 (10th Cir. 1995). Thus, "when the state becomes privy to confidential communications because of its

---

[6] The court explained in the June 2, 2011 Order that

Count I of the Superseding Indictment is based on allegations relating to the July 20, 2005 document and the contents of the letter are also referenced in other places in the Superseding Indictment. . . . The prosecution team in this case first alerted Mr. Koerber to the possibility that Mr. Koerber had accidentally produced privileged documents on October 30, 2009. On about that date, Mr. Koerber asked the prosecution to set aside about 100 documents as privileged. Twenty days later, on November 20, 2009, Mr. Koerber again contacted the government about privilege, giving written notice and asking that another 100 document be set aside as privileged. On November 24, 2009, the government notified Mr. Koerber that it would challenge his claim of privilege. On March 25, 2010, Mr. Koerber brought the motion for protective order at issue here.

purposeful intrusion into the attorney-client relationship and lacks a legitimate justification for doing so, a prejudicial effect on the reliability of the trial process must be presumed." *Id.* at 1142. Such a presumption is justified because "no other standard can adequately deter this sort of misconduct," and "'prejudice in these circumstances is so likely that case-by-case inquiry into prejudice is not worth the cost.'" *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 692 (1984)). The substantive prosecution of this case, in light of this broader prejudice context outlined in *Shillinger*, essentially amounts to "a pattern of widespread and continuous misconduct" for the STA clock analysis in the more than five years[7] since the original indictment and also justifies dismissal with prejudice following the STA clock violation. *Ballivian*, 819 F.2d at 267.

### 3. *Impact of Reprosecution*

The court fails to see how it can allow a reprosecution on this record. It is, unfortunately, true that, as Defendant argues, "[t]he Court granted the motion to suppress '[to] prevent the erosion of citizens' faith in the even-handed administration of the laws.'" (Def.'s Reply 43 [Dkt. No. 456] (quoting Order of Aug. 15, 2013, at 59 [Dkt. No. 360]).) This factor merges into the considerations relating to the "substantive prosecution" in the "facts and circumstances" section above and the "prejudice to Defendant" factor discussed below. The Government has provided

---

[7] It goes without saying that this protracted nature of the case—a federal prosecution extending over five years and cycling through a dozen Assistant United States Attorneys, following a state prosecution with substantial overlap, relating to allegations now a decade in the past—ventures into *Jarndyce and Jarndyce* territory, *see* Charles Dickens, BLEAK HOUSE 19-23 (Signet Classic 2003) (1853), and properly raises the issue of whether the Government-caused delay in this case is "presumptively prejudicial" in its own right. *See United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010). However, the court need not reach that argument to dismiss this case with prejudice based on the Government's dilatory conduct and pattern of neglect in managing the STA clock, not to mention the "prejudice [that] is presumed," *Shillinger*, 70 F.3d at 1141, because of its intentional intrusions on Defendant's attorney-client privilege and advice of counsel defense at trial, though he was as yet unindicted when these violations occurred.

no persuasive authority that would sway the court toward dismissal without prejudice based on the prospect of a reprosecution given the approach that has been taken in the current federal case.

### 4. *Prejudice to Defendant*

The unique facts and circumstances of this case, as discussed above, justify dismissal based on the dilatory conduct and pattern of neglect exhibited by the Government in managing the STA clock, without a separate prejudice analysis.[8] However, "prejudice is presumed," *Shillinger*, 70 F.3d at 1141, as well under these facts and circumstances because they undermine Defendant's possibility of receiving a fair trial. As the court has already observed, "Defendant's statements during these two [February 2009] interviews were integral to the indictment returned against him on May 26, 2009." (Order dated Aug. 15, 2013, at 10 [Dkt. No. 360].) The information obtained during the interviews, as well as the information contained in the privileged

---

[8] Nevertheless, for the avoidance of doubt, the court notes its agreement with Defendant's summary of the prejudice caused by the facts and circumstances of this case:

> The prejudice he has suffered has been legal, personal, and real. Legally, the lapse has caused the government to lose critical information (which it has admitted, and which will become an issue in future motion practice should that prove necessary). (See Dkt 219 & 268.) Witness memories are already proving severely impaired (Agent Marker for example has already testified twice that he remembers little of several critical communications he had back in 2007 and 2008). Personally, Defendant has been under pre-trial release conditions for five years. This includes being deprived of his Second Amendment rights, the abridgment of his First Amendment rights to associate freely, and his general ability to live, work and raise his family. He has faced financial ruin, family issues, and health issues as a result of being subject to the abuse of process and misconduct by stewards who hold the overwhelming resources of the federal government. These are not small things and with the passage of time, the prejudice grows. The elapsed time under the Act is not a technicality, but even without the invalid ends of justice continuances the time passed is significant.
> The violation of the Speedy Trial Act, in this instance, is another violation of law by federal prosecutors who, through the pattern and conduct of this case, have been strikingly unwilling to confirm [sic] their own conduct to the Constitution, the applicable ethical standards, rules and statutes. To allow the government a fourth chance to re-indict would be unjust, unjustified, and a tacit form of tolerating this kind of prosecutorial misconduct.

(Def.'s Mot. Dismiss 72 [Dkt. No. 426].)

July 20, 2005 draft letter that was the subject of the court's June 2, 2011 Order (Dkt. No. 165) provided prosecutors with a roadmap of whom to interview and what documents to obtain and focus on. The prosecution's approach, relying on a privileged document and violating rules of professional conduct and due process, has fundamentally compromised this case and is certainly prejudicial to Defendant. As the *Shillinger* Court noted,

> Competent prosecution is faced by perhaps one or, at the most, two acquittals with at least every hundred criminal charges where nine out of ten are resolved by plea and the remaining trials favor conviction. Within these few cases, fairness, honesty and morality are not an undue burden on accomplished justice.

*Shillinger*, 70 F.3d at 1142 (quoting *Haworth v. State*, 840 P.2d 912, 919 (Ubrigkit, J., dissenting)). This reflects the concerns animating this court's August 15, 2013 Order granting Defendant's Motion to Suppress the two February 2009 *ex-parte* interviews and all fruits derived therefrom. Defendant is correct that the court "cannot ignore the sordid history of this case, where Defendant has already established how the government intentionally intruded on his constitutional rights and attorney-client relationship to secure an indictment in the first instance." (Def.'s Mot. Dismiss 67 [Dkt. No. 426].) The court's current decision dismissing the case with prejudice is consistent with the findings and conclusions in its earlier Orders relating to the prosecution's approach in this case, and follows from the Tenth Circuit's holdings, including primarily *Williams* and *Saltzman*, on dismissal resulting from STA violations, as well as the broader logic of dismissal with prejudice exemplified in *Shillinger*.

**CONCLUSION**

For the reasons discussed above, the court GRANTS Defendant's Motion to Dismiss for Impermissible Delay (Dkt. No. 426) with prejudice. All other pending motions on the docket are thereby mooted and this case is closed.

SO ORDERED this 14th day of August, 2014.

BY THE COURT:

_____
Clark Waddoups
United States District Judge