IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLAUD R. KOERBER,<br><br>Defendant. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE**<br><br>Case No. 2:09-CR-00302-JNP<br><br>District Judge Jill N. Parrish |

Before the court is Mr. Koerber's Motion to Dismiss with Prejudice ("the Motion"). (Docket 487). Based on a review of the motion, the United States' opposition thereto, and the Tenth Circuit's opinion, the court DENIES the Motion. For the reasons stated below, the court orders that the case be dismissed without prejudice.

## INTRODUCTION

The Motion before the court is the result of a remand from the Tenth Circuit. The prior district judge dismissed this case with prejudice due to violations of the Speedy Trial Act. The United States appealed and the Tenth Circuit held that the prior "district court abused its discretion in two respects: (1) by including improper factors in its consideration of the seriousness-of-the-offense factor, and (2) by failing to fully consider [Mr.] Koerber's own actions that may have contributed to the speedy-trial delay." *United States v. Koerber*, 813 F.3d 1262, 1266 (10th Cir. 2016). The Tenth Circuit reversed and remanded for consideration in accordance with its opinion. Because the court concludes that Mr. Koerber's case should be dismissed without prejudice due to violations of the Speedy Trial Act, the court also considers Mr. Koerber's argument that his Sixth Amendment right to a speedy trial was violated.

# BACKGROUND[1]

## I.      May–December 2009: The First Indictment and Discovery

By late 2007, the government had begun investigating Mr. Koerber for operating a Ponzi scheme. The government alleged that, through his companies, Mr. Koerber had made presentations to investors inducing them to pour money into his companies by promising monthly returns between one and five percent. As alleged, Mr. Koerber did not invest the money at all. Instead, Mr. Koerber purportedly used funds obtained from new investors to satisfy his obligations to earlier investors and spent most of the investment funds for his own purposes. Among other expenditures, Mr. Koerber spent $850,000 buying restaurants, over $1,000,000 buying cars, about $5,000,000 making a movie, and about $425,000 minting coins. The grand jury charged that investors ultimately lost more than $50,000,000.

In February 2009, three months before seeking an indictment, federal prosecutors authorized IRS Agent Ronald Marker and FBI Agent Cameron Saxey to interview Mr. Koerber twice. By this point, according to the district court, the government knew that Mr. Koerber had retained counsel but still scheduled Mr. Koerber's interviews without even notifying his counsel. The two federal agents acted at the prosecutors' behest as follows:

> In the second interview, the agents posed half a dozen scripted questions provided by the prosecutors, including questions designed to induce [Mr. Koerber], who was the target of their investigation and whom prosecutors intended to indict, to waive attorney-client privilege and to reveal potential trial strategy such as whether he intended to rely on an "advice of counsel" defense at trial, though he was as yet unindicted.

---

[1] Much of this background is taken directly from Background section contained in the Tenth Circuit's opinion. Where necessary, the court has included additional facts that relate to the matters that the Tenth Circuit instructed the court to consider on remand.

On May 26, 2009, a federal grand jury indicted Mr. Koerber on three counts—mail fraud, wire fraud, and tax evasion. At Mr. Koerber's June 19, 2009 arraignment, the magistrate judge did not set a trial date. Instead it set the case for a subsequent status conference only briefly addressing the Speedy Trial Act calculations (without specifically addressing any of its provisions) and directing that "[a]ll time is to be excluded pursuant to the Speedy Trial Act, [Assistant United States Attorney (AUSA) Stewart] Walz to prepare an order." AUSA Walz never did.

Unsurprisingly, in an alleged $50,000,000 fraud case, discovery was voluminous. On June 19, 2009 the government had turned over to Mr. Koerber six discs containing documents relating to the case and audio recordings of interviews of Mr. Koerber. Among these interviews was the government's interview with Mr. Koerber that would later become the subject of Mr. Koerber's successful motion to suppress. According to the government, by August 2009 it believed that it had provided "approximately 95%" of its discovery to Mr. Koerber. But later that month, the State of Utah provided the government an additional 20 boxes of discovery from its investigation—containing thousands of pages of documents—together with "a significant number of additional witness interviews and related documents" that the government intended to review and scan onto discs for Mr. Koerber. Based on the government's need to evaluate and provide the additional discovery to Mr. Koerber, and on Mr. Koerber's need for time to study it, the government and Mr. Koerber filed a joint motion to continue the status conference scheduled for August 31, 2009. The district court granted the motion and ordered the time excluded under 18 U.S.C. § 3161(h)(7)(A) and (B) but made no express ends-of-justice findings as § 3161(h)(7)(A) requires.

On October 22, 2009, the day before the first continued status conference, Marcus Mumford entered his appearance as Mr. Koerber's new attorney. At the status conference, the magistrate judge insisted on a motion deadline and set another status conference for approximately 90 days later. Mr. Mumford responded: "depending on the timing of us receiving materials from the government, I would ask for just a little bit of flexibility so that I not be held to . . . that." The magistrate judge stated that "[a]ll time is to be excluded pursuant to the Speedy Trial Act. [AUSA] Walz to prepare an order." Unexplainably, the government failed to prepare this order for nearly two months and the district court did not enter it until December 14, 2009. When finally entered, the order purported to exclude the "period of time between October 23, 2009 and the 19th day of January, 2010," under the ends-of-justice provision of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), citing four reasons: (1) the case involved "voluminous" discovery; (2) the government was still copying the 20 boxes of material for Mr. Koerber; (3) "the case is complex"; and (4) Mr. Koerber had just retained new counsel. But the order did not set forth "reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A); *see United States v. Toombs,* 574 F.3d 1262, 1270–72 (10th Cir.2009) (stating that conclusory reasons for ends-of-justice continuances are inadequate).

## II.     January–September 2010: Mr. Koerber's Protective–Order Motion

On January 27, 2010, the district court held a status conference to discuss discovery. The judge asked the defense, "[H]ow much longer do you need in order to adequately review the material and be prepared to file motions on behalf of your client?" Mr. Koerber suggested setting "another status conference in three months." The court, however, refused such a lengthy extension and set a status conference two months later "to rein this in as much as I can." In a minute entry on the docket, the district court stated that "[a]ll time is to be excluded pursuant to

the [Speedy Trial Act]. [AUSA] Walz to prepare an order." The district court did not say what days it intended to exclude from the speedy-trial clock. On February 17, 2010, the district court entered the order, which included ends-of-justice findings, noting that "the amount of discovery in this case necessitates this continuance for this period of time which renders this case so complex that the ends of justice outweigh the best interest of the defendant and the public in a speedy trial." Because the district court had not mentioned the ends-of-justice findings at the January 27, 2010 hearing, the findings necessarily were retroactive.

Also in February 2010, Mr. Koerber filed a motion for a protective order, seeking to require the government to return to him privileged documents contained within about 200,000 pages of documents he produced to comply with a 2007 IRS subpoena. Mr. Koerber alleged that, until October 2009, the government had delayed notifying him of his inadvertent disclosure and had even used some of the privileged information to help secure at least one count in the superseding indictment.

On June 25, 2010, the government filed a motion requesting "a status conference to ascertain when this matter may be tried." It appears that Mr. Koerber never responded to this motion. The motion was denied via a docket text order stating "[a] status/scheduling conference will be set after the August 18, 2010, evidentiary hearing has been concluded and ruled upon."

On August 31, 2010, before ruling on Mr. Koerber's motion, the district court held a status conference. At the status conference Mr. Koerber represented to the court that he anticipated filing five additional pretrial motions. Namely, a motion to suppress Mr. Koerber's statements made to the government in an interview outside the presence of counsel, a motion to suppress privileged information obtained from Mr. Koerber's former counsel, a motion to suppress evidence and or strike the indictment concerning the return of inadvertently produced

privileged information, a motion to challenge the indictment based on federal securities law, and a motion for relief concerning the government's extrajudicial statements and improper publicity of the case. When the judge suggested a motion deadline of September 30, 2010, Mr. Koerber protested saying "we need much more additional time" and requested an additional five months.

The United States responded that five months seemed excessive because Mr. Mumford appeared to already have a handle on the issues he intended to address in the pretrial motions. Moreover, the government stated that it expected to start trial in the case sometime early in 2011. Over defense counsel's protestations, the court set the motion deadline for December 15, 2010. The court again ordered "[t]he time" excluded under the Speedy Trial Act and directed the government to prepare an order.

On September 15, 2010, the district court partially granted Mr. Koerber's protective-order motion, ordering discovery about the government's alleged intrusions into Mr. Koerber's privileged information. On September 21, 2010, the district court entered that order (based on the August 31, 2010 hearing) excluding time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A), after finding "that the ends of justice outweigh the best interests of [Mr. Koerber] and the public in a speedy trial" based on the voluminous discovery and Mr. Koerber's need to evaluate the discovery to determine what motions he may need to file. The district court had not fully articulated those findings at the status conference, having stated only that it "want[ed] the time excluded under the Speedy Trial Act and the reason for it is that the defense still needs time to prepare the motions and to file them by that time."

## III.    October 2010–August 2011: Mr. Koerber's Protective Order

On October 22, 2010, the government filed a motion asking for a trial setting. The district court never acted on the government's motion. On November 16, 2010, at another status conference, the district court invited Mr. Koerber to seek a continuance of the pretrial-motions

deadline until all issues related to his inadvertent disclosure were completely resolved. On December 15, 2010, the motions deadline, Mr. Koerber filed a motion to continue that deadline, saying he needed more time to review the discovery and to try to resolve the privileged-information issue. Mr. Koerber's motion made no mention of the Speedy Trial Act. Without citing to any portion of the Speedy Trial Act governing excludable time, the district court granted Mr. Koerber's motion to continue "pending further notice."

During the first half of 2011, Mr. Koerber sought to learn more about what he called the government's intrusions into his privileged information. In June 2011, the district court resolved the privileged-information issue by granting a protective order requiring the government to return any hard copies of various privileged documents and to destroy the electronic versions of those documents. On July 1, 2011, the government certified its compliance with the court's order.

Later in July 2011, the government filed another motion asking the district court to set a status conference, a motions deadline, and a trial date. In response, the district court scheduled a status conference for July 27, 2011, which it later continued to August 2, 2011. At the status conference, the government informed the district court that it intended to seek a second superseding indictment within the next 30 to 60 days. The court then asked whether the defense anticipated filing any further motions. Mr. Koerber responded that he would need to analyze the superseding indictment before proceeding any further. With this in mind, the district court set another status conference for October 7, 2011, and ordered "that all time is to be excluded pursuant to the Speedy Trial Act." The district court directed the government to prepare an order, which the district court then entered on August 22, 2011. Without listing any ends-of-justice reasons, the order excluded from the Speedy Trial Act calculation the period between August 2

and October 7, 2011, under "18 U.S.C. § 3161(h)(7)(A) and (B) from the time within which the

trial of this case must commence pursuant to 18 U.S.C. § 3161."

IV.     **September 2011–April 2012: The Second Superseding Indictment**

On September 29, 2011, the government obtained a second superseding indictment

against Mr. Koerber. This time, the grand jury charged Mr. Koerber with six counts of fraud in

the offer and sale of securities, in violation of 15 U.S.C. §§ 77q(a) and 77x; ten counts of wire

fraud, in violation of 18 U.S.C. § 1343; two counts of money laundering, in violation of 18

U.S.C. § 1957; and two counts of tax evasion, in violation of 26 U.S.C. § 7201. The district court

scheduled an arraignment (along with a status conference) for October 7, 2011, but Mr. Koerber

had a health emergency that required the district court to vacate those settings. Mr. Koerber's

motion seeking that extension did not mention the Speedy Trial Act. The district court continued

the arraignment until January 10, 2012. On October 28, 2011, the government moved for a status

conference, arguing that, despite the lack of an arraignment, the district court should set motions

deadlines and a trial date because the Speedy Trial Act clock did not restart for 70 additional

days upon the filing of a superseding indictment.

On November 15, 2011, the district court held a status conference. At the conference, Mr.

Koerber informed the court that he would be filing within the week three motions challenging

the indictment. Mr. Koerber also stated that he still intended to file the additional motions he had

forecast to the court a year earlier. The court ordered Mr. Koerber to file his motions challenging

the indictment by November 18, 2011. And, the court further ordered Mr. Koerber to file all

remaining pretrial motions no later than December 2, 2011. Mr. Koerber protested that this

would not be sufficient time for the additional motions and suggested a motion deadline of

March 1, 2012. The court pressed Mr. Koerber regarding what he had been doing with the time

already provided in the case. Mr. Koerber responded that he had been litigating the earlier

motion regarding privileged information for eighteen months and had won the motion. Mr. Koerber asserted that he needed more time for his remaining motions. Despite Mr. Koerber's protestations, the court set a motion cutoff deadline of December 30, 2011. The court stated that "[a]ll time is to be excluded pursuant to the Speedy Trial Act. [AUSA Patricia] Glenn to prepare an order." AUSA Glenn never prepared, and the district court never entered, that order.

On December 30, the latest motions deadline, Mr. Koerber moved for an eight-week extension so that he could complete motions and resolve discovery disputes. The government objected, but stated that it would not object to a two-week extension. The district court granted Mr. Koerber a two-week extension. Mr. Koerber still failed to file any of his pretrial motions within the court ordered deadline—despite being granted one additional extension to move the deadline to January 24, 2012. Between January 25, 2012 and April 2012, notwithstanding the passing of the deadline, Mr. Koerber filed multiple motions, including a motion to compel discovery and a motion to dismiss 12 counts of the second superseding indictment (on statute-of-limitations grounds).

On March 30, 2012, the court held a hearing on yet another motion filed by Mr. Koerber to extend the already long-past deadline to file pretrial motions. The United States argued that the pretrial motion dates should not be extended and a trial date should be set. Mr. Koerber argued that unique circumstances and ongoing disputes over discovery warranted further extension. The court again pressed Mr. Koerber regarding why his motions had yet to be filed. Ultimately, the court set an absolute cutoff of April 13, 2012 for the filing of pretrial motions.

## V.     April 2012–August 2013: The Motion to Suppress

On April 13, 2012, Mr. Koerber moved the district court to suppress the statements he made during his two February 2009 interviews with federal agents, as well as any evidence derived from those statements. Mr. Koerber argued that the government had violated his rights

by interviewing him ex parte despite knowing that he had retained counsel. The interviews on which Mr. Koerber's motion was based had been turned over to Mr. Koerber nearly five years earlier. And Mr. Koerber had on multiple occasions indicated his intent to file a motion to suppress these interviews as early as the court's August 31, 2010 status conference.

On April 27, 2012, two weeks after the filing of Mr. Koerber's motion, the government again requested a trial date. On May 1, 2012, citing 18 U.S.C. § 3161(h)(7)(A) and (B), the district court entered an order excluding from the Speedy Trial Act calculation all time "between March 30, 2012, and the eventual trial date." As reasons justifying the excluded time, the order merely stated that "the complexity of the case, the remaining issues to be resolved ..., [and] the amount of discovery, establishes that the best interest of [Mr. Koerber] and the public in the speedy trial are outweighed by the need for the continuance."

## VI.   August 2013–April 2014: The Granted Motion and the Government's Aborted Appeal

On August 20, 2013, the district court granted Mr. Koerber's motion to suppress the statements he had made during his February 2009 interviews "and all fruits derived therefrom." The district court later explained its rationale for suppression on grounds that the interviews "provided prosecutors with a roadmap of whom to interview and what documents to obtain and focus on."

On August 27, 2013, upon the government's request, the district court held another status conference. The government argued that the case was still within the 70–day Speedy Trial Act limit, and it requested a trial date. In response, Mr. Koerber merely stated that he was not prepared to discuss a trial date or any potential speedy-trial issues. The district court set yet another motions deadline, a final pretrial conference, and a trial date. Without announcing any ends-of-justice reasons, the district court stated that it "would ask the United States [to] prepare

an order that satisfies the requirements of the Tenth Circuit to toll the Speedy Trial Act between now and the time of trial." In its minute order, the district court ordered that "[s]peedy trial time is to be tolled until the trial date. The government is to prepare the order tolling that time."

The government did not provide the district court that order. Instead, on September 13, 2013, the government appealed the district court's suppression order. On October 30, 2013, Mr. Koerber asserted his rights under the Speedy Trial Act for the first time, but only in the context of arguing that the United States' certification in support of its appeal was insufficient. Mr. Koerber did not complain that his case was not proceeding to trial soon enough. On November 1, 2013, Mr. Koerber moved to continue the motions deadline based on the government's appeal. The district court granted that motion and also vacated the final pretrial conference and trial setting.

In February 2014, the government moved to dismiss its appeal because it failed to obtain the Solicitor General's authorization before appealing the suppression ruling. See 28 C.F.R. § 0.20(b) (stating that the Solicitor General determines "whether, and to what extent, appeals will be taken by the Government to all appellate courts"). The Tenth Circuit granted the government's motion and dismissed the appeal.

After the dismissal, the government moved the district court to reconsider its suppression ruling. It offered no reasons for reconsideration, but simply asked the district court for an opportunity to further brief the issues. The government also requested a status conference and another trial setting.

On March 28, 2014, the district court held a status conference where Mr. Koerber stated that he would file a motion to dismiss based on a Speedy Trial Act violation and a Sixth Amendment speedy-trial violation. The district court asked Mr. Koerber if he "want[ed] to start

trial on June 13[, 2014]"; Mr. Koerber responded that his "first reaction . . . is to ask the court . . . why a trial here given the motions that we have"—presumably referring to his impending Speedy Trial Act dismissal motion. The district court stated that it wanted to set a trial date to better plan for a final motions deadline. The district court orally denied the government's reconsideration motion and stated that "I'm not tolling the Speedy Trial Act, I'm not making any decisions as to the Speedy Trial Act today."

On March 31, 2014, the district court entered its order denying the government's motion to reconsider its suppression ruling. On April 3, 2014, after the district court's denial order, the government moved the district court to enter an order excluding time "based on the record of the case and the hearing on March 28, 2014." The district court never acted upon that motion.

## VII.  Mr. Koerber's Motion to Dismiss for a Speedy Trial Act Violation and the Subsequent Appeal

On April 23, 2014, Mr. Koerber moved (a week late)[2] to dismiss based on a Speedy Trial Act violation and a Sixth Amendment speedy-trial violation. In his motion, Mr. Koerber argued that the five-year delay was "directly attributable to the government's actions." After receiving arguments from the parties, the district court granted Mr. Koerber's motion and dismissed the case with prejudice. The United States appealed admitting that there was a Speedy Trial Act violation, but contending that the dismissal should be without prejudice. The Tenth Circuit reversed and remanded the prior district court's ruling with instructions to reconsider in accordance with its opinion. Due to a recusal, the case was reassigned to this judge.

---

[2] In its brief following remand, the Government outlines numerous deadlines allegedly missed by Mr. Mumford that caused delays in moving the case towards trial. The court finds it unnecessary to delve into each of the alleged deadlines at issue but notes that Mr. Mumford's failure to comply with any of the many deadlines for filing pretrial motions is indicative of his general pattern of missing deadlines that significantly delayed the case.

**ANALYSIS**

I.    **The Speedy Trial Act**

The parties do not dispute that Mr. Koerber's trial did not commence within the time required by the Speedy Trial Act. Likewise, they do not dispute whether the case must be dismissed. Rather, they dispute whether the case should be dismissed with or without prejudice. When a case is dismissed under the Speedy Trial Act, "the district court retains discretion to determine whether the indictment is dismissed with or without prejudice." *Koerber*, 813 F.3d at 1273 (quoting *United States v. Cano-Silva*, 402 F.3d 1031, 1034 (10th Cir. 2005)). The Speedy Trial Act provides:

> In determining whether to dismiss [a] case with or without prejudice, [a] court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). "Prejudice to the defendant is among the 'other' factors the text of [section] 3162 directs the district court to consider." *Koerber*, 813 F.3d at 1273 (quoting *United States v. Abdush-Shakur*, 465 F.3d 458, 462 (10th Cir. 2006)). And "the application of the more severe sanction of dismissal with prejudice . . . should be reserved for more egregious Speedy Trial Act violations." *Id.* (quoting *Cano-Silva*, 402 F.3d at 1035). The factors will be considered in turn.

A.  **The Seriousness of the Offense**

The seriousness of the offense is one factor the court must consider. "If the court determines the offense committed by the defendant is serious, this factor weighs in favor of dismissing without prejudice." *Id.* at 1274 (quoting *United States v. Saltzman*, 984 F.2d 1087, 1091 (10th Cir. 1993)). In light of the court's "previous conclusion and agreement with the

parties that the charges are serious" the Tenth Circuit has instructed this court on remand to "weigh [this] factor in favor of dismissing without prejudice." *Id.* at 1276–77. Thus, this factor weighs in favor of dismissing the case without prejudice.

### B.   The Facts and Circumstances Leading to Dismissal

"In determining whether the facts and circumstances warrant dismissal with prejudice [the court focuses] on the culpability of the conduct that led to the delay." *Id.* at 1277 (quoting *Cano-Silva*, 402 F.3d at 1036). "[W]here the delay in bringing the case to trial is the result of intentional dilatory conduct, or a pattern of neglect on the part of the Government, dismissal with prejudice is the appropriate remedy." *Id.* (quoting *United States v. Williams*, 576 F.3d 1149, 1158 (10th Cir. 2009)). The court must consider "'the facts and circumstances of the case which led to the dismissal, [and] not just the facts and circumstances which led to delay.'" *Id.* (quoting 18 U.S.C. 3162(a)(2)).

This court already concluded that the United States exhibited a "pattern of neglect" and that its failure "contributed to the speedy-trial delay." *Id.* at 1278. Similarly, the district court concluded that deficiencies in orders prepared by the United States and approved by the court were "symptomatic of the Government's pattern of neglect and dilatory conduct in managing the [Speedy Trial Act] clock in this case." The district court concluded that the Government's conduct raised "a strong inference of tactical delay . . . in its prosecution of the case." *Id.*

The Tenth Circuit held that on remand, "the district court need not revisit any of its . . . findings with this factor" but that it "should consider whether any of [Mr.] Koerber's other actions in the case contributed to the [Speedy Trial Act] delay and, if so, what effect that has on the second factor." *Id.* at 1284–85.

The court concludes that Mr. Koerber's actions significantly contributed to the Speedy Trial Act delay in this case. From the very beginning of the case, Mr. Koerber resisted deadlines

and showed no interest in proceeding to trial. He filed at least six motions to extend deadlines. He also consistently acquiesced to continuances made at the government's request. Similarly, he never voiced an objection to the numerous postponements of the trial setting. In fact, Mr. Koerber opposed multiple attempts by the Government to set a trial date.

Mr. Koerber also contributed to the Speedy Trial Act delay in this case by repeatedly delaying the filing of his pretrial motions.[3] For example, "despite providing subpoenaed information to the government in 2007, Mr. Koerber did not file his protective-order motion until February 2010." *Id.* at 1284. As early as August 31, 2010, Mr. Koerber informed the court that he intended to file five additional pretrial motions. Although the basis for these motions was articulated by Mr. Koerber on that same date, he delayed significantly in bringing them. "Mr. Koerber did not file his motion to suppress statements from the February 2009 interviews until April 2012." *Id.* Mr. Koerber is culpable for his delay in bringing these motions.

Finally, Mr. Koerber significantly delayed asserting his rights under the Speedy Trial Act. By his own calculation, by October 13, 2009, "110 unexcluded days elapsed on the Speedy Trial Act clock due to missing or invalid *ends-of-justice* orders." Thus by that time, dismissal was warranted. But Mr. Koerber did not file a motion to dismiss for a Speedy Trial Act violation until April 2014, almost five years later. In short, Mr. Koerber's own actions contributed to the Speedy Trial Act delay.

The court concludes that both the United States and Mr. Koerber engaged in a pattern of neglect and dilatory conduct in managing the Speedy Trial Act clock in this case. When Mr. Koerber's conduct is considered as a whole, the court finds that Mr. Koerber intentionally delayed his case in order to try and obtain a dismissal with prejudice under the Speedy Trial Act.

---

[3] The court notes that it does not include any of the time associated with the resolution of the motions in the culpability analysis. In other words, Mr. Koerber is culpable for waiting so long to file his motions. He is not culpable, however, for any time it took the court to resolve his motions once filed.

Accordingly, Mr. Koerber's culpability in the delays weighs in favor of dismissal without prejudice. In contrast, the Government's culpability weighs in favor of dismissal with prejudice. Ultimately when weighed together, the parties are equally culpable and this factor is a draw.

### C.  The Impact of Reprosecution on the Administration of the Speedy Trial Act and on the Administration of Justice

"For this last enumerated factor, 'a court should consider, [among other things], whether the delay caused by the government was intentional and the prejudice suffered by the defendant from the Act's violation." *Id.* at 1285 (quoting *Toombs*, 713 F.3d at 1281). This court has previously determined that this factor weighs in favor of dismissal with prejudice. That determination was upheld by the Tenth Circuit. *Id.* Accordingly, the court's earlier analysis is still applicable and will not be repeated here.

However, in light of the finding of intentional delay on Mr. Koerber's part, this factor is somewhat mitigated. As stated above, the court finds that Mr. Koerber is culpable for much of the delay in this case. Thus, much of the prejudice Mr. Koerber suffered as a result of the delays was of his own making. Accordingly, while the prior determination of prejudice remains in force, this factor weighs only modestly in favor of dismissal with prejudice.

### D.  The Weight of the Factors

Weighing the factors in accordance with the statute and the Tenth Circuit's mandate on remand, the court concludes that the factors warrant a dismissal without prejudice. Having determined that the culpability of both parties effectively cancel-out the "facts and circumstances factor," the court is left with weighing the seriousness of the offense against the impact of reprosecution on the administration of the Speedy Trial Act and on the administration of justice.

Mr. Koerber is accused of having defrauded millions of dollars from countless individuals. There is a strong public interest in having such serious charges adjudicated on the

merits. This weighs heavily in favor of dismissal without prejudice. In contrast, impact of reprosecution weighs only modestly in favor of dismissal with prejudice. When the two factors are weighed together, the court concludes that the factors warrant a dismissal without prejudice.

## II.     The Sixth Amendment

Having determined that the violation of the Speedy Trial Act warrants dismissal without prejudice, the court must consider Mr. Koerber's alternative argument that the delays violated his right to a speedy trial under the Sixth Amendment. *Id.* at 1289 n.31. Following the Tenth Circuit's remand in this matter, Mr. Koerber filed a motion seeking dismissal with prejudice. Despite the Tenth Circuit's clear instruction that this court consider Mr. Koerber's Sixth Amendment argument on remand in the event it determined that the case should be dismissed without prejudice, Mr. Koerber's post-remand briefing to this court does not include any argument regarding his Sixth Amendment claim. Rather, Mr. Koerber simply states that he "requests the opportunity . . . [later] to address the . . . Sixth Amendment causes of action [sic] he has previously raised." And even after the Government briefed the Sixth Amendment claim in response, Mr. Koerber's reply still failed to address it. This typifies Mr. Koerber's approach to this case. In his effort to delay trial, he has consistently engaged in piecemeal litigation rather than addressing all related issues at once. Despite Mr. Koerber's failure to address his Sixth Amendment claim in his post-remand briefing, the court will address the Sixth Amendment argument Mr. Koerber made in his pre-appeal briefing before the prior judge.

Mr. Koerber contends that he has been denied a speedy trial in violation of his rights under the Sixth Amendment. Whether a defendant has been denied the right to a speedy trial in violation of the Sixth Amendment is determined on a case-by-case basis by considering four factors enumerated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972). Those factors are: 1) the length of the delay, 2) the reason for the delay, 3) the defendant's assertion of

his right, and 4) the prejudice to the defendant. *Id.* at 530. The court will consider each factor in turn.

### A.  The Length of the Delay

The Tenth Circuit has explained that "[d]elays approaching one year generally satisfy the requirement of presumptive prejudice." *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2006) (citations omitted). This factor serves as a triggering mechanism and, when satisfied, obliges the court to consider the remaining factors. *United States v. Margheim*, 770 F.3d 1312, 1326 (10th Cir. 2014) (citations omitted). Given the length of delay in this case, this factor weighs entirely in Mr. Koerber's favor and the court will consider the remaining factors.

### B.  The Reasons for the Delay

The second factor is the reason for delay. That factor is "[t]he flag all litigants seek to capture." *Id.* (quoting *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986)). "Purposeful delay or delay to gain advantage weighs heavily against the government, while a more neutral reason such as negligence or overcrowded courts is weighted less heavily." *Id.* (quoting *United States v. Gould*, 672 F.3d 930, 937 (10th Cir. 2012)) (internal quotation marks omitted). In contrast to the first factor, "this factor 'weighs heavily against' the defendant if his own actions 'were the primary cause of the delay.'" *Id.* (quoting *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010)).

For the reasons stated above, the court found that some delays were "symptomatic of the Government's pattern of neglect and dilatory conduct in managing . . . this case." Thus, the Government's conduct raises "a strong inference of tactical delay . . . in its prosecution of the case." However, many of the delays were attributable to Mr. Koerber's own actions. And the court found that Mr. Koerber intentionally delayed his case in order to try and obtain a dismissal

with prejudice under the Speedy Trial Act. Given the tactical dilatory conduct of both parties, the court concludes that this factor is a draw.

### C.  The Defendant's Assertion of His Constitutional Speedy Trial Rights

"At the third step of the *Barker* test, [the court] assign[s] strong weight to the defendant's assertion of his constitutional speedy-trial right, but [the court] 'may weigh the frequency and force of [his] objections' to the delay." *Id.* at 1328 (quoting *United States v. Latimer*, 511 F.2d 498, 501 (10th Cir. 1975)). Thus "assertion of the right to a speedy trial 'is not satisfied merely by moving to dismiss after the delay has already occurred.'" *Id.* (quoting *Batie*, 433 F.3d at 1291). "'Moving for many continuances, or otherwise indicating that the defendant is not pursuing a swift resolution of his case' will tip the balance of this factor 'heavily against the defendant.'" *Id.* (quoting *Gould*, 672 F.3d at 938).

As discussed above, Mr. Koerber was not asserting his right to a speedy trial during the delays associated with his case. In fact, Mr. Koerber consistently resisted any attempt to set a trial date. He first asserted his speedy trial right in the context of his motion to dismiss and only after years of delay had already occurred. Given Mr. Koerber's repeated objection to the setting of a trial date and his extreme delay in asserting his speedy trial right, this factor weighs heavily against him.

### D.  The Prejudice to the Defendant

The final *Barker* factor to consider is the prejudice to the defendant. The court has already determined the prejudice suffered by Mr. Koerber in the context of its Speedy Trial Act analysis. The court concluded that Mr. Koerber did suffer some prejudice. However, the court also found that Mr. Koerber is culpable for much of the delay in this case. Thus, much of the prejudice he suffered as a result of the delays was of his own making. Accordingly, while the

prior determination of prejudice remains in force, this factor weighs only modestly in favor of Mr. Koerber.

### E.  The Weight of the Factors

Having individually considered the *Barker* factors, the court must now determine whether the weight of the factors indicate that Mr. Koerber's speedy trial right under the Sixth Amendment was violated. The court finds that it was not. The first factor favors Mr. Koerber. The second factor is a draw. The third factor weighs heavily in favor of the government. The final factor weighs modestly in favor of Mr. Koerber. The court holds that in this case, the second factor weighs heavily enough in the government's favor to outweigh the first and third factors that weigh at least modestly in Mr. Koerber's favor. Accordingly, the court finds that Mr. Koerber's constitutional right to a speedy trial was not violated.

## CONCLUSION

Due to violations of the Speedy Trial Act, Mr. Koerber's case must be dismissed. But that dismissal is without prejudice. Additionally, the court holds that Mr. Koerber's Sixth Amendment right to a speedy trial was not violated. Accordingly, Mr. Koerber's Motion to Dismiss with Prejudice is DENIED. The case is ordered dismissed without prejudice.

Signed August 25, 2016.

BY THE COURT

Jill N. Parrish
United States District Judge